# EXHIBIT A

EIN/PLN: 52-6112463/001

# Sheet Metal Workers' National Pension Fund Plan Document

## 2014 AMENDED & RESTATED EDITION

**Incorporates all amendments through September 16, 2014**
[Appendices as updated from time to time are also attached]

8403 Arlington Blvd., Suite 300
Fairfax, Virginia 22031
(703) 739-7000 Toll Free 1-800-231-4622

SHEET METAL WORKERS' NATIONAL PENSION FUND
PLAN DOCUMENT
(2014 Amended & Restated Edition)

## Table of Contents

**INTRODUCTION** ................................................................................................................ **1**

**PENSION PROTECTION ACT CHANGES** ...................................................................... **1**

**ARTICLE 1      DEFINITIONS** ........................................................................................ **2**
Section 1.01      Accrued Benefit .................................................................................. 2
Section 1.01A     Actuarial Equivalent .......................................................................... 2
Section 1.02      Allocation Date .................................................................................. 3
Section 1.03      Beneficiary ........................................................................................ 3
Section 1.04      Benefit Rate ....................................................................................... 3
Section 1.05      Code ................................................................................................... 3
Section 1.06      Collective Bargaining Agreement or Agreement ............................... 3
Section 1.07      Compensation .................................................................................... 3
Section 1.08      Construction Work; Non-Construction Work ..................................... 4
Section 1.09      Continuous Non-Covered Employment ............................................. 5
Section 1.10      Contributing Employer or Employer .................................................. 5
Section 1.11      Contribution Date .............................................................................. 6
Section 1.12      Contribution Rate and other Related Terms ....................................... 6
Section 1.13      Covered Employee or Employee ........................................................ 7
Section 1.14      Covered Employment ........................................................................ 9
Section 1.15      Disability Benefits ............................................................................. 9
Section 1.16      Eligibility Computation Period .......................................................... 9
Section 1.17      ERISA ................................................................................................ 9
Section 1.18      Fund or Pension Fund ...................................................................... 10
Section 1.19      Fund Office ...................................................................................... 10
Section 1.20      Future Service Credit ....................................................................... 10
Section 1.21      Hour of Work ................................................................................... 10
Section 1.22      Local, Local Union .......................................................................... 10
Section 1.23      Non-Covered Employment .............................................................. 10
Section 1.24      Normal Retirement Age .................................................................... 11
Section 1.25      Normal Retirement Benefit ............................................................... 11
Section 1.26      Owner-Member ................................................................................ 11
Section 1.27      Participant ........................................................................................ 12
Section 1.28      Participating Local ........................................................................... 12
Section 1.29      Past Service Credit ........................................................................... 12
Section 1.30      Pension Credit .................................................................................. 12
Section 1.31      Pensioner ......................................................................................... 12
Section 1.32      Plan or Pension Plan ........................................................................ 12
Section 1.32A     Plan Document ................................................................................. 12
Section 1.33      Plan Year or Calendar Year .............................................................. 13
Section 1.34      Related Organization ....................................................................... 13

| | | |
|---|---|---|
| Section 1.35 | Sheet Metal Industry | 13 |
| Section 1.36 | SMWIA | 14 |
| Section 1.37 | Trust Document | 14 |
| Section 1.38 | Trustees | 14 |
| Section 1.39 | Union | 15 |
| Section 1.40 | Year of Service | 15 |
| **ARTICLE 2** | **BASIS OF EMPLOYER PARTICIPATION IN PLAN** | **15** |
| Section 2.01 | General | 15 |
| Section 2.02 | Acceptance of a New Employer for Participation | 16 |
| Section 2.03 | Special Conditions | 16 |
| Section 2.04 | Termination of Participation | 16 |
| Section 2.05 | Acceptance of Special Class of Employees of a Contributing Employer | 16 |
| Section 2.06 | Related Organization as a Contributing Employer | 16 |
| Section 2.07 | Owner-Members | 17 |
| Section 2.08 | Basis for Participation and Continuing Participation | 17 |
| **ARTICLE 3** | **PARTICIPATION OF EMPLOYEES** | **17** |
| Section 3.01 | Purpose | 17 |
| Section 3.02 | Commencement of Participation | 18 |
| Section 3.03 | Years of Service Taken into Account | 18 |
| Section 3.04 | Effect of Break in Service on Participation in the Plan | 18 |
| **ARTICLE 4** | **PENSION CREDIT AND BREAKS IN SERVICE** | **19** |
| Section 4.01 | Purpose | 19 |
| Section 4.02 | Past Service Credit for an Employer's Contribution Date before January 1, 2000 | 19 |
| Section 4.03 | Past Service Credit for an Employer's Contribution Date on or after January 1, 2000 | 19 |
| Section 4.04 | Credit for Calendar Year of Contribution Date | 20 |
| Section 4.05 | Work for Employer Who Went Out of Business, or for Local That Becomes or Merges Into a Participating Local | 21 |
| Section 4.06 | Past Service Credit for Participants Not Covered by a Collective Bargaining Agreement | 21 |
| Section 4.07 | Breaks in Service Prior to the Contribution Date (Past Service) | 21 |
| Section 4.08 | Loss of Past Service Credit | 22 |
| Section 4.09 | Pension Credit for Periods on and after the Contribution Date (Future Service Credit) | 23 |
| Section 4.10 | Pension Credit for Periods of Unemployment | 27 |
| Section 4.11 | Pension Credit for Periods of Employment under Sheet Metal Workers' Local Union #22's Jurisdiction | 27 |
| Section 4.12 | Credit for Periods of Employment as a "Salted Organizer" or "Youth-to-Youth" Apprentice | 28 |
| Section 4.13 | Breaks in Service | 28 |
| Section 4.14 | Restoration of Pension Credits and Contribution Hours Following a Permanent Break in Service | 32 |
| Section 4.15 | Military Service | 33 |
| Section 4.16 | Family Medical Leave Act ("FMLA") | 33 |
| **ARTICLE 5** | **PENSION ELIGIBILITY AND AMOUNTS** | **33** |
| Section 5.01 | General | 33 |
| Section 5.02 | Normal Retirement Pension for Effective Dates of Pension Before January 1, 2000 | 34 |
| Section 5.03 | Normal Retirement Pension for Effective Dates of Pension On or After January 1, 2000 | 34 |
| Section 5.04 | Special Rules for Early Retirement Pension Benefits with Effective Dates of Pension on or after February 1, 2014 | 43 |
| Section 5.05 | Unsubsidized Early Retirement Pension | 49 |
| Section 5.06 | Standard Early Retirement Pension | 50 |
| Section 5.07 | Special Early Retirement Pension | 52 |
| Section 5.08 | Age 62 Pension | 54 |
| Section 5.09 | 55/30 Pension | 55 |

| | | |
|---|---|---|
| Sections 5.10 | 60/30 Pension | 57 |
| Section 5.11 | Continued Application of 55/30 Rate if 55/30 Pension Ceased to be an Applicable Type of Early Retirement Pension | 58 |
| Section 5.12 | Monthly Pension Amounts Based on Single Life Annuity | 58 |
| Section 5.13 | Whole Dollar Amount | 58 |
| Section 5.14 | Non-Duplication of Pensions | 58 |
| Section 5.15 | Amount of Benefits after Separation from Covered Employment | 58 |
| Section 5.16 | Reserved for Appendix A | 59 |
| **ARTICLE 6.** | **NORMAL FORM OF PENSION AND OPTIONAL FORMS OF PENSION PAYMENTS** | **59** |
| Section 6.01 | General | 59 |
| Section 6.02 | Upon Retirement | 60 |
| Section 6.03 | Death of an Eligible Employee Before Retirement (Pre-Retirement Annuity) | 62 |
| Section 6.04 | Lifetime Pension | 63 |
| Section 6.05 | 50% Joint and Survivor Annuity Option | 65 |
| Section 6.06 | 75% Joint and Survivor Annuity Option | 67 |
| Section 6.07 | 100% Joint and Survivor Annuity Option | 69 |
| Section 6.08 | Additional Conditions | 70 |
| Section 6.09 | Continuation of the Joint and Survivor Annuity | 71 |
| Section 6.10 | Coordination with 60 Certain Payments (Pre-March 1, 2008 Effective Dates) | 71 |
| Section 6.11 | Reversion (Pop-Up) Feature for Effective Dates of Pension on or after February 1, 2014 | 71 |
| Section 6.12 | 120 Certain Payments Option | 73 |
| Section 6.13 | Level Income Option | 73 |
| **ARTICLE 7** | **DEATH BENEFITS** | **73** |
| Section 7.01 | Death Benefit Before Retirement | 73 |
| Section 7.02 | Death Benefit after Retirement - 60 Certain Payments | 75 |
| Section 7.03 | Death Benefit after Retirement - Lump Sum Death Benefit | 76 |
| Section 7.04 | Designation of Beneficiary | 76 |
| Section 7.05 | Death Benefits Under USERRA | 76 |
| **ARTICLE 8** | **APPLICATIONS, BENEFIT PAYMENTS, AND RETIREMENT** | **77** |
| Section 8.01 | Applications | 77 |
| Section 8.02 | Information Required | 77 |
| Section 8.03 | Action of Trustees | 78 |
| Section 8.04 | Right of Appeal | 78 |
| Section 8.05 | Benefit Payments Generally | 78 |
| Section 8.06 | Suspension of Benefits | 80 |
| Section 8.07 | Vested Status (Nonforfeitability) | 87 |
| Section 8.08 | Incompetence or Incapacity of a Pensioner | 89 |
| Section 8.09 | Non-Assignment of Benefits | 89 |
| Section 8.10 | No Right to Trust Assets | 90 |
| Section 8.11 | Limitations on Benefits | 90 |
| Section 8.12 | Required Minimum Distributions | 94 |
| Section 8.13 | Eligible Rollover Distributions | 98 |
| Section 8.14 | Mergers or Transfers of Assets or Liabilities | 99 |
| Section 8.15 | Restrictions for Highly Compensated Employees | 99 |
| **ARTICLE 9** | **NPF COLA BENEFIT** | **100** |
| Section 9.01 | Rehabilitation Plan Reductions | 100 |
| Section 9.02 | No NPF COLA Benefit payable unless a 13th check was payable for 2002 Allocation Date | 101 |
| Section 9.03 | Calculation of NPF COLA Benefit Payable before 2003 | 101 |
| **ARTICLE 10** | **RECIPROCITY – PRO RATA PENSIONS** | **101** |

Section 10.01    Purpose .................................................................................................................... 101
Section 10.02    Identification of the Home Fund ............................................................................ 102
Section 10.03    Related Pensions ................................................................................................... 102
Section 10.04    Related Pension Credits ........................................................................................ 102
Section 10.05    Combined Pension Credit ...................................................................................... 102
Section 10.06    Eligibility ............................................................................................................... 102
Section 10.07    Breaks in Service .................................................................................................. 103
Section 10.08    Election of Pro Rata Pension ................................................................................ 103
Section 10.09    Pro Rata Pension Amount ..................................................................................... 103
Section 10.10    Payment of Pro Rata Pensions .............................................................................. 103
Section 10.11    Applicability to Pension Benefits Only ................................................................ 103
Section 10.12    Limited Transfer of Contributions ........................................................................ 103

**ARTICLE 11    TRANSFER OF CONTRIBUTIONS BETWEEN PENSION PLANS............................ 104**
Section 11.01    Purpose .................................................................................................................. 104
Section 11.02    Identification of the Home Fund and Home Local Union ..................................... 104
Section 11.03    Cooperating Pension Funds ................................................................................... 104
Section 11.04    Transfer of Contributions ...................................................................................... 105
Section 11.05    Eligibility for Benefits and Service Credit ........................................................... 105
Section 11.06    Credit for Contributions ........................................................................................ 106
Section 11.07    Payment of Pension ............................................................................................... 106

**ARTICLE 12    TERMINATION OF EMPLOYER AND EMPLOYEE PARTICIPATION ................ 106**
Section 12.01    General Scope ........................................................................................................ 106
Section 12.02    Termination and Modification of Contribution Obligations ................................. 106
Section 12.03    Termination Due to Noncompliance with the Code, ERISA or Participation Rules ............................ 109
Section 12.04    Withdrawal of Employer ........................................................................................ 109

**ARTICLE 13    TOP-HEAVY PROVISIONS .......................................................................................... 110**
Section 13.01    General Considerations .......................................................................................... 110
Section 13.02    Definitions and Special Rules Applicable to this Article 13 ................................. 110
Section 13.03    Identification of Top-Heavy Plan .......................................................................... 112
Section 13.04    Provisions of this Plan, if Top-Heavy .................................................................... 112
Section 13.05    Minimum Vesting Schedule for the Top-Heavy Plan ........................................... 113
Section 13.06    Basis of Application of Top-Heavy Rules ............................................................. 113

**ARTICLE 14    AMENDMENT, TERMINATION AND GENERAL PROVISIONS ......................... 113**
Section 14.01    Amendment ........................................................................................................... 113
Section 14.02    Non-Reversion ....................................................................................................... 114
Section 14.03    Limitation of Liability ........................................................................................... 114
Section 14.04    Administrative Interpretations ............................................................................... 114
Section 14.05    Termination ............................................................................................................ 114

**ARTICLE 15    HEALTH BENEFITS FOR PENSIONERS AND BENEFICIARIES ........................ 115**
Section 15.01    Retiree Health Benefits ......................................................................................... 115
Section 15.02     Contributions to Code Section 401(h) Account ................................................. 119
Section 15.03    Separate Account ................................................................................................... 119
Section 15.04    Termination ............................................................................................................ 119
Section 15.05    Forfeitures ............................................................................................................. 119

**ARTICLE 16    DISABILITY BENEFITS .............................................................................................. 119**
Section 16.01     General .................................................................................................................. 119
Section 16.02    Types of Disability Benefits Payable ..................................................................... 120
Section 16.03    Eligibility for a Full Disability Benefit .................................................................. 120

Section 16.04    Eligibility for an Industry-Related Disability Benefit ........................................................... 121
Section 16.05    Effective Dates of Disability Benefits ........................................................................... 122
Section 16.06    Termination of Disability Benefits ................................................................................ 123
Section 16.07    Effect of Termination of Disability Benefits on Future Benefits ......................................... 125
Section 16.08    Conversion from an Industry-Related Disability Benefit to Full Disability Benefit and Full Disability Applications Received Before December 1, 2007 .................................................... 125

**Table of Contents for Appendices .................................................................................. 127**

# SHEET METAL WORKERS'
# NATIONAL PENSION FUND
# PLAN DOCUMENT
### (2014 Amended & Restated Edition)

## INTRODUCTION

By resolution dated May 16, 1966, the Trustees of the Sheet Metal Workers' National Pension Fund adopted a defined benefit pension plan (the "Plan"). The Plan is intended to qualify under Section 401(a) of the Code, and is a multiemployer plan within the meaning of Section 414(f) of the Code.  Pursuant to their authority under Section 14.01 of the Plan Document, the Trustees have amended the Plan Document from time to time.  Prior to January 1, 2002, the name of the Plan Document was the Amended and Restated Rules and Regulations for the Sheet Metal Workers' National Pension Fund (Plan A and Plan B).  Since that time, the Trustees of the Plan have subsequently amended the Plan Document, in order to, among other things, maintain the Plan's tax-qualified status and comply with applicable changes in legislation.  The last full amendment and restatement was designated as the Sheet Metal Workers' National Pension Fund Plan Document (2009-10 Amended and Restated Edition) (the "2009-10 Edition").  The 2009-10 Amended and Restated Edition reflected all Plan Document amendments adopted through March 20, 2012, and it received a favorable determination from the Internal Revenue Service by letter dated October 3, 2012.  Since that time, the Plan Document has been further amended.  Those amendments are incorporated in this version of the Plan Document, which is the Sheet Metal Workers' National Pension Fund Plan Document (2014 Amended and Restated Edition).  In general, the terms of this Plan Document are effective as of January 1, 2014.  However, if a different effective date is specified elsewhere in this Plan Document, a prior version of this Plan Document, or in an original amendment, which is incorporated in this Plan Document, such other effective date will control.

Except as the context may specifically require otherwise, use of the masculine gender in this Plan shall be understood to include both masculine and feminine genders, and use of the singular shall be understood to include the plural and vice versa.

Unless otherwise specified, references to any section number or article number shall constitute a reference to the corresponding section number in the Plan Document, as may be renumbered by amendment from time to time.

## PENSION PROTECTION ACT CHANGES

In 2008, the Plan entered into Critical Status.  As result, the Trustees adopted a Rehabilitation Plan and Rehabilitation Plan Schedules, which were amended from time to time, and are set forth in Appendix C.  The Plan's Rehabilitation Plan and Rehabilitation Plan Schedules significantly reduced the Plan's "adjustable benefits" (as defined in Section 432(e)(8)(A)(iv) of the Code).  These included early retirement benefits, optional forms of benefits, and benefit increases that would not be eligible for a guarantee under Section 4022A of ERISA on January 1, 2008 because the increases took effect

1

less than 60 months before that date (e.g., the annual supplemental increase under the NPF COLA Benefit). Those reductions were, and remain, permanent, and this Plan Document reflects those reductions.

The Plan's actuary certified that the Plan ceased to be in Critical Status and entered into Endangered Status for the 2014 Plan Year. Accordingly, the Trustees adopted a Funding Improvement Plan and Funding Improvement Plan Schedule, effective as of March 1, 2014, which is set forth in Appendix C of this Plan Document.

The use herein of the terms or phrases "Critical Status," "Rehabilitation Period," "Rehabilitation Plan," "Rehabilitation Plan Schedule," "Endangered Status," "Funding Improvement Plan," "Funding Improvement Plan Schedule" (or any similar terms or phrase relating to the Plan's funded status) are intended to have the same meaning as when such terms or phrases are used in Section 432 of the Code (whether or not such terms are capitalized). As noted above, the current Funding Improvement Plan and Funding Improvement Plan Schedule, as well as all prior versions of the Rehabilitation Plan and Rehabilitation Plan Schedules, are set forth in Appendix C of this Plan Document.

## ARTICLE 1   DEFINITIONS

### Section 1.01      Accrued Benefit

The term "Accrued Benefit" shall mean generally the annual pension benefit provided under the Plan commencing at Normal Retirement Age. Notwithstanding the foregoing, the term "Accrued Benefit" shall be interpreted in accordance with Section 411(a)(7) of the Code and the Treasury Regulations promulgated thereunder.

### Section 1.01A   Actuarial Equivalent

Except as otherwise provided, the term "Actuarial Equivalent" or "Actuarially Equivalent" shall mean the actuarial equivalent of a benefit determined using the following assumptions: a 7.5% interest rate and the 1983 GAM Table with sex distinct mortality rates, with the Participant valued as a male and the Spouse or Alternate Payee valued as a female. Notwithstanding the foregoing, for purposes of determining a pre-retirement spouse's benefit under Section 6.03(d) and a lump-sum distribution under Section 8.05(b), the Actuarial Equivalent present value shall be determined using the following assumptions: the applicable mortality table as defined in Code Section 417(e)(3)(A)(ii)(I), and the annual interest rate on 30-year Treasury securities for November of the preceding year. Effective January 1, 2008, for distributions after December 31, 2007, the applicable mortality table is defined in Code Section 417(e)(3)(B) and is determined in accordance with Revenue Ruling 2007-67 and subsequent guidance, and the annual interest rate for the determinations in the preceding sentence under Sections 6.03(d) and 8.05(b) shall be the applicable interest rate determined in accordance with Code Section 417(e)(3)(C) for November of the preceding year.

**Section 1.02    Allocation Date**

The term "Allocation Date" shall mean each October 31.

**Section 1.03    Beneficiary**

The term "Beneficiary" shall mean a person (other than a Pensioner) who is designated by a Participant in accordance with Section 7.04 or by reason of Article 6 to receive periodic benefit payments from the Plan or who is receiving benefits by reason of such designation or by reason of the terms of Article 6.

**Section 1.04    Benefit Rate**

A Participant's "Benefit Rate" is the portion of the Contribution Rate that is used to determine the amount of the monthly Normal Retirement Pension benefit earned by the Participant under Section 5.03 for Plan Years beginning after 2002. Specifically, for any period before December 1, 2007, the "Benefit Rate" is the Contribution Rate in effect on, or treated as in effect on, December 31, 2002, minus any portion of the Contribution Rate attributable to a 55/30 Rate. For any period after December 1, 2007, the "Benefit Rate" is the Contribution Rate, minus any portion of the Contribution Rate attributable to a 55/30 Rate. Effective January 1, 2014, if a Participant works in a classification of employment on or after January 1, 2014, which had a Contribution Rate before January 1, 2014 that had a portion attributable to a 55/30 Rate, then the Benefit Rate for any work performed after December 31, 2013 in that classification of employment shall consist of the Contribution Rate, minus the 55/30 Rate, regardless of whether the 55/30 Pension is a type of Early Retirement Pension applicable to such Participant's Contribution Hours under Section 5.04 at any time on or after January 1, 2014.

**Section 1.05    Code**

The term "Code" shall mean the Internal Revenue Code of 1986, as amended from time to time. Any reference in the Plan Document to a particular section of the Code shall be deemed to include any Treasury Regulation (Title 26 of the Code of Federal Regulations) or other form of guidance implementing or interpreting such Code section. A reference to a Treasury Regulation shall include any successor Treasury Regulation.

**Section 1.06    Collective Bargaining Agreement or Agreement**

The term "Collective Bargaining Agreement" or "Agreement" shall mean any labor contract between an Employer and the Union, which provides for contributions to this Fund, together with any renewal, modification, or amendment thereof or successor agreement thereto.

**Section 1.07    Compensation**

(a)    The term "Compensation" shall mean the wages actually paid or made available to an Employee by the Employer during the Plan Year. For this purpose, "wages" shall have the

meaning given such term in Section 3401(a) of the Code (withholding at the source), but determined without regard to any rules that limit the remuneration included in wages based on the nature or location of the employment or the services performed. An Employee's Compensation shall be determined in accordance with Treasury Regulation Section 1.415-2(d)(11)(ii). Effective January 1, 1998, the term "Compensation" shall also include any amounts contributed by the Employer during the Plan Year pursuant to an elective deferral under Code Section 402(g), or which is excludable from the Employee's gross income under Section 125, 132(f)(4), or 457 of the Code; before January 1, 1998, the term "Compensation" included such amounts solely for the purpose of Section 13.02(a) of the Plan Document (relating to the definition of "Key Employee").

(b)     The special rule in the prior plan relating to the definition of Key Employee under Section 13.02(a) of the Plan Document is eliminated effective January 1, 1998.

(c)     Annual Compensation Limitations.

(1)     For each Plan Year, the Compensation of each Participant taken into account for determining all benefits provided under the Plan for such Plan Year shall not exceed the limitation set forth in Section 401(a)(17) of the Code, as adjusted for the cost-of-living in accordance with Section 401(a)(17)(B) of the Code. For any Plan Year, the cost-of-living adjustment shall be that which is in effect at the beginning (i.e., January 1) of such Plan Year. This limitation shall be applied as if each Contributing Employer separately maintained this Plan.

(2)     If Compensation for any prior Plan Year is taken into account in determining a Participant's benefits for the current Plan Year, the Compensation for such prior Plan Year is subject to the applicable annual Compensation limit in effect for that prior period.

**Section 1.08     Construction Work; Non-Construction Work**

(a)     The term "Construction Work" shall mean work performed as a building trades or industrial journeyman or building trades apprentice, or work performed in any other job classification commonly understood to be construction work in the Sheet Metal Industry for purposes of collective bargaining. The term "Construction Work" shall also mean (1) work performed as a Covered Employee of a Participating Local or Related Organization unless such Employer's adoption agreement provides otherwise, and (2) work performed by an Owner-Member for an Employer whose employees perform Construction Work, provided that such Owner-Member continues to perform Construction Work or previously performed Construction Work covered under the Plan. Any reference in an adoption agreement or any other document relating to the Plan to "Plan A" shall be deemed to be a reference to Construction Work or, if applicable, those portions of the Plan in which reference is made to Construction Work.

(b)     The term "Non-Construction Work" shall mean any work that is not "Construction Work" as defined in (a) above. Any reference in an adoption agreement or any other document relating to the Plan to "Plan B" shall be deemed to be a reference to Non-Construction

4

Work or, if applicable, those portions of the Plan in which reference is made to Non-Construction Work.

## Section 1.09    Continuous Non-Covered Employment

The term "Continuous Non-Covered Employment" shall mean Non-Covered Employment that precedes or follows Covered Employment (with the same Employer) where no quit, discharge or retirement occurs between such periods of Covered Employment and Non-Covered Employment. The determination of whether Non-Covered Employment is Continuous Non-Covered Employment shall be made in accordance with Labor Regulation Section 2530.210, except that the term "contiguous non-covered service" shall be substituted for the term "Continuous Non-Covered Employment" when such term is used in the Plan Document.

## Section 1.10    Contributing Employer or Employer

(a)    The term "Contributing Employer" or "Employer" shall mean any employer, whether directly or through an employer association, who:

    (1)    has a Collective Bargaining Agreement with the Union requiring periodic contributions to the Fund created by the Trust Document;

    (2)    participates in the Plan in accordance with the provisions of Article 2 hereof, and such other conditions or requirements as the Trustees may impose; and

    (3)    whose status as a Contributing Employer has not been terminated by the Trustees for failing to comply with its participation obligations.

In the case of a Contributing Employer having more than one place of business, the term "Contributing Employer" shall only apply to the place or places of business covered by the Collective Bargaining Agreement.

(b)    The term "Contributing Employer" or "Employer" shall also mean:

    (1)    A Related Organization participating in the Plan in accordance with Section 2.06;

    (2)    A Political Subdivision, as that term is used in the Labor Management Relations Act, 29 U.S.C. Section 152(2), accepted for participation in the Plan by the Trustees in accordance with the provisions of Article 2; or

    (3)    A Participating Local, which contributes to the Plan on the same basis as other Contributing Employers. However, effective January 1, 1999, if a Participating Local does not execute an adoption agreement (or similar agreement) in a form acceptable to the Trustees, on or before such date, the Participating Local shall cease to be a Contributing Employer, until such time that the Participating Local executes an adoption agreement (or similar agreement) in a form acceptable to the Trustees. After January 1, 1999, a Participating Local that joins the Plan as a Contributing Employer must execute an adoption agreement (or similar agreement)

in a form acceptable to the Trustees. A Participating Local's status as a Contributing Employer is conditioned upon compliance with the requirements of Section 401(a) of the Code, ERISA and the terms of the adoption agreement (or similar agreement). Failure to comply with those requirements may result in the termination of the Participating Local's status as a Contributing Employer in accordance with Article 12. Nothing in this subsection (b)(3) shall be construed to relieve any Participating Local of any obligation it has to contribute to the Fund prior to the effective date of its adoption agreement (or similar agreement) or the effective date on which a Participating Local ceases to be a Contributing Employer under this subsection (b)(3).

    (4)    The Plan, but only with respect to employees within the meaning of Treasury Regulation Section 1.410(b)-6(d)(2)(ii).

(c)    The term "Contributing Employer" shall also mean any entity that is obligated to make periodic contributions to the Fund for work performed in a job classification, and at a place of business, covered by a Collective Bargaining Agreement with a Participating Local.

(d)    An Employer shall not be deemed a Contributing Employer simply because it is part of a controlled group of corporations or of a trade or business under common control, some other part of which is a Contributing Employer.

## Section 1.11    Contribution Date

The term "Contribution Date" shall mean the first date for which a Contributing Employer was or shall be obligated by a Collective Bargaining Agreement or other applicable agreement to make contributions to the Pension Fund.

The "Contribution Date" to be applied to each Employee shall be the date for which a Contributing Employer first became obligated to make contributions to the Pension Fund on his behalf.

## Section 1.12    Contribution Rate and other Related Terms

(a)    The term "Contribution Rate" means the amount that the Contributing Employer is obligated to pay to the Fund for each Hour of Work in Covered Employment. Effective January 1, 2008, the term "Contribution Rate" does not include any surcharge imposed upon a Contributing Employer pursuant to the Pension Protection Act of 2006. Terms related to Contribution Rate include the terms defined in (b) through (e) below.

(b)    The term "Benefit Rate" is defined in Section 1.04.

(c)    The term "Contribution Hours" means the total number of hours for which contributions are required to be made for a Participant's work in Covered Employment.

(d)    The term "55/30 Rate" is determined under Section 5.09(c).

6

(e)    The term "Supplemental Contributions" means any Employer contributions payable after December 31, 2002 but before December 1, 2007, which are not attributable to a 55/30 Rate, the Benefit Rate, or a required contribution increase.

**Section 1.13    Covered Employee or Employee**

(a)    The term "Covered Employee" or "Employee" shall mean:

    (1)    For persons hired or rehired before July 1, 2001, any person who is in a unit of employees covered by a Collective Bargaining Agreement and who performs work covered by a Collective Bargaining Agreement for a Contributing Employer. For persons hired or rehired on or after July 1, 2001, any person who is included in a unit of employees covered by a Collective Bargaining Agreement and who performs work covered by a Collective Bargaining Agreement for a Contributing Employer, other than an Owner-Member; provided, however, that if a person (i) performs work that is Non-Construction Work for a Contributing Employer, or (ii) effective September 1, 2001, for persons hired or rehired on or after September 1, 2001, performs work that is residential or service work, or work as a pre-apprentice for a Contributing Employer, or (iii) effective March 1, 2002, for persons hired or rehired on or after March 1, 2002, performs work in any classification other than as a building trades journeyman or building trades apprentice, and the person's Collective Bargaining Agreement provides in substance that no Plan contributions will be made for any new employee who performs such work during a specified period of time that does not exceed the first 90 calendar days (whether or not consecutive) of his or her employment, the person shall not be either a Covered Employee or an Employee during such specified period of time.

    (2)    Any person who is employed by the Plan, who is not included in a collective bargaining unit represented by the Union but who is permitted to be treated as so included pursuant to the rules set forth in Treasury Regulation Section 1.410(b)-6(d)(2)(ii), and who has signed a standard form of agreement with the Plan providing for such person's participation in the Plan and setting forth the Contribution Rate for such person.

(b)    The term "Covered Employee" or "Employee" shall also mean an employee of a Related Organization which is a Contributing Employer who (1) is included under the definition of the term "Covered Employee" in the Related Organization's adoption agreement, which is hereby incorporated by reference, or (2) if there is no such definition in the adoption agreement, a salaried or hourly paid employee of the Related Organization, other than an employee who is included in a unit of employees covered by a bona fide agreement which the Secretary of Labor finds to be a collective bargaining agreement between bona fide employee representatives and the Related Organization (provided, there is evidence that retirement benefits were the subject of good faith bargaining between the employee representatives and the Related Organization), unless the collective bargaining agreement provides for coverage of the employee under the Plan. A sample form of adoption agreement for Related Organizations that are health or welfare funds or pension funds is attached to and made a part of the Plan as Appendix C.

(c)    The term "Covered Employee" or "Employee" shall also mean a salaried or hourly paid employee of a Participating Local who is included under the definition of "Covered Employee" in the Participating Local's adoption agreement, which is hereby incorporated by reference. Notwithstanding anything to the contrary, a salaried or hourly employee who is included in a unit of employees covered by a bona fide agreement which the Secretary of Labor finds to be a collective bargaining agreement between bona fide employee representatives and the Participating Local shall not be treated as a "Covered Employee" or "Employee" (provided, that there is evidence that retirement benefits were the subject of good faith bargaining between the bona fide employee representatives and the Participating Local), unless such collective bargaining agreement specifically provides for coverage of the employee under the Plan.

(d)    Notwithstanding the provisions of Section 1.13(a)(1), an Owner-Member shall be a "Covered Employee" or an "Employee" if (1) a Contributing Employer is required to contribute to the Plan on behalf of the Owner-Member pursuant to a Collective Bargaining Agreement, or (2) the Owner-Member is employed by a Contributing Employer, is not included in a collective bargaining unit represented either by the SMWIA or by a Local Union of the SMWIA but is permitted to be treated as so included pursuant to the rules set forth in Treasury Regulation Section 1.410(b)-6(d)(2)(ii), and the Owner-Member's Employer contributes to the Plan on behalf of the Owner-Member in order to continue to provide benefits previously provided to the Owner-Member as a Covered Employee without regard to this Section 1.13(d). If a Contributing Employer contributes to the Plan on behalf of an Owner-Member pursuant to Section 1.13(d)(2), the Plan Document and the Trust Document shall be deemed to be a successor agreement to the Collective Bargaining Agreement under which such Owner-Member was most recently covered. By so-contributing, the Employer agrees to be bound by the terms of the Plan Document and Trust Document, and such Owner-Member shall be deemed to continue to be covered under such Collective Bargaining Agreement, including any changes thereto, at the position the Owner-Member most recently held under such Collective Bargaining Agreement for purposes of determining the Contribution Rate and the Contribution Hours on behalf of the Owner-Member. If a Contributing Employer employing an Owner-Member fails to make contributions to the Plan with respect to any Covered Employee, including the Owner-Member, the Owner-Member shall cease to be a Covered Employee as of the first day of the month that follows the due date of the unpaid contribution(s). With respect to any delinquency identified by the Plan after May 1, 2013, the preceding sentence shall apply only if the Contributing Employer knowingly failed to make contributions to the Plan with respect to any Covered Employee. An Owner-Member who ceased to be a Covered Employee by operation of this paragraph shall become a Covered Employee again when the Contributing Employer resumes making timely contributions to the Plan on behalf of all its Covered Employees, including the Owner-Member; provided, however, that the Owner-Member shall not be in Covered Employment for the one-year period commencing on the date of such resumption.

(e)    Notwithstanding anything in this Section to the contrary, the term "Covered Employee" or "Employee" shall not include any individual who is the sole proprietor of or a partner in a business organization, or an independent contractor.

**Section 1.14    Covered Employment**

Except as otherwise provided herein, the term "Covered Employment" shall mean work performed by an Employee on behalf of one or more Contributing Employers in his capacity as a Covered Employee under Section 1.13(a), (b), (c) or (d) above, and shall also mean work performed by a bona fide "Salted" organizer, but only for purposes of, and as defined in, Section 4.12 of the Plan Document.

Notwithstanding the foregoing, if an Owner Member who ceased to be a Covered Employee by operation of Section 1.13(d) becomes a Covered Employee again when the Contributing Employer resumes making timely contributions, any work performed by the Owner Member for the Contributing Employer will not constitute work in "Covered Employment" until after the close of the one-year period commencing on the date that the Contributing Employer resumed making timely contributions to the Plan on behalf of all its Covered Employees. In addition, notwithstanding any other provision to the contrary, the term "Covered Employment" shall not include any work performed for any Employer listed in Appendix E, effective as of the date specified therein and subject to any applicable notice requirements. However, any such work performed for an Employer listed in Appendix E will be treated as "Continuous Non-Covered Employment" within the meaning of Section 1.09 of the Plan Document. Nothing herein shall be construed to relieve any Employer listed in Appendix E of its obligation to continue contributing to the Plan in accordance with its Collective Bargaining Agreement.

For purposes of granting Past Service Credit under Article 4 of the Plan Document, the term "Covered Employment" shall have the meaning given to such term in Section 4.02(c) of Appendix A. Except as otherwise required by the Code or ERISA, Covered Employment shall not, however, include employment with an employer after termination of that employer's status as a Contributing Employer.

**Section 1.15    Disability Benefits**

The term "Disability Benefits" means the benefits described in Article 16.

**Section 1.16    Eligibility Computation Period**

An Employee's initial "Eligibility Computation Period" shall be the 12-consecutive month period beginning on the date the employee first performs an Hour of Work for a Contributing Employer (the "employment commencement date"). Thereafter, the Employee's "Eligibility Computation Period" shall be each Calendar Year, beginning with the Calendar Year commencing prior to the first anniversary of the Employee's employment commencement date, regardless of whether an Employee is credited with a Year of Service during his initial Eligibility Computation Period. For purposes of Article 3, both Years of Service and Breaks in Service shall be computed with reference to the Employee's Eligibility Computation Period, as defined in this Section.

**Section 1.17    ERISA**

The term "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time. Any reference in the Plan Document to a particular section of ERISA

shall be deemed to include any Labor Regulation (Title 29 of the Code of Federal Regulations) or other form of guidance implementing or interpreting such section of ERISA.  A reference to a Labor Regulation shall include any successor Labor Regulation.

**Section 1.18    Fund or Pension Fund**

The term "Fund" or "Pension Fund" shall mean the Sheet Metal Workers' National Pension Fund, which is the Trust Fund created by the Trust Document, and which forms a part of the Plan.  As used in the Plan Document, the term "Fund" or "Pension Fund" shall generally mean the monies or other things of value, which comprise the corpus and additions to the Trust Fund.

**Section 1.19    Fund Office**

The term "Fund Office" shall mean the principal place of business of the Plan.

**Section 1.20    Future Service Credit**

The term "Future Service Credit," with respect to any Covered Employee, shall mean the periods of his Covered Employment subsequent to the Contribution Date for which Pension Credit is granted to him in accordance with Article 4.

**Section 1.21    Hour of Work**

(a)    The term "Hour of Work" shall mean each hour for which an Employee is paid or entitled to payment for the performance of duties for an Employer or each hour for which back pay, regardless of mitigation of damages, is either awarded or agreed to by the Employer.  Hours of Work shall be computed and credited in accordance with Labor Regulation Section 2530.200b (including paragraph (d)(1) of Labor Regulation Section 2530.200b-3).

(b)    An Hour of Work for which an Employee is paid at time-and-a-half is credited as one and one-half Hours of Work if the Employer is required to contribute at one and one-half times the Contribution Rate for such Hours of Work.  An Hour of Work for which an Employee is paid at double time is credited as two Hours of Work if the Employer is required to contribute at two times the Contribution Rate for such Hours of Work.

**Section 1.22    Local, Local Union**

The term "Local" or "Local Union" shall mean a local union chartered by the SMWIA.

**Section 1.23    Non-Covered Employment**

The term "Non-Covered Employment" shall mean work performed for one or more Contributing Employers, which would not be Covered Employment as defined in Section 1.14.

10

**Section 1.24    Normal Retirement Age**

(a)    For Participants who commenced participation in the Plan on or after January 1, 1988, the term "Normal Retirement Age" shall mean the later of:

    (1)    the date on which the Participant attains age 65, or

    (2)    the date which is the fifth (5th) anniversary of the first day of the Plan Year in which the Participant commenced participation in the Plan, provided he is a Participant on such fifth (5th) anniversary.

(b)    For Participants who commenced participation in the Plan prior to January 1, 1988, the term "Normal Retirement Age" shall mean the later of:

    (1)    the date on which the Participant attains age 65, or

    (2)    the date which is the earlier of (i) the tenth (10th) anniversary of the first day of the Plan Year in which the Participant commenced participation in the Plan or (ii) the fifth (5th) anniversary of the first day of the first Plan Year beginning on or after January 1, 1988 (i.e., January 1, 1993), provided he is a Participant on such anniversary.

(c)    For purposes of this Section, participation prior to a Permanent Break in Service shall be disregarded, and the date on which participation in the Plan commences shall be the date on which a Participant again satisfies the requirements of Section 3.02 following such Permanent Break in Service.

(d)    For purposes of this Section, the date on which a Participant commenced participation in the Plan shall not be affected by a One-Year Break in Service, provided that all prior Years of Service and Pension Credit are restored under Section 4.13(c) and participation is reestablished under Section 3.04(a)(2).

**Section 1.25    Normal Retirement Benefit**

    The term "Normal Retirement Benefit" for any Participant shall mean the periodic benefit under the Plan commencing at his Normal Retirement Age, or if greater, the periodic benefit under the Plan commencing upon his retirement prior to Normal Retirement Age. Notwithstanding the foregoing, a Participant's Normal Retirement Benefit under the Plan shall be determined in accordance with Section 411(a)(9) of the Code and Treasury Regulation Section 1.411(a)-7(c).

**Section 1.26    Owner-Member**

    An Owner-Member is any person who (a)(1) is included in a unit of employees covered by a Collective Bargaining Agreement, or (2) is permitted to be treated as so included pursuant to the rules set forth in Treasury Regulation Section 1.410(b)-6(d)(2)(ii), (b) is employed by a Contributing Employer, (c) owns stock in, or is an officer or director of, such Contributing Employer, and (d) for

11

such persons described in Section 1.26(a)(1), performs work covered by the Collective Bargaining Agreement.

**Section 1.27      Participant**

The term "Participant" shall mean a Pensioner, a Beneficiary, or an Employee who meets the requirements for participation in the Plan as set forth in Article 3, or a former Employee who has attained Vested Status under Section 8.07 of the Plan Document.

**Section 1.28      Participating Local**

The term "Participating Local" shall mean a Local that participates in the Plan for the purpose of providing coverage under the Plan for employees represented by the Union for the purpose of collective bargaining.  The term "Participating Local" shall also include a Local that contributes to the Plan under the terms of Section 1.10(b)(3).

**Section 1.29      Past Service Credit**

The term "Past Service Credit" shall mean periods of employment prior to the Contribution Date for which Pension Credit is granted in accordance with Article 4.

**Section 1.30      Pension Credit**

The term "Pension Credit" shall, unless otherwise indicated, mean the Future Service Credit and Past Service Credit that is granted in accordance with Article 4 and which is used to determine eligibility for benefits and, in some cases, the amount of benefits payable under the Plan.

**Section 1.31      Pensioner**

The term "Pensioner" means a Participant to whom a pension or disability benefit under the Plan is being paid or would be payable but for the time required for administrative processing.

**Section 1.32      Plan or Pension Plan**

The term "Plan" or "Pension Plan" means the multiemployer defined benefit pension plan known as the "Sheet Metal Workers' National Pension Fund."

**Section 1.32A   Plan Document**

The term "Plan Document" means the provisions of this Sheet Metal Workers' National Pension Fund Plan Document, 2009-10 Amended and Restated Edition, effective generally as of January 1, 2009 (except where a different effective date is specified or required by the context of a specific provision), as set forth in this document, together with any subsequent amendments duly adopted by the Trustees, participation, adoption or similar agreements, terms of merger agreements, or any other document duly adopted by the Trustees, which governs the payment of Benefits from the

Plan. Any reference to a prior version of the "Plan Document" shall refer to the document setting forth the rules and regulations of the Plan, as in effect at such prior time. Effective March 2, 2008, the term Plan Document includes the Rehabilitation Plan and Schedules (as amended or modified from time-to-time), which are attached hereto at Appendix C.

**Section 1.33     Plan Year or Calendar Year**

The terms "Calendar Year" and "Plan Year" shall mean the twelve (12) consecutive month period commencing on January 1 and ending on December 31. For purposes of ERISA, the Calendar Year shall serve as the vesting computation period, the benefit accrual computation period, and, after an individual's initial period of employment, the computation period for eligibility to participate in the Plan. The terms "Calendar Year" and "Plan Year" may be used interchangeably.

**Section 1.34     Related Organization**

The term "Related Organization" shall mean a health or welfare fund, a pension plan, a joint apprenticeship committee, or such other organization (such as the SMWIA, Sheet Metal Workers' International Training Institute, and National Energy Management Institute), which the Trustees find furthers the interests of the employees represented by a Participating Local or District Council (as defined in the SMWIA's constitution), or the interests of the Sheet Metal Industry, and which participates in the Plan as a Contributing Employer under Section 2.06 of the Plan Document. Notwithstanding the foregoing, or any agreement to the contrary, effective June 15, 1996, the term "Related Organization" shall exclude the Plan.

**Section 1.35     Sheet Metal Industry**

The term "Sheet Metal Industry" shall mean any and all types of work covered by collective bargaining agreements to which the Union and/or any Local are a party; or under the trade jurisdiction of the Union, as described in the SMWIA's constitution (except insofar as such trade jurisdiction relates solely to the Transportation Division); or in a related building trade; or any other work to which a sheet metal worker has been assigned, referred, or can perform because of his skills and training as a sheet metal worker. However, for purposes only of Section 4.08 of the Plan Document, Section 5.02(a)(5)(A)(iii) of Appendix A, any Early Retirement Pension and Sections 7.01(b), 8.06(d)(1), 16.03(a)(5), and 16.04(a)(5) of the Plan Document, the term "Sheet Metal Industry" shall not include:

(a)     employment as a bona fide "Salted" Organizer, as certified in writing to the Fund Office by the SMWIA; provided, however, that any single period of employment with the same employer as a bona fide "Salted" organizer shall not exceed 12 months;

(b)     employment in a related building trade; provided, however, that such employment is on referral by and authorized by the Union;

(c)     employment for a Contributing Employer in a management position not covered by the Collective Bargaining Agreement;

13

(d)    working as an inspector of sheet metal work (as defined in 271 CMR (Code of Massachusetts Regulations) 2.01) on or after January 1, 2011 but before January 1, 2015 if: (i) the work is performed pursuant to the requirements of the Rules and Regulations Governing Sheet Metal Workers (Sheet Metal Worker Regulations) in 271 CMR; (ii) the person performing such inspection work obtains a certification in a form and manner satisfactory to the Trustees from his Local Union, which verifies that the inspection work is being performed pursuant to the requirements of the Sheet Metal Regulations in 271 CMR; (iii) the work is performed for or on behalf of a governmental entity; and (iv) the work does not involve any type of work that would be covered under any collective bargaining agreement to which the Union is a party; or

(e)    working after August 31, 2011 but before January 1, 2021 for, or on behalf of, a governmental entity in a position that primarily involves compliance with the requirements of any federal, state, county, or municipal law, regulation, rule, or ordinance pertaining to construction, building, or facilities codes or standards, or pertaining to the terms or conditions of employment, work, or labor.

(f)    work performed in the State of California by an apprentice who was dispatched by the Local Union or by an affiliated Joint Apprenticeship and Training Committee (JATC) (or similar entity) pursuant to California law, which has been substantiated by sufficient documentation from the apprentice's Local Union or JATC (or similar entity).

## Section 1.36    SMWIA

The term "SMWIA" shall mean the Sheet Metal Workers' International Association, AFL-CIO, or the International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART"), excepting the Transportation Division of SMART (or any affiliate of the Transportation Division of SMART).

## Section 1.37    Trust Document

The term "Trust Document" shall mean the Trust Document under which the Sheet Metal Workers' National Pension Fund is maintained and which governs the management and administration of the Plan and its assets, as the same may be amended or amended and restated from time to time. The Trust Document was previously referred to as the Agreement and Declaration of Trust establishing the Sheet Metal Workers' National Pension Fund, which was entered into as of the 16th day of May, 1966, and which has been amended and restated from time to time and has been renamed as the "Trust Document." The terms of the Trust Document are incorporated by reference herein.

## Section 1.38    Trustees

The term "Trustees" shall mean the persons who are acting as Employer Trustees and Union Trustees pursuant to the provisions of the Trust Document.

14

**Section 1.39    Union**

The term "Union" shall mean the SMWIA and/or any Local.

**Section 1.40    Year of Service**

(a)    The term "Year of Service" for any Employee shall mean a consecutive 12-month period (i.e., the Eligibility Computation Period for purposes of Article 3 or the Calendar Year for purposes of Section 8.07) during which the Employee completes at least 870 Hours of Work in Covered Employment.

(b)    For purposes of subsection (a) above, Hours of Work in Non-Covered Employment shall count toward a Year of Service to the extent that (and only to such extent) the Non-Covered Employment is Continuous Non-Covered Employment; provided that, for purposes of determining a Participant's Vested Status under Section 8.07, this subsection (b) shall apply only with respect to Hours of Work performed after December 31, 1975.  To the extent that Non-Covered Employment is not Continuous Non-Covered Employment, Hours of Work in Non-Covered Employment shall not count toward a Year of Service for purposes of subsection (a) above.

(c)    Notwithstanding any provision in this Plan Document to the contrary, Years of Service shall be determined in accordance with the requirements of Labor Regulation Section 2530.210.

## ARTICLE 2   BASIS OF EMPLOYER PARTICIPATION IN PLAN

**Section 2.01    General**

The Pension Plan was established to provide retirement benefits for employees who are represented for the purpose of collective bargaining by the Union.  After a Collective Bargaining Agreement is concluded with an employer requiring contributions to the Pension Fund, the participation by the employees of that employer becomes effective when the group participates in the Plan.

In general, the employees of employers will participate in the Plan if their joining the Plan is in accordance with the procedures established by the Trustees and if acceptance of the group will not impair the actuarial soundness of the Fund or the tax-qualified status of the Plan under Section 401(a) of the Code.

In addition to employees represented for the purpose of collective bargaining by the Union, the Trustees have decided to permit participation by other classes of employees who are employed by a Contributing Employer but who may not be represented for the purpose of collective bargaining by the Union.  Such participation shall be on the terms and conditions determined by the Trustees, provided that the participation of any such group will not impair the actuarial soundness of the Fund or adversely affect the Plan's tax-qualified status under Section 401(a) of the Code.

15

**Section 2.02    Acceptance of a New Employer for Participation**

An employer will participate in the Plan as a Contributing Employer, within the meaning of Section 1.10(a), after it becomes a party to a Collective Bargaining Agreement or other agreement in a form approved by the Trustees that, in pertinent part, requires the employer to contribute to the Fund, in which case, the Contributing Employer shall abide by the terms of this Plan Document and the Trust Document.  When an employer seeks to be a Covered Employer, each Local may be required to furnish to the Fund Office the name, date of birth and employment history of each employee then covered by the Collective Bargaining Agreement between the Union and the new employer and such other information as may be requested for purposes of making the determinations described in Section 2.08(a).  A Participating Local or a Related Organization shall participate in the Plan in accordance with the terms of Sections 1.10(b) and 2.06, respectively.  An Owner-Member shall participate in the Plan in accordance with the terms of Section 1.13(d).

**Section 2.03    Special Conditions**

When a Contributing Employer participates in the Plan, or when a Contributing Employer becomes obligated to contribute to the Fund at a Contribution Rate higher than $0.25 per hour paid, the Trustees may, in writing, impose any terms and conditions they consider necessary to satisfy Section 2.08 and to preserve the equitable relationship between the basis of contributions of all Contributing Employers and the benefits provided for all Covered Employees; provided that such terms and conditions shall not result in the reduction or elimination of a benefit in violation of Section 411(d)(6) of the Code.

**Section 2.04    Termination of Participation**

The termination of an employer's status as a Contributing Employer, or a Local's status as a Participating Local, or an employee's status as a Covered Employee as a result of a change in his Employer's or Participating Local's status shall be governed by Article 12.

**Section 2.05    Acceptance of Special Class of Employees of a Contributing Employer**

The rules pursuant to which the Trustees could, prior to September 1, 1999, accept a special class of employees of a Contributing Employer for participation in the Plan are set forth in Appendix A.

**Section 2.06    Related Organization as a Contributing Employer**

A health or welfare fund, a pension plan, including the Plan (but solely for periods prior to June 15, 1996), joint apprenticeship committee or other organization (such as the SMWIA, Sheet Metal Workers' International Training Institute, and National Energy Management Institute), which the Trustees find furthers the interests of the employees represented by a Participating Local or District Council (as defined in the SMWIA's constitution), or the interest of the Sheet Metal Industry, may be accepted in the Plan as a Contributing Employer under the following conditions:

16

(a) The organization submits such data as may be requested by the Trustees as to the employees covered by the organization's participation agreement; and

(b) The organization agrees to make contributions to the Fund on behalf of the employees covered in such participation agreement at the Contribution Rate in effect for Contributing Employers who have a Collective Bargaining Agreement with any related Participating Locals or District Councils, or at such other Contribution Rate(s) as the Trustees may prescribe in the organizations participation agreement.

## Section 2.07    Owner-Members

The rules pursuant to which the Trustees could, prior to January 1, 2002, allow Owner-Member participation in the Plan are set forth in Appendix A.

## Section 2.08    Basis for Participation and Continuing Participation

(a) If it is determined at any time that the participation or continued participation of any Contributing Employer including, but not limited to, any Participating Local or Related Organization, or if participation or the continued participation of any Owner-Member or special class of employees, would or could, in the judgment of the Trustees with the advice of the actuaries of the Fund, adversely affect the actuarial soundness of the Fund or the ongoing tax-qualified status of the Plan under Section 401(a) of the Code, the Trustees may, as a condition of participation or continued participation, modify any terms and conditions of such participation and/or take any such actions (including, but not limited to, limiting participation in the fund) that they, in their sole discretion, consider necessary or appropriate to preserve the actuarial soundness of the Fund or the ongoing tax-qualified status of the Plan under Section 401(a) of the Code.  In considering the effect that continued participation of any Contributing Employer, Participating Local, Related Organization or Owner-Member could have on the actuarial soundness of the Fund or on the ongoing tax-qualified status of the Plan under Section 401(a) of the Code, the Trustees are authorized to consider the effect on the Fund if other Contributing Employers, Participating Locals, Related Organizations and/or Owner-Members were to participate on the same or similar terms.

(b) Notwithstanding the foregoing, no action may be taken pursuant to this Section 2.08 to the extent it would cause a reduction or elimination of a benefit in violation of Section 411(d)(6) of the Code.

## ARTICLE 3  PARTICIPATION OF EMPLOYEES

## Section 3.01    Purpose

This Section contains rules for determining when an Employee becomes a Participant in the Plan and the effect of a Break in Service on his participation in the Plan.  It should be noted that once

an Employee has become a Participant, the provisions of this Plan Document may give him credit in accordance with the rules of the Plan for some or all of his service before he became a Participant.

**Section 3.02    Commencement of Participation**

An Employee who is engaged in Covered Employment with a Contributing Employer shall become a Participant in the Plan on the first January 1 or July 1 immediately following completion of one (1) Year of Service.

**Section 3.03    Years of Service Taken into Account**

Except as provided in Section 3.04 below, with respect to any Employee, all of the Employee's Years of Service shall be taken into account in computing the period of service required for purposes of Section 3.02 above.

**Section 3.04    Effect of Break in Service on Participation in the Plan**

(a)    One-Year Break in Service

    (1)    Cessation of Participation

        If Participant incurs a One-Year Break in Service (as defined in Section 4.13(b)), he shall cease to be a Participant as of the last day of the Calendar Year in which his One-Year Break in Service occurred, unless such Participant is a Pensioner or has attained Vested Status under Section 8.07.

    (2)    Service Disregarded Before One-Year Break in Service

        If a former Participant who has incurred a One-Year Break in Service returns to Covered Employment, any period of service earned before the Employee incurred a One-Year Break in Service shall not be taken into account until he has again completed a Year in Service following his return to Covered Employment. However, in determining whether an Employee completes a Year of Service after his return, his Eligibility Computation Period shall be measured by the 12-consecutive month period beginning on such Employee's Reemployment Commencement Date (as defined in paragraph (4) below) and, if necessary, Calendar Years beginning with the Calendar Year that includes the first anniversary of his Reemployment Commencement Date.

    (3)    Effective Date of Participation After Reemployment

        Except as provided in subsection (b) below, upon completing a Year of Service in accordance with paragraph (2) above, the Employee shall again participate in the Plan effective as of his Reemployment Commencement Date; provided that the Employee is engaged in Covered Employment on his Reemployment Commencement Date. If an Employee is not engaged in Covered Employment on

18

his Reemployment Commencement Date, the Employee's participation in the Plan shall be reinstated effective as of the first day on which he is credited with an Hour of Work in Covered Employment following his Reemployment Commencement Date.

(4)     Reemployment Commencement Date

For purposes of this subsection (a), an Employee's "Reemployment Commencement Date" is the first day on which he would be credited with an Hour of Work for the performance of duties for an Employer after the first Calendar Year (i.e., first Eligibility Computation Period) in which he incurs the One-Year Break in Service under Section 4.13.

(b)     Return to Covered Employment after Permanent Break in Service

If a former Participant returns to Covered Employment after incurring a Permanent Break in Service (as defined in Section 4.13(d)), he will be treated as a new Employee upon his return to Covered Employment and all prior Years of Service will be disregarded for purposes of this Article 3.  In that case, the former Participant shall again become a Participant in accordance with Section 3.02.

## ARTICLE 4   PENSION CREDIT AND BREAKS IN SERVICE

**Section 4.01     Purpose**

The purpose of this Article 4 is to define the basis on which Participants accumulate Pension Credit for purposes of determining pension benefits under the Plan.  This Article 4 also defines the circumstances under which Pension Credit and Years of Service may be lost pursuant to a Break in Service.

**Section 4.02     Past Service Credit for an Employer's Contribution Date before January 1, 2000**

Past Service Credit shall be granted with respect to a Participant whose Employer's Contribution Date is before January 1, 2000, in accordance with Section 4.02 of Appendix A.

**Section 4.03     Past Service Credit for an Employer's Contribution Date on or after January 1, 2000**

(a)     For an Employer's Contribution Date that is on or after January 1, 2000, Past Service Credit for any years of employment prior to the Employer's Contribution Date will be granted to the Participant on the basis of one year of Past Service Credit for each year of Future Service Credit subsequently earned if:

(1)     the Contributing Employer's initial Contribution Rate is at least 50¢ per hour; and

19

(2)     the Participant is employed by the Employer in Covered Employment on the Contribution Date or was employed by the Employer within the 24-month period preceding the Employer's Contribution Date and is engaged in Covered Employment on the Employer's Contribution Date.

(b)     Past Service Credit granted in accordance with this section shall be limited to:

(1)     a maximum of 10 years; and

(2)     periods during which the Participant was actively employed by the Employer and not absent due to sick leave, jury duty, parental leave or similar circumstances.

(c)     The provisions of Section 4.02 of Appendix A shall apply to Past Service Credit granted in accordance with this Section.

(d)     Notwithstanding the provisions of subsection (a) that requires an Employer's Contribution Date to be on or after January 1, 2000, the provision shall apply to:

(1)     Effective August 11, 2005, Employees engaged in Covered Employment with SEMCO, Inc. (formerly known as Autoduct) from September 1999 and who continued to work in Covered Employment with SEMCO, Inc. through November 2000, under the terms of a Collective Bargaining Agreement with Local Union No. 32, shall be granted Past Service Credit in accordance with the provisions of this Section 4.03. The Contribution Date for both SEMCO, Inc. (formerly Autoduct) and the Covered Employees identified under this subsection (d)(1) shall be September 1, 1999 and all other provisions of this section 4.03 shall otherwise apply.

(2)     Effective August 11, 2005, Employees engaged in Covered Employment with Hayes & Buri, as of October 1999 and who continued to work in Covered Employment with Hayes & Buri, Inc., through December 2003, under the terms of a Collective Bargaining Agreement with Local Union No. 71, shall be granted Past Service Credit in accordance with the provisions of this section 4.03. The Contribution Date for both Hayes & Buri, Inc. and the Covered Employees identified under this subsection (d)(2) shall be October 1, 1999 and all other provisions of this section 4.03 shall otherwise apply.

**Section 4.04     Credit for Calendar Year of Contribution Date**

For the first Calendar Year in which a Participant's Contribution Date occurs, if the Contribution Date is on a date other than January 1st, and if the Participant worked 150 days or earned $2500 in Covered Employment, he shall be given one (1) year of Past Service Credit for the full Calendar Year, as though it were a Year of Service for which the Employee is entitled to Past Service Credit. However, the period for which contributions have been made in that Calendar Year shall also be counted as minimum Future Service Credit under Section 4.09 of the Plan Document and toward the Years of Service for purposes of vesting under Section 8.07; provided that no Participant may receive credit for more than one (1) Calendar Year during any 12-consecutive month period of employment.

20

**Section 4.05     Work for Employer Who Went Out of Business, or for Local That Becomes or Merges Into a Participating Local**

(a)     If a Participant worked for an employer who went out of business, and such business was taken over by a Contributing Employer, or in other comparable situations, credit for periods of employment with the employer who went out of business may be granted for purposes of Section 4.02 of Appendix A, if the Trustees, in their sole discretion, are satisfied on the basis of evidence submitted to them, that it is appropriate to treat the Contributing Employer as one who succeeded to the business of the employer who went out of business.

(b)     If an individual performed employment in the Sheet Metal Industry for an employer that was not covered by a Collective Bargaining Agreement between the employer and a Local Union, but which was covered by a collective bargaining agreement between the employer and the Local that required that the employer contribute to a pension fund maintained by the Local, and the Local becomes a Participating Local or is merged into a Participating Local, the Trustees may grant credit for periods of employment with the employer during the period that the Local Union was not a Participating Local, if the Trustees, in their sole discretion, are satisfied on the basis of evidence submitted to them that it is appropriate to grant past service credit to all similarly-situated members of such Local Union in such a circumstance.

**Section 4.06     Past Service Credit for Participants Not Covered by a Collective Bargaining Agreement**

Any Past Service Credit granted under this Article 4 to a Participant who is a member of a special class of employees accepted for participation in the Plan under Section 2.05 of Appendix A, or who is employed by a Related Organization or a Participating Local, shall be granted in accordance with the requirements of Treasury Regulation Section 1.401(a)(4)–11(d).   Notwithstanding any provision in this Article 4 to the contrary, a Participant who would be treated as a "collectively bargained employee" under paragraph (C) or (D) of Treasury Regulation Section 1.410(b)–6(d)(2)(ii) shall receive Past Service Credit only in a manner that is generally no more favorable than similarly situated Participants who are covered by a Collective Bargaining Agreement.

**Section 4.07     Breaks in Service Prior to the Contribution Date (Past Service)**

(a)     If a Participant's employment during the period prior to his Contribution Date was interrupted by three (3) consecutive Calendar Years in which the Participant failed to earn at least one (1) year of Past Service Credit, it shall be considered a "Break in Past Service." In that case, no Past Service Credit shall be granted for the period preceding such Break in Past Service, but he shall be granted Past Service Credit for the years subsequent to such Break in Past Service in which he meets the requirements set forth in Section 4.03 above and Section 4.02(b) of Appendix A.

21

(b)    Notwithstanding the provisions of Section 4.07(a), above, no Break in Past Service shall be deemed to have occurred and consequently there shall be no loss of prior Past Service Credit if the Trustees determine that the interruption of the Participant's employment is attributable to:

    (1)    proven disability during a period prior to January 1, 2000, whether occupational or non-occupational, involving total incapacity to work in the capacity in which he was employed when he became disabled and lack of any other employment for a period not exceeding five years;

    (2)    the Participant being a Reemployed Veteran (as defined in Section 4.15) who incurs a period of Qualified Military Service (as defined in Section 4.15);

    (3)    service as a full-time elected or appointed officer or employee of the Union; or

    (4)    notwithstanding the provisions of Section 4.02(a) of Appendix A or anything to the contrary in the Plan Document, a period of time prior to January 1, 2000, during which he does not exceed ten years as the owner of a small business employing no more than four people including himself who are covered by a Collective Bargaining Agreement, provided that the owner continues to work inside as a sheet metal worker and not outside erecting during such period and provided further that he subsequently returns to work in Covered Employment.

**Section 4.08    Loss of Past Service Credit**

(a)    Notwithstanding any other provision of this Plan Document, if a Participant or Employee (or a former Participant or Employee) at any time after his Contribution Date performs at least one (1) hour of employment in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer, then he shall lose all Past Service Credit for the purpose of calculating his benefit amount.    However, notwithstanding the foregoing, this Section 4.08 shall not apply to the extent that it would cause any Participant's or Employee's Accrued Benefit to be less than it was on August 31, 1988, or to the extent that it would result in a forfeiture of any part of the Accrued Benefit of a Participant who has attained Vested Status under Section 8.07 prior to the date on which he first performs at least one (1) hour of employment in such Non-Covered Employment.

(b)    In the event that a Participant or Employee loses all Past Service Credit pursuant to subsection (a) above, that Past Service Credit shall be restored if the Participant or Employee returns to Covered Employment and earns a number of months of Pension Credit, as otherwise determined under this Article 4, equal to the number of months during which he was previously employed for at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer.    In the event that the Participant does not earn an equal amount of Pension Credit, the Past Service Credit shall be restored on a pro rata basis determined by dividing the number of months of Pension Credit earned subsequent to his return to Covered Employment by the number of months during which the individual previously worked at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective

22

bargaining agreement between the Union and the employer. Such percentage shall not be greater than 100%. Notwithstanding the foregoing, effective January 1, 2003, an Employee or Participant who returns to Covered Employment after working in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer shall have all of his Past Service Credit restored provided he (1) terminates the non-covered employment, (2) returns to Covered Employment between January 1, 2002 and December 31, 2004, and (3) thereafter earns at least twelve (12) months of Future Service Credit.

(c)     A Participant or Employee's right to restore lost Past Service Credit pursuant to the preceding paragraph shall be limited to his first return to Covered Employment after being employed for at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer. If the Participant or Employee then leaves Covered Employment again and is again employed for at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer, a subsequent return to Covered Employment shall not qualify for the remedial provisions set forth in the preceding paragraph.

**Section 4.09     Pension Credit for Periods on and after the Contribution Date (Future Service Credit)**

(a)     The provisions in this Section 4.09 apply only to Hours of Work in Covered Employment on or after the Participant's Contribution Date.

(b)     Participants who perform Construction Work after their Contribution Date

  (1)     The following rules apply to Plan Years beginning on or after January 1, 2008 or before January 1, 1995:

    (A)     A Participant who performs Construction Work during a Plan Year beginning on or after January 1, 2008 or before January 1, 1995 will receive one (1) year of Future Service Credit for each such Plan Year in which he completes 1200 or more Hours of Work in Covered Employment. Proportionately less credit for such period shall be granted in accordance with the schedule below:

| Hours of Work in Covered Employment During Plan Year | Months of Pension Credit |
|---|---|
| Less than 100 hours | 0 |
| 100-199 | 1 |
| 200-299 | 2 |
| 300-399 | 3 |
| 400-499 | 4 |
| 500-599 | 5 |
| 600-699 | 6 |

23

| | |
|---|---|
| 700-799 | 7 |
| 800-899 | 8 |
| 900-999 | 9 |
| 1000-1099 | 10 |
| 1100-1199 | 11 |
| 1200 and over | 12 |

(B)   If a Participant described in (A) above commenced participation (or recommences participation) in the Plan on a date other than January 1, and the Participant completed a Year of Service for purposes of Section 8.07 but less than 100 Hours of Work in Covered Employment during such Plan Year, he shall be credited with a prorated portion of a full Year of Future Service Credit in the ratio that his Hours of Work in Covered Employment has to 1,200.

(2)   The following rules apply to Plan Years beginning on or after January 1, 1995 but before January 1, 2008:

(A)   A Participant who performed Construction Work during a Plan Year beginning on or after January 1, 1995 but before January 1, 2008 receives one (1) year of Future Service Credit for each such Plan Year in which he completed 1400 or more Hours of Work in Covered Employment. Proportionately less credit will be granted for such period in accordance with the schedule below:

| Hours of Work in Covered Employment During Plan Year | Months of Future Service Credit |
|---|---|
| Less than 116 hours | 0 |
| 116-231 | 1 |
| 232-347 | 2 |
| 348-463 | 3 |
| 464-579 | 4 |
| 580-695 | 5 |
| 696-811 | 6 |
| 812-927 | 7 |
| 928-1043 | 8 |
| 1044-1159 | 9 |
| 1160-1275 | 10 |
| 1276- 1399 | 11 |
| 1400 and over | 12 |

(B)   Notwithstanding the provisions of Section 4.09(b)(2)(A), if a Participant failed to complete 1400 or more Hours of Work in Covered Employment during a Plan Year beginning on or after January 1, 1995 and before January 1, 2001, but his total number of Hours of Work in Covered Employment for two consecutive Plan Years (excluding Plan Years beginning on or after January 1, 2001) equaled or exceeded 2800, he does not receive proportional

24

credit as shown in the schedule in Section 4.09(b)(2)(A), but instead receives one (1) year of Future Service Credit for each of the two (2) Plan Years (but it does not have the effect of increasing the Participant's benefit accrual for the 2000 Plan Year).

(C)    In no event will the special rule set forth in Sections 4.09(b)(2)(B) apply to any three consecutive Plan Years.

(D)    If a Participant described in (A) above commenced participation (or re-participation) in the Plan on a date other than January 1, and the Participant completed a Year of Service for purposes of Section 8.07 but less than 100 Hours of Work in Covered Employment during such Plan Year, he shall be credited with a prorated portion of a full Year of Future Service Credit in the ratio that his Hours of Work in Covered Employment has to 1400.

(c)    Participants who Perform Non-Construction Work after their Contribution Date

(1)    A Participant who performs Non-Construction Work during a Plan Year beginning on or after January 1, 2008, will receive one (1) year of Future Service Credit for each such Plan Year in which he completes 1200 or more Hours of Work in Covered Employment.  Proportionately less credit for such period shall be granted in accordance with the schedule below:

| Hours of Work in Covered Employment During Plan Year | Months of Pension Credit |
|---|---|
| Less than 100 hours | 0 |
| 100-199 | 1 |
| 200-299 | 2 |
| 300-399 | 3 |
| 400-499 | 4 |
| 500-599 | 5 |
| 600-699 | 6 |
| 700-799 | 7 |
| 800-899 | 8 |
| 900-999 | 9 |
| 1000-1099 | 10 |
| 1100-1199 | 11 |
| 1200 and over | 12 |

(2)    A Participant who performed Non-Construction Work during a Plan Year: beginning on or after January 1, 2000 but before January 1, 2008 receives one (1) year of Future Service Credit for each such Plan Year in which he completed 1400 or more Hours of Work in Covered Employment.  Proportionately less credit for such period shall be granted in accordance with the schedule below:

25

| Hours of Work in Covered Employment During Plan Year | Months of Future Service Credit |
|---|---|
| Less than 116 hours | 0 |
| 116-231 | 1 |
| 232-347 | 2 |
| 348-463 | 3 |
| 464-579 | 4 |
| 580-695 | 5 |
| 696-811 | 6 |
| 812-927 | 7 |
| 928-1043 | 8 |
| 1044-1159 | 9 |
| 1160-1275 | 10 |
| 1276- 1399 | 11 |
| 1400 and over | 12 |

(3)     The following rules apply to Plan Years beginning after January 1, 1976, but before January 1, 2000:

(A)     A Participant who performed Non-Construction Work during a Plan Year beginning on or after January 1, 1976 but before January 1, 2000 receives one (1) year of Future Service Credit for each such Plan Year in which he completed 1800 or more Hours of Work in Covered Employment. Proportionately less credit shall be granted in accordance with the schedule below:

| Hours of Work in Covered Employment During Plan Year | Months of Future Service Credit |
|---|---|
| Less than 100 hours | 0 |
| 100-164 | 1 |
| 165-328 | 2 |
| 329-492 | 3 |
| 493-656 | 4 |
| 657-820 | 5 |
| 821-984 | 6 |
| 985-1148 | 7 |
| 1149-1312 | 8 |
| 1313-1476 | 9 |
| 1477-1640 | 10 |
| 1641-1799 | 11 |
| 1800 and over | 12 |

(B)     Notwithstanding the provisions of Section 4.09(c)(3)(A), if a Participant fails to complete 1800 or more Hours of Work in Covered Employment during a Plan Year beginning on or after January 1, 1995 and before January 1, 2001, but his total number of Hours of Work in Covered Employment for two consecutive Plan Years (excluding Plan Years beginning on or after

January 1, 2001) equaled or exceeded 3600, he does not receive proportional credit as shown in the schedule in Section 4.09(c)(3)(A), but instead receives one (1) year of Future Service Credit for each of the two (2) consecutive Plan Years (but it does not have the effect of increasing the Participant's benefit accrual for the 2000 Plan Year).

(C)    In no event shall the special rule set forth in Sections 4.09(c)(3)(B) apply to any three consecutive Plan Years.

(4)    A Participant who performed Non-Construction Work during any Plan Year beginning before January 1, 1976 receives one (1) year of Future Service Credit for each such Plan Year in which he completed 1800 or more Hours of Work in Covered Employment.  Proportionately less credit shall be granted in accordance with the following schedule:

| Hours of Work in Covered Employment During Plan Year | Months of Pension Credit |
| --- | --- |
| Less than 150 hours | 0 |
| 150-299 | 1 |
| 300-449 | 2 |
| 450-599 | 3 |
| 600-749 | 4 |
| 750-899 | 5 |
| 900-1049 | 6 |
| 1050-1199 | 7 |
| 1200-1349 | 8 |
| 1350-1499 | 9 |
| 1500-1649 | 10 |
| 1650-1799 | 11 |
| 1800 and over | 12 |

**Section 4.10     Pension Credit for Periods of Unemployment**

For Plan Years beginning prior to January 1, 2000 and only for purposes of receiving Pension Credit under this Article, a Participant shall be credited with Hours of Work in Covered Employment equal to the number of hours for which he receives unemployment benefits from a trust fund maintained by his Local Union and Contributing Employer, as specified in Section 4.10 of Appendix A

**Section 4.11     Pension Credit for Periods of Employment under Sheet Metal Workers' Local Union #22's Jurisdiction**

A Participant shall receive Past Service Credit under Section 4.02(c)(2) of Appendix A for employment prior to December 20, 1996, in the jurisdiction of Sheet Metal Workers' Local Union #22 as described in Section 4.11 of Appendix A.

27

**Section 4.12    Credit for Periods of Employment as a "Salted Organizer" or "Youth-to-Youth" Apprentice**

An individual (i) who is a member of a Local which is a Contributing Employer and (ii) who also is working as a bona fide "Salted Organizer" or as a "Youth-to-Youth" apprentice shall be credited with Hours of Work in Covered Employment for purposes of Sections 1.40, 4.09 and 4.13 of the Plan Document equal to the number of hours of work performed during such period of employment as certified in writing to the Fund Office by the SMWIA within 12 months after the last month in which employment under this section occurred; provided, however, that such employment was not covered by a collective bargaining agreement to which the Union and/or any Local are a party.

The Hours of Work that are earned under this Section for any one period of work as a Salted Organizer or Youth-to-Youth apprentice shall be credited as they are earned, provided that no such Hours of Work shall be credited unless and until the individual has an Hour of Work in Covered Employment after the last day of that period. The Hours of Service that are to be credited under this Section shall be credited as though they were worked at the prevailing Contribution Rate that was in effect in the jurisdiction of the Local during the individual's period of employment as a bona fide Salted Organizer or a Youth-to-Youth apprentice, as the case may be.

Notwithstanding anything to the contrary in the Plan Document, the amount of Future Service Credit that may be granted pursuant to this Section 4.12 shall not exceed 12 months for any single period of employment with the same Employer as a bona fide Salted Organizer, or for all periods of employment as a Youth-to-Youth apprentice.

**Section 4.13    Breaks in Service**

(a)    Purpose

The purpose of this Section is to define the terms "One-Year Break in Service" and "Permanent Break in Service." This Section also describes the effect of a Break in Service on previously credited service for vesting, participation and benefit accrual purposes. References to the term "Employee" shall include a former "Employee" as the context so requires.

(b)    One-Year Break in Service Defined

(1)    An Employee incurs a One-Year Break in Service if he fails to complete 435 Hours of Work in Covered Employment during any Calendar Year after 1975, and he does not meet the eligibility requirements for a pension at that time.

(2)    In determining whether an Employee has a One-Year Break in Service for purposes of subsections (c)(1) and (2) (i.e., for participation and vesting purposes only), Hours of Work in Non-Covered Employment shall also be taken into account in determining whether an Employee has completed 435 Hours of Work in Covered Employment, but only insofar as such Hours of Work in Non-Covered Employment would be creditable toward a Year of Service under Section 1.40(b) of the Plan Document.

(3)     Solely for purposes of determining whether a One-Year Break in Service has occurred in a Calendar Year (or Eligibility Computation Period) on or after January 1, 1985, if an Employee is absent from Covered Employment by reason of the pregnancy of the Employee; the birth of a child of the Employee; the placement of a child with the Employee in connection with the adoption of such child by the Employee; or for purposes of caring for such child for a period beginning immediately following such birth or placement, the Employee shall receive credit for (i) the Hours of Work that otherwise would normally have been credited to such Employee but for such absence; or (ii) in any case where the Hours of Work in (i) are unable to be determined, eight (8) Hours of Work per day of absence. However, the total number of hours treated as Hours of Work under this subsection (3) by reason of any such pregnancy or placement shall not exceed 435 hours. The Hours of Work credited under this subsection (3) shall be credited in the Calendar Year (or Eligibility Computation Period) in which the absence begins to the extent that the crediting is necessary to prevent the Employee from incurring a One-Year Break in Service in that period, or in all other cases, in the immediately following Calendar Year (or Eligibility Computation Period).

(4)     No One-Year Break in Service shall be deemed to have occurred if the Break in Service is attributable to the Participant being a Reemployed Veteran (as defined in Section 4.15) who incurs a period of Qualified Military Service (as defined in Section 4.15) during the Plan Year.

(c)     Effect of a One-Year Break in Service

(1)     Participation

Section 3.04(a) of the Plan Document describes the effect of a One-Year Break in Service on a non-vested Employee's participation in the Plan.

(2)     Vesting

In the case of any non-vested Employee who has incurred a One-Year Break in Service, the Years of Service credited to such Employee prior to his Break in Service shall be disregarded for purposes of Section 8.07. However, except as provided in subsection (f)(2) below (relating to the effect of a Permanent Break in Service), upon completing one (1) Year of Service after such One-Year Break in Service, his previously credited Years of Service shall be restored for purposes of Section 8.07.

(3)     Pension Credit/Contribution Hours

In the case of any non-vested Employee who has incurred a One-Year Break in Service, the Pension Credit earned by such Employee under Article 4 prior to his Break in Service, and the Contribution Hours credited to the Employee in accordance with Section 5.03(c) prior to his Break in Service, shall be disregarded. However, except as provided in subsection (f)(3) below (relating to the effect of a Permanent Break in Service), upon completing one (1) Year of Service after returning to Covered Employment, his previously earned Pension Credit and

Contribution Hours shall be restored under Article 4 on the same basis and in the same manner as his participation is reinstated under Section 3.04(a).

Nothing in this subsection (c) shall be construed to change the effects of a Permanent Break in Service.

(d)    Permanent Break in Service Defined (Non-Vested Participants)

An Employee who has not attained Vested Status under Section 8.07 of the Plan Document shall be deemed to have incurred a Permanent Break in Service in accordance with the following rules:

(1)    Permanent Break in Service after 1984 or after the Contribution Date, if later

An Employee who has not attained Vested Status under Section 8.07 of the Plan Document shall be deemed to incur a Permanent Break in Service when he has a number of consecutive One-Year Breaks in Service (including at least one after 1984) which equals or exceeds the greater of: (i) five (5), or (ii) the total number of Years of Service he earned before such Breaks in Service.

(2)    Permanent Break in Service after 1975, or after Contribution Date if later, and before 1985

An Employee who has less than four (4) Years of Service shall be deemed to incur a Permanent Break in Service if (i) he has at least three (3) consecutive One-Year Breaks in Service after his Contribution Date, (ii) he has two (2) consecutive One-Year Breaks in Service in 1976 and 1977, and he failed to earn at least six months of Future Service Credit in the period from 1975 through 1977, or (iii) he has a One-Year Break in Service in 1976, and failed to earn at least six months of Future Service Credit in the period from 1974 through 1976. A person who has four (4) or more Years of Service shall incur a Permanent Break in Service when the number of his consecutive One-Year Breaks in Service equals or exceeds the Employee's total number of Years of Service before such Breaks in Service. However, an Employee will not be deemed to have incurred a Permanent Break in Service under this subsection (2) if he earns at least six months of Future Service Credit in any three (3) consecutive Calendar Years. Nothing in the preceding sentence shall be construed to mean that an Employee may not subsequently incur a Permanent Break in Service under subsection (1) or this subsection (2).

(3)    Permanent Break in Service before 1976 but after the Contribution Date

An Employee shall have incurred a Permanent Break in Service if, after the January 1 coincident with or next following his Contribution Date, he fails to earn at least six months of Future Service Credit in any three (3) consecutive Calendar Years.

30

(e)     Exceptions

No Permanent Break in Service shall be deemed to have occurred and there shall be no loss of prior Pension Credits if the Break in Service described in subsections (d)(1), (2), and (3) above is attributable to:

(1)     the Participant being a Reemployed Veteran (as defined in Section 4.15) who incurs a period of Qualified Military Service (as defined in Section 4.15) during the Plan Year;

(2)     Service as a full-time elected or appointed officer or employee of the Union;

(3)     For Years of Service (for vesting purposes) and Pension Credit earned prior to January 1, 2000, notwithstanding anything to the contrary in the Plan Document, and to the extent permitted under Section 401(a)(4) of the Code and the regulations thereunder, a period of time not exceeding ten years as the owner of a small business employing no more than four people including himself who are covered by a Collective Bargaining Agreement; provided, that the owner continues to work inside as a sheet metal worker and not outside erecting during such period and provided further that he subsequently returns to work in Covered Employment;

(4)     Involuntary unemployment during one of the Calendar Years 1973, 1974, or 1975. Not more than one of these Calendar Years may be used in determining whether or not a Break in Service has occurred, and the Trustees shall be the sole and final judges of what constitutes involuntary unemployment for an Employee who has remained available for Covered Employment, on the basis of information received from the Employee, the Business Manager of the Local Union or any other source required for verification; or

(5)     For Years of Service (for vesting purposes) and Pension Credit earned prior to January 1, 2000, proven disability, whether occupational or non-occupational, involving total incapacity to work in the capacity in which he was employed when he became disabled and lack of any other employment for a period not exceeding five years.

(f)     Effect of a Permanent Break in Service

Notwithstanding any provision to the contrary in subsection (c), if an Employee who has not attained Vested Status under Section 8.07 has incurred a Permanent Break in Service under Section 4.13(d) above, he shall be affected as follows:

(1)     Section 3.04(b) of the Plan Document describes the effect of a Permanent Break in Service on an Employee's participation in the Plan.

(2)     In the case of an Employee who has incurred a Permanent Break in Service, the Pension Credit earned by him under Article 4 prior to such Permanent Break in Service, and the Contribution Hours credited to the Employee in accordance with Section 5.03(c) prior to his Permanent Break in Service, and the Contribution Hours credited to the Employee in accordance with Section 5.03(c) prior to his

31

Permanent Break in Service, shall be permanently disregarded, except as provided in Section 4.14.

(3)     In the case of an Employee who has incurred a Permanent Break in Service, the Pension Credit earned by him under Article 4 prior to such Permanent Break in Service, and the Contribution Hours credited to the Employee in accordance with Section 5.03(c) prior to his Permanent Break in Service, shall be permanently disregarded, except as provided in Section 4.14.

**Section 4.14     Restoration of Pension Credits and Contribution Hours Following a Permanent Break in Service**

(a)     Effective July 1, 2001, if an Employee who incurs a Permanent Break in Service under Section 4.13(d) and who has Pension Credit and/or Contribution Hours disregarded under Section 4.13(f) returns to Covered Employment, then, notwithstanding Section 4.13(f)(3), such Employee will, for each month of Future Service the Employee completes upon returning to Covered Employment, (i) have a month of such Employee's Future Service Credit that was lost as a result of the Permanent Break in Service, restored, and (ii) have his Accrued Benefit that was lost as a result of the Permanent Break in Service restored pursuant to subsection (b).  Such restoration will be subject to the following provisions:

(1)     the Employee must attain Vested Status, as defined in Section 8.07, based on Covered Employment performed after the Permanent Break in Service;

(2)     the Employee must perform at least one (1) Hour of Work in Covered Employment on or after July 1, 2001 and before December 31, 2006;

(3)     the Employee must have lost at least 48 months of Future Service Credit as a result of the Permanent Break in Service;

(4)     the Employee's right to restoration may be utilized only once, and is limited to restoration of such Future Service Credit and/or Contribution Hours as were lost as of his most recent Permanent Break in Service; and

(5)     Future Service restored under this provision shall be disregarded for the purpose of determining a Lump Sum Death Benefit under Section 7.01.

(b)     The Accrued Benefit to be restored for each month of Future Service earned upon the Employee's return to Covered Employment shall be the pension amount that was lost, determined under the terms of the Plan Document as in effect at the time the Participant incurred the Permanent Break in Service, based on the Future Service Credit and, as applicable, Contribution Hours he had accrued and the Contribution Rates at which he had worked prior to such Permanent Break in Service, divided by the number of disregarded months of Future Service Credit under Section 4.13(f)(3).  The pension amount to be used shall be determined under Section 5.03 or Section 5.02 of Appendix A, as appropriate, as if the Employee had met the eligibility requirements for a Normal Pension.

32

**Section 4.15    Military Service**

(a)    For purposes of Section 4.07, 4.13 and this Section, the following definitions shall apply:

    (1)    "Reemployed Veteran" means any Employee who terminated employment with an Employer, subsequently had the right to be reemployed by the Employer under chapter 43 of title 38 of the United States Code, and became reemployed by the Employer under that chapter as an Employee.

    (2)    "Qualified Military Service" means any service in the uniformed service (as defined in chapter 43 of title 38 of the United States Code as in effect as of December 12, 1994) by any individual if such individual is entitled to reemployment rights under such chapter with respect to such service.

(b)    Effective December 12, 1994, notwithstanding any provision in this Plan Document to the contrary, contributions, benefits and service credit with respect to Qualified Military Service will be provided in accordance with Section 414(u) of the Code.

(c)    To protect his full rights, a Reemployed Veteran should apply for reemployment with his Employer within the time prescribed by law. Furthermore, a Reemployed Veteran must call his claim for credit for military service to the attention of the Trustees and be prepared to supply the evidence that the Trustees will need in order to determine his rights.

(d)    A Reemployed Veteran who takes a distribution from the Fund in connection with Qualified Military Service has the right to repay the distribution to the Fund in accordance with the regulations promulgated by the U.S. Department of Labor.

**Section 4.16    Family Medical Leave Act ("FMLA")**

Solely for purposes of determining whether an Employee has incurred a One-Year Break in Service during any Calendar Year for vesting and participation purposes, any period of unpaid FMLA leave (as defined in the regulations promulgated under the Family Medical Leave Act of 1993 (the "FMLA")) during the Calendar Year shall be treated as Hours of Work in Covered Employment based on the Hours of Work that would have been completed in Covered Employment had the Employee not been on unpaid FMLA leave for that period, but only to the extent required by the FMLA or the regulations promulgated thereunder. Also, to the extent required by the FMLA, if the Plan Document requires an Employee to be employed on a specific date in order to be credited with a Year of Service for vesting, contributions or participation purposes, an Employee who is on unpaid FMLA leave on that date will be deemed to have been employed on that date. However, in no event shall any period of unpaid FMLA leave be treated as credited service for purposes of benefit accrual, vesting and eligibility to participate.

## ARTICLE 5    PENSION ELIGIBILITY AND AMOUNTS

**Section 5.01    General**

This Article sets forth the eligibility conditions and benefit calculations for pension benefits. It also sets forth the calculation of amounts that form the basis of disability benefits. The provisions pertaining to the accumulation and retention of credited service are found principally in Article 4. The

benefit amounts are subject to reduction because of the Joint and Survivor Annuity[1] or election of optional forms of benefit (Article 6).

A Participant's eligibility to receive benefits is conditioned upon his retirement, as determined below, and his submission of an application for benefits in accordance with Article 8. All benefits, including those set forth in this Article 5 and in Article 16, are subject to the limitations set forth in Section 8.11 (relating to limitations imposed by Section 415 of the Code on maximum annual benefits), as well as the limitations, terms and conditions set forth in Article 12 of the Plan Document. A Participant is "retired" within the meaning of the Plan Document, if he has ceased working in Covered Employment, as well as in any Disqualifying Employment, and such cessation of work is intended to be permanent. A Participant also will be treated as "retired" within the meaning of the Plan Document, if he only performs work that would result in the suspension of benefits as Disqualifying Employment but for the provisions of Section 8.06, and he otherwise satisfies the conditions of the Plan Document concerning post-retirement employment.

**Section 5.02    Normal Retirement Pension for Effective Dates of Pension Before January 1, 2000**

The amount of the Normal Retirement Pension for a Participant who has attained Normal Retirement Age, and whose Effective Date of Pension is before January 1, 2000, shall be determined in accordance with the provisions of Section 5.02 of Appendix A.

**Section 5.03    Normal Retirement Pension for Effective Dates of Pension On or After January 1, 2000**

(a)    Eligibility for Normal Retirement Pension

A Participant who has attained Normal Retirement Age, and whose Effective Date of Pension is on or after January 1, 2000, will be eligible to retire on a Normal Retirement Pension if:

(1)    The Participant has attained Vested Status under Section 8.07, or

(2)    The Participant has 10 or more years of Pension Credit, including at least five (5) years of Future Service Credit, or has 15 or more years of Pension Credit, including at least 12 months of Future Service Credit.

(b)    Provisions Relating to the Determination of Normal Retirement Pensions

(1)    The benefit amounts set forth in this Section 5.03 generally are a function of the contributions payable for a Participant's work in Covered Employment. In this regard, the Plan Document was revised effective January 1, 2000 so that for each Plan Year beginning after December 31, 1999, benefits accrue as a percentage of all or a portion of the contributions required to be paid for a Participant's work in Covered Employment. The percentage used to determine a Participant's benefit accrual differs with the number of hours worked in Covered Employment. A lower percentage is used to determine the benefits accrued for Contribution Hours in

---

[1] Formerly referred to as the Husband-and-Wife Pension.

34

excess of 1400 (1200 for Plan Years beginning after December 31, 2007). For purposes of this Section 5.03, if a Participant has more than 1400 Contribution Hours (1200 Contribution Hours for Plan Years beginning after December 31, 2007), he will be deemed to have 1400 Contribution Hours (1200 Contribution Hours for Plan Years beginning after December 31, 2007) during whatever period results in the highest benefit accrual for the Plan Year, irrespective of when the Contribution Hours were actually worked within the Plan Year.

(2) As described herein, not all required contributions necessarily are used to determine a Participant's Normal Retirement Pension.

(3) Effective January 1, 2004, contributions must be increased annually for each of the following Plan Years: (i) 2004, (ii) 2005, (iii) 2006, and (iv) 2007. Except as otherwise provided in this Section 5.03, the required contribution increase is determined as follows:

 (A) The required contribution increase for the 2004 Plan Year is the greater of: (i) ten percent (10%) of the Contribution Rate in effect on December 31, 2002, excluding any portion attributable to a 55/30 Rate; or (ii) five cents (5¢).

 (B) The required contribution increase for the 2005 through 2007 Plan Years is 10% of the sum of: (i) the Contribution Rate in effect on December 31, 2002 (excluding any portion attributable to a 55/30 Rate); and (ii) the amount of each preceding Plan Year's required contribution increase. If the required contribution increase for Plan Year 2004 was five cents (5¢), and that amount exceeded 10% of the December 31, 2002 Contribution Rate (excluding any portion attributable to a 55/30 Rate), the excess will be disregarded in determining the amount of the required contribution increase for the 2005 Plan Year, and it will be applied to satisfy a required contribution increase in or after the 2005 Plan Year if the required contribution increase is not otherwise made.

(4) If an Employer does not make a required contribution increase for the 2004 Plan Year, a ten percent (10%) compounded increase for the 2004 and 2005 Plan Years must be made in Plan Year 2005. Thereafter, an Employer must have made its required contribution increase during each applicable Plan Year, unless specifically provided otherwise.

(5) If a required contribution increase is not made for any of the 2004 through 2007 Plan Years, the amount of the required increase will automatically be applied from the portion of any Contribution Rate that resulted in Supplemental Contributions during the preceding Plan Year, provided it is sufficient to cover the amount of the required contribution increase (either independently or in conjunction with any contribution increase for the Plan Year). This application will take effect the month an increase would have been expected for the Contribution Rate at issue but not later than December 1 of that Plan Year.

(6)    If a required contribution increase is not made for a Plan Year beginning before January 1, 2007, and the portion of any Contribution Rate that resulted in Supplemental Contributions in a preceding Plan Year is insufficient to cover the amount of the required contribution increase (either independently or in conjunction with any contribution increase for the Plan Year), then that portion of the Contribution Rate: (i) will cease to be treated as Supplemental Contributions for purposes of Section 5.03(c)(9) beginning on the first day of the 2007 Plan Year; and (ii) will be treated as if it were part of the Contribution Rate in effect on December 31, 2002 (for purposes of Section 1.04), but only for the 2007 Plan Year.

(7)    If contributions first become payable pursuant to a Collective Bargaining Agreement (or similar agreement) after December 31, 2002 but before January 1, 2007, because no Employer within the jurisdiction of the applicable Local Union had an obligation to contribute to the Plan for a particular classification, category, or type of work before January 1, 2003, the required contribution increase will be determined as follows. For Plan Years 2004 and 2005, the required contribution increase is five cents (5¢) for each such Plan Year. Beginning with the 2006 Plan Year, the required contribution increase is determined under the provision of 5.03(b)(3) and the Contribution Rate in effect as of December 31, 2005 (less any amount attributable to a 55/30 Rate) will be treated as in effect on December 31, 2002 for purposes of that section. If any contributions falling within the provisions of this Section 5.03(b)(7) first became payable in Plan Year 2006, the required contribution increase will be determined under the provisions of Section 5.03(b)(3) and the Contribution Rate in effect on December 31 of such Plan Year (minus any portion attributable to a 55/30 Rate) will be treated as if it were in effect on December 31, 2002 for purposes of that section. To determine the Benefit Rate under Section 1.04 for contributions falling within the provisions of this Section 5.03(b)(7) that first became payable before the 2005 Plan Year, the Contribution Rate in effect on December 31, 2005 (minus any portion attributable to a 55/30 Rate and any portion attributable to a required contribution increase) will be treated as if it were in effect on December 31, 2002 for purposes of Section 1.04. To determine the Benefit Rate for contributions falling within the provisions of this Section 5.03 (b)(7) that first become payable in the 2005 or 2006 Plan Year, the Contribution Rate in effect on the last day of such Plan Year (minus any portion attributable to a 55/30 Rate) will be treated as if it were in effect on December 31, 2002 for purposes of Section 1.04.

(c)    Amount of Normal Retirement Pension for Effective Dates of Pension on or after January 1, 2000, but before December 1, 2007

(1)    Subject to all other applicable Plan Document provisions, the monthly amount of a Participant's Normal Retirement Pension accrued through November 30, 2007 under this Section 5.03(c) is the aggregate of the amounts as determined under (2) through (9) below, as applicable, less any benefit overpayments made to a Participant.

(2)    The monthly amount determined under Section 5.02 of Appendix A, as if the Participant's Effective Date of Pension and attainment of Normal Retirement Age were before January 1, 2000; plus

(3)     $10.00 for each year of Past Service Credit (if any) credited pursuant to Section 4.03; plus

(4)     For each Plan Year beginning on or after January 1, 2000 and before January 1, 2003, a Participant's Normal Retirement Pension will be determined as follows:

    (A)     1.7142% of the amount determined by multiplying the Participant's Contribution Rate, excluding any portion attributable to 55/30 Rate, by his Contribution Hours (up to 1400) for the Plan Year; plus

    (B)     0.6% of the amount determined by multiplying the Participant's Contribution Hours (over 1400) for the Plan Year by his Contribution Rate, excluding any portion attributable to 55/30 Rate; plus

(5)     For the 2003 Plan Year, a Participant's Normal Retirement Pension will be determined as follows:

    (A)     1.7142% of the amount determined by multiplying the Participant's Benefit Rate by his Contribution Hours (up to 1400) through August 31, 2003; plus

    (B)     0.6% of the amount determined by multiplying the Participant's Contribution Hours (over 1400) through August 31, 2003 by his Benefit Rate; plus

    (C)     0.8571% of the amount determined by multiplying the Participant's Benefit Rate by Contribution Hours after August 31, 2003, which, when combined with Participant's Contribution Hours before September 1, 2003, do not exceed 1400; plus

    (D)     0.3% of the amount determined by multiplying the Participant's Benefit Rate by Contribution Hours after August 31, 2003, which, when combined with Participant's Contribution Hours before September 1, 2003, exceed 1400; plus

    (E)     1.7142% of the amount of the Participant's Supplemental Contributions for the period September 1, 2003 through December 31, 2003; plus

(6)     For the 2004 through 2006 Plan Years, a Participant's Normal Retirement Pension will be determined for each Plan Year as follows:

    (A)     0.8571% of the amount determined by multiplying the Participant's Benefit Rate by his Contribution Hours (up to 1400) for the Plan Year; plus

    (B)     0.3% of the amount determined by multiplying the Participant's Contribution Hours for the Plan Year in excess of 1400 hours by his Benefit Rate; plus

(7)    Except as provided in Section 5.03(c)(10) below, for the 2007 Plan Year, a Participant's Normal Retirement Pension will be determined for each Plan Year as follows:

    (A)    0.8571% of the amount determined by multiplying the Participant's Benefit Rate by his Contribution Hours (up to 1400) for the period January 1, 2007 through November 30, 2007; plus

    (B)    0.3% of the amount determined by multiplying the Participant's Contribution Hours for the period January 1, 2007 through November 30, 2007 in excess of 1400 hours by his Benefit Rate, plus

(8)    Amounts attributable to Supplemental Contributions for the 2004, 2005, and 2006 Plan Years:

    (A)    1.7142% of the Participant's Supplemental Contributions based on his Contribution Hours (up to 1400) for the Plan Year; plus

    (B)    0.6% of the Supplemental Contributions based on his Contribution Hours (over 1400) for the Plan Year.

(9)    Amount attributable to Supplemental Contributions for the 2007 Plan Year:

    (A)    1.7142% of the Participant's Supplemental Contributions based on his Contribution Hours (up to 1400) for the period January 1, 2007 through November 30, 2007; plus

    (B)    0.6% of the Supplemental Contributions based on his Contribution Hours (over 1400) for the period January 1, 2007 through November 30, 2007.

(10)    For the 2007 Plan Year, Section 5.03(c)(7) above will exclude a Participant's Contribution Hours under a Sheet Metal Workers' Local Union #36 Collective Bargaining Agreement, which covers work in the geographical area of Springfield, Missouri ("Springfield CBA").  Instead, the Participant's Normal Retirement Pension for any of his Contribution Hours after December 31, 2006 under a Springfield CBA will be determined as follows:

    (A)    0.4285% of the amount determined by multiplying the Participant's Benefit Rate (as adjusted by (B) below) by the Participant's Contribution Hours (up to 1400) for the Plan Year under the Springfield CBA, and any of his Contribution Hours in excess of 1400 for the Plan Year under the Springfield CBA will be disregarded in determining the amount of his Normal Retirement Pension.

    (B)    For purposes of (A) above, the Participant's Benefit Rate (as defined in Section 1.04) will be reduced by the amount of required contribution increase for the 2006 Plan Year.

(d)    Adjustment for a Plan Year before 2008 in which Required Contribution Increase Is Made

38

(1)    If the required contribution increase for the 2004 Plan Year was made in accordance with Section 5.03(b) on or before December 31, 2004, the amount determined under Sections 5.03(c)(5)(C) and (D) and Section 5.03(c)(6) for the period September 1, 2003 through December 31, 2005 shall be multiplied by two (2), but only with respect to those Contribution Hours that are attributable to a Contribution Rate that was increased in the manner described herein.

(2)    If the required contribution increase for the 2004 Plan Year was made in accordance with Section 5.03(b) on or before December 31, 2004, and the required contribution increase for the 2005 Plan Year is made in accordance with Section 5.03 (b) in or before December 2005, the amount determined under Section 5.03(c)(6) for 2006 Plan Year will be multiplied by two (2), but only with respect to those Contribution Hours that are attributable to a Contribution Rate that was increased in the manner described herein.

(3)    If the required contribution increase for the 2004 Plan Year was not made in accordance with Section 5.03(b) in or before December 31, 2004, but the required contribution increases for both the 2004 and 2005 Plan Years are made in or before December 2005, the amount determined under Section 5.03(c)(6) for both the 2005 and the 2006 Plan Years will be multiplied by two (2), but only with respect to those Contribution Hours that are attributable to a Contribution Rate that was increased in the manner described herein.

(4)    If the required contribution increase has been made in accordance with Section 5.03(b) for the 2006 Plan Year, the amount determined under Section 5.03(c)(7) for the 2007 Plan Year shall be multiplied by two (2), but only with respect to those Contribution Hours that are attributable to the required contribution increase and only if the required contribution increases have been made in accordance with Section 5.03(b) for all preceding Plan Years (beginning with the 2004 Plan Year). For purposes of this Section 5.03(b)(4), a required contribution increase will not be deemed to have been made for the 2006 Plan Year unless such increase took effect on or before the last day of such Plan Year.

(e)    If a Contribution Rate is decreased on or after January 1, 2000 but before December 1, 2007, the following provisions shall apply:

(1)    0.8571% shall be substituted for 1.7142%, and 0.4286% shall be substituted for 0.8571% in Sections 5.03(c)(4) through (7) above, insofar as those provisions apply to the contributions that are required to be made on a Participant's behalf at the reduced Contribution Rate; and

(2)    0% shall be substituted for 0.6% and 0.3% in Sections 5.03(c)(4) through (7), insofar as those provisions apply to the contributions that are required to be made on a Participant's behalf at the reduced Contribution Rate.

(f)    Amount of Normal Retirement Pension for Effective Dates of Pension On or After December 1, 2007 but before January 1, 2014

39

(1)   Subject to all other applicable Plan Document provisions, the monthly amount of a Participant's Normal Retirement Pension accrued after November 30, 2007 but before January 1, 2014 under this Section 5.03(f) is the aggregate of the amounts as determined under (2) through (7) below, as applicable, except that the benefit accrual provisions in the Rehabilitation Plan and the Rehabilitation Plan Schedule(s) (set forth in Appendix C), which applied to the Participant when the Plan was in Critical Status shall control for purposes of determining the monthly amount of the Participant's Normal Retirement Pension accrued during the period in which the Plan was in Critical Status, less any benefit overpayments made to a Participant.

(2)   The monthly amount determined under Section 5.03(c) above, as if the Participant's Effective Date of Pension and Normal Retirement Age were before December 1, 2007; plus

(3)   $10.00 for each year of Past Service Credit (if any) credited pursuant to Section 4.03 (to the extent not taken into account under (2) above); plus

(4)   (A)   If all of the required contribution increases for the 2004 through 2007 Plan Years were made pursuant to Section 5.03(b), 1.5% of the amount determined by multiplying the Participant's Benefit Rate by his Contribution Hours for the period December 1, 2007 through December 31, 2007; or

      (B)   If not all of the required contribution increases for the 2004 through 2007 Plan Years were made, 0.8571% of the amount determined by multiplying the Participant's Benefit Rate by his Contribution Hours for the period December 1, 2007 through December 31, 2007, except that 0.4286% will be substituted for 0.8571% if the Participant's Contribution Rate has been decreased; plus

(5)   If all of the required contribution increases for the 2004 through 2007 Plan Years were made pursuant to Section 5.03(b), then (except as provided otherwise in (7) below or in the Rehabilitation Plan and Schedules) for each Plan Year beginning on or after January 1, 2008;

      (A)   1.5% of the amount determined by multiplying the Participant's Benefit Rate by his Contribution Hours (up to 1200) for such Plan Year; plus

      (B)   (B) 0.7% of the amount determined by multiplying the Participant's Benefit Rate by his Contribution Hours (over 1200) for such Plan Year; or

(6)   If not all of the required contribution increases for the 2004 through 2007 Plan Years were made pursuant to Section 5.03(b), then (except as provided in (7) below or in the Rehabilitation Plan and Schedules) for each Plan Year beginning on or after January 1, 2008;

      (A)   0.8571% of the amount determined by multiplying the Participant's Benefit Rate by his Contribution Hours (up to 1200) for such Plan Year, except that 0.4286% will be substituted for 0.8571% if the Participant's Contribution Rate has been decreased; plus.

40

       (B)    0.3% of the amount determined by multiplying the Participant's Benefit Rate by his Contribution Hours (over 1200) for such Plan Year, except that 0.0% will be substituted for 0.3% if the Participant's Contribution Rate has been decreased.

(7)    If a Participant works under a Collective Bargaining Agreement (or similar agreement) after August 31, 2008, which does not incorporate or otherwise reflect one of the Rehabilitation Plan Schedules, then:

       (A)    for the period September 1, 2008 through December 31, 2008 (or if earlier, the first day of the month following the month in which the Participant's Collective Bargaining Agreement (or similar agreement) incorporates or otherwise reflects one of the Schedules), 0.5% will be substituted for 1.5% and 0.7% in (5) above and for 0.8571% in (6) above, and

       (B)    for any period beginning after December 31, 2008 during which the Plan is in Critical Status, 0.5% will be substituted for 1.5% and 0.7% in (5) above, and 0.5% will be substituted for 0.8571% and 0.3% in (6) above, until the first day of the month following the month in which the Participant's Collective Bargaining Agreement (or similar agreement) incorporates or otherwise reflects one of the Rehabilitation Plan Schedules (including by imposition of the Default Schedule).

(g)    Amount of Normal Retirement Pension for Effective Dates of Pension After January 1, 2014

(1)    Subject to all other applicable Plan Document provisions, the monthly amount of a Participant's Normal Retirement Pension accrued after December 31, 2013 under this Section 5.03(g) is the aggregate of the amounts determined under (2) through (4) below, as applicable, less any benefit overpayments made to the Participant.

(2)    The monthly amount determined under 5.03 (f) above, as if the Participant's Effective Date of Pension and Normal Retirement Age were before January 1, 2014 (i.e., his accrued benefit as of December 31, 2013); plus

(3)    $10.00 for each year of Past Service Credit (if any) credited pursuant to Section 4.03 (to the extent not taken into account under (2) above; plus

(4)    The amount determined under the following formula, unless a different formula is specified in a Funding Improvement Plan or a Funding Improvement Plan Schedule (for Contribution Hours on or after January 1, 2014):

(Participant's Benefit Rate) x (Participant's Contribution Hours for the Plan Year [beginning on or after January 1, 2014]) x (Applicable Percentage [as defined in (5) below] for the Plan Year).

41

(5)    The "Applicable Percentage" for a Plan Year beginning on or after January 1, 2014 is:

    (A)    1.25% if the average of the market value investment return percentages for each of the three (3) most recent Plan Years reported in the Actuarial Valuation and Review as of January 1 of the immediately preceding Plan Year is 10.0% or higher;

    (B)    1.0%, if the average of the market value investment return percentages for each of the three (3) most recent Plan Years reported in the Actuarial Valuation and Review as of January 1 of the immediately preceding Plan Year is 8.50% or higher but less than 10.0%;

    (C)    0.75%, if the average of the market value investment return percentages for each of the three (3) most recent Plan Years reported in the Actuarial Valuation and Review as of January 1 of the immediately preceding Plan Year is 6.50% or more but less than 8.50%;

    (D)    0.50%, if the average of the market value investment return percentages for each of the three (3) most recent Plan Years reported in the Actuarial Valuation and Review as of January 1 of the immediately preceding Plan Year is greater than zero (0.0%) but less than 6.50%; or

    (E)    0.00%, if the average of the market value investment return percentages for each of the three (3) most recent Plan Years reported in the Actuarial Valuation and Review as of January 1 of the immediately preceding Plan Year is 0.0% or less.

The market value investment return percentage for each Plan Year shall be calculated as follows: the investment income, net of investment fees, divided by the sum of (a) the market value of assets recognized in the Actuarial Valuation and Review as of the beginning of the Plan Year, and (b) one-half (1/2) of the net non-investment income (contributions plus other net non-investment income, less administrative expenses and benefit payments).  Appendix G of the Plan Document contains an excerpt from the Actuarial Valuation and Review as of January 1 of each immediately preceding Plan Year (commencing with the Actuarial Valuation and Review for the 2013 Plan Year), which shows, among other things, the average of the market value investment return percentages for each of the three (3) most recent Plan Years reported in that Actuarial Valuation and Review.

(h)    Addition to Monthly Normal Retirement Pension for Past Service Credit Earned Before January 1, 2000

If a Participant who had less than 30 years of Future Service Credit on December 31, 1999, is subsequently credited with 30 or more years of Future Service Credit, his monthly Normal Retirement Pension will increase by one percent (1%) of the amount determined under Section 5.03(c)(2), multiplied by each year (including any fraction thereof) of Past Service Credit earned before January 1, 2000, but only to the extent that such Past Service Credit was not taken into account in determining the amount under Section 5.03(c)(2).

(i)    Subject to the terms of the Rehabilitation Plan or Schedule, or any Funding Improvement Plan or Schedule, no Participant's accrued benefit under this Section 5.03 will be less than it was on any prior date, determined as if his Effective Date of Pension and Normal Retirement Age were on such prior date.

**Section 5.04    Special Rules for Early Retirement Pension Benefits with Effective Dates of Pension on or after February 1, 2014**

(a)    Emergence from Critical Status

The Plan's Rehabilitation Period ended on December 31, 2013, and the Plan ceased to be in Critical Status commencing with the 2014 Plan Year. The Plan's Rehabilitation Plan and Rehabilitation Plan Schedules modified the Early Retirement Pension benefits payable by the Plan. These modifications were and remain permanent and are reflected in this Section and the Sections that follow in this Article 5. The use below of the terms or phrases "Critical Status," "Rehabilitation Period," "Rehabilitation Plan" or "Rehabilitation Plan Schedule" (or any similar terms or phrase relating to the Plan's Critical Status) are intended to have the same meaning as when such terms or phrases are used in 26 U.S.C. §432, and refer to the "Rehabilitation Plan" and "Rehabilitation Plan Schedules" that were in effect during the Rehabilitation Period that ended on December 31, 2013. Additionally, the "Alternative Schedule" was renamed the "First Alternative Schedule" when the "Second Alternative Schedule" was added to the Rehabilitation Plan. Any reference to the "First Alternative Schedule" shall include the "Alternative Schedule."

(b)    Early Retirement Pension Defined

For purposes of this Article 5, an "Early Retirement Pension" means a pension benefit, which commences before attainment of Normal Retirement Age in one or more of the types described in Sections 5.05 through Section 5.10 below. For Effective Dates of Pension on or after February 1, 2014, an Early Retirement Pension may be comprised of more than one type of Early Retirement Pension (e.g., part of the Early Retirement Pension may be calculated as if it were a Special Early Retirement Pension, and part of it may be calculated as if it were an Unsubsidized Early Retirement Pension, but it is paid as a single Early Retirement Pension).

(c)    Determining the Type of Early Retirement Pension for Effective Dates of Pension on or after February 1, 2014

(1)    Portion of Early Retirement Pension Attributable to Contribution Hours Before 2014

The type or types of Early Retirement Pensions that apply to a Participant's Contribution Hours before January 1, 2014, depend upon the Rehabilitation Plan and/or Rehabilitation Plan Schedule provisions, which applied to the Participant's Contribution Hours when the Plan was in Critical Status. This subsection incorporates the adjustments to Early Retirement Pensions that were made by the

Plan's Rehabilitation Plan when the Plan was in Critical Status, and sets forth the rules for determining the type or types of Early Retirement Pensions attributable to Contribution Hours before January 1, 2014, when the Plan was still in Critical Status. Specifically, the type or types of Early Retirement Pension that apply to the portion of a Participant's Early Retirement Pension attributable to Contribution Hours before 2014 are as follows:

(A)     Rehabilitation Plan's Default Schedule/Person for Whom

Subject to the satisfaction of all applicable requirements, the Unsubsidized Early Retirement Pension is the type of Early Retirement Pension with an Effective Date of Pension on or after February 1, 2014, which is payable with respect to a Participant's Contribution Hours before 2014 in a classification of employment that was covered under the Default Schedule when the Plan was in Critical Status, or with respect to a Participant that was classified under the Rehabilitation Plan as a "person for whom contributions were not required to be made" as of December 31, 2013 (referred to hereinafter as a "Person for Whom") when the Plan was in Critical Status.

(B)     Rehabilitation Plan's NIC

Subject to the satisfaction of all applicable requirements, the Unsubsidized Early Retirement Pension and the Age 62 Pension are the types of Early Retirement Pensions with an Effective Date of Pension on or after February 1, 2014, which are payable with respect to a Participant's Contribution Hours before 2014 in a classification of employment that was subject to the additional benefit adjustments described in the Rehabilitation Plan because the bargaining parties to the Collective Bargaining Agreement ("CBA") under which the classification of employment was covered did not affirmatively negotiate the required Contribution Rate increases into the CBA when the Plan was in Critical Status (hereinafter referred to as the "No Increases Consequences benefit adjustments" or "NIC").

(C)     Rehabilitation Plan's First Alternative Schedule

Subject to the satisfaction of all applicable requirements, the Standard Early Retirement Pension, the Special Early Retirement Pension, and, if applicable, the 55/30 Pension are the types of Early Retirement Pensions with an Effective Date of Pension on or after February 1, 2014, which are payable with respect to a Participant's Contribution Hours before 2014 in a classification of employment that was covered under the First Alternative Schedule when the Plan was in Critical Status.

(D)     Rehabilitation Plan's Second Alternative Schedule

Subject to the satisfaction of all applicable requirements, the Unsubsidized Early Retirement Pension, Age 62 Pension and, if applicable, the 60/30 Pension are the types of Early Retirement Pensions with an Effective Date of Pension on or after February 1, 2014, which are payable with respect to a

44

Participant's Contribution Hours before 2014 under a classification of employment that was covered under the Second Alternative Schedule when the Plan was in Critical Status.

(E)    Special Rules for pre-2014 Contribution Hours

(i) If a Participant who was classified as a Person for Whom when the Plan was in Critical Status has not retired, worked under the First Alternative Schedule or Second Alternative Schedule (and such Schedule was his "Home Local Schedule" as defined below) before he became a Person for Whom, and returns to work in Covered Employment and completes one (1) Year of Service on or before January 1, 2023 in a classification of employment that would have been covered under such Schedule when the Plan was in Critical Status, then the Participant's Contribution Hours shall be deemed to have been under a classification of employment that was covered under such Schedule when the Plan was in Critical Status (provided that such Schedule did not provide for a higher level of subsidized early retirement benefit than any Schedule under which the Participant was covered before he became a Person for Whom), and the types of Early Retirement Pensions which apply to those Contribution Hours will be determined under (C) or (D) above, as applicable.

(ii) If a Participant with an Effective Date of Pension on or after February 1, 2014 had Contribution Hours before 2014 that were under a classification of employment that was covered under a different Rehabilitation Plan Schedule than his "Home Local Schedule," all of his Contribution Hours will be deemed to have been worked in a classification of employment that was covered under his "Home Local Schedule," unless he had 3,500 or more Hours of Work in Covered Employment under a different Rehabilitation Plan Schedule within a five (5) consecutive Calendar Year period preceding the date the Plan ceased to be in Critical Status (i.e., the 2014 Plan Year). In that case, the Participant's Contribution Hours before January 1, 2014 will be deemed to have been worked in a classification of employment that was covered under such other Rehabilitation Plan Schedule. For purposes of determining a Participant's Hours of Work in Covered Employment under his "Home Local Schedule," any Hours of Work in Covered Employment under a predecessor Collective Bargaining Agreement (CBA) will be included if the successor CBA incorporates the Participant's "Home Local Schedule." As used in this Article 5 or in Article 6, the term "Home Local Schedule" means the Rehabilitation Plan Schedule (or NIC benefit adjustments) that applied to the Participant's bargaining unit under the Collective Bargaining Agreement negotiated by the Local Union, which regularly represents the Participant for the purpose of collective bargaining.

(2)    Portion of Early Retirement Pension Attributable to Contribution Hours After 2013

The type or types of Early Retirement Pensions which apply to the portion of benefits earned for Contribution Hours on or after January 1, 2014 depend upon the Schedule or Rehabilitation Plan provision which applied to his classification of

45

employment when the Plan was in Critical Status, and the extent to which the Participant's Collective Bargaining Agreement (or similar agreement) reflects the required Contribution Rate increases under (C) or (D) below:

(A)  Former Default Schedule/Default Option under Funding Improvement Plan Schedule ("FIP")

Subject to the satisfaction of all applicable requirements, the Unsubsidized Early Retirement Pension is the type of Early Retirement Pension with an Effective Date of Pension on or after February 1, 2014, which is payable with respect to a Participant's Contribution Hours on or after January 1, 2014 under a classification of employment that would have been covered under the Default Schedule when the Plan was in Critical Status (i.e., Default Option under FIP Schedule).

(B)  Former NIC/Default Option Under FIP

Subject to the satisfaction of all applicable requirements, the Unsubsidized Early Retirement Pension and the Age 62 Pension are the types of Early Retirement Pensions with an Effective Date of Pension on or after February 1, 2014, which are payable with respect to a Participant's Contribution Hours on or after January 1, 2014 under a classification of employment that was subject to NIC (described in subsection (1)(B) above) when the Plan was in Critical Status (i.e., Default Option Under the FIP Schedule).

(C)  Former First Alternative Schedule/First Alternative Option under FIP

Subject to the satisfaction of all applicable requirements, the Standard Early Retirement Pension, Special Early Retirement Pension, and, if applicable, the 55/30 Pension are the types of Early Retirement Pensions with an Effective Date of Pension on or after February 1, 2014, which are payable with respect to a Participant's Contribution Hours on or after January 1, 2014 under a classification of employment that: (i) was covered under the First Alternative Schedule (formerly called the "Alternative Schedule") when the Plan was in Critical Status and (ii) is covered under a Collective Bargaining Agreement that reflects the following Contribution Rate increases (or such other Contribution Rate increase(s) as may be specified in the FIP Schedule – First Alternative Option):

- 2014 Plan Year Increase: 7% times the Contribution Rate in effect on December 31, 2013;
- 2015 Plan Year Increase:  7% times the Contribution Rate in effect on December 31, 2014;
- 2016 Plan Year Increase:  7% times the Contribution Rate in effect on December 31, 2015; and
- 2017 Plan Year Increase:  7% times the Contribution Rate in effect on December 31, 2016.

46

NOTE: This provision may be amended by the Trustees at any time to increase or decrease the required Contribution Rate increases specified above and to require Contribution Rate increases for Plan Years commencing after December 31, 2017.

(D)    Former Second Alternative Schedule/Second Alternative Option under FIP

Subject to the satisfaction of all applicable requirements, the Unsubsidized Early Retirement Pension, the Age 62 Pension and, as applicable, the 60/30 Pension are the only types of Early Retirement Pensions with an Effective Date of Pension on or after February 1, 2014, which are payable with respect to a Participant's Contribution Hours on or after January 1, 2014 under a classification of employment that: (i) was covered under the First or Second Alternative Schedule when the Plan was in Critical Status; and (ii) is covered under a Collective Bargaining Agreement that reflects the following Contribution Rate increases (or such other Contribution Rate increase(s) as may be specified in the FIP Schedule – Second Alternative Option):

- 2014 Plan Year Increase: 3.5% times the Contribution Rate in effect on December 31, 2013;
- 2015 Plan Year Increase: 3.5% times the Contribution Rate in effect on December 31, 2014;
- 2016 Plan Year Increase: 3.5% times the Contribution Rate in effect on December 31, 2015; and
- 2017 Plan Year Increase: 3.5% times the Contribution Rate in effect on December 31, 2016.

NOTE: This provision may be amended by the Trustees at any time to increase or decrease the required Contribution Rate increases specified above and to require Contribution Rate increases for Plan Years commencing after December 31, 2017.

(E)    Consequences of not Making Increases under (D) or (C) Above/Default Option Under FIP

If a Participant works in a classification of employment on or after January 1, 2014, which would have been covered under the First Alternative Schedule or the Second Alternative Schedule when the Plan was in Critical Status, but is covered under a Collective Bargaining Agreement (or similar agreement) that ceases to reflect the Contribution Rate increases required under (C) or (D) above during any Plan Year beginning or after January 1, 2014, then except as provided in (F) below and subject to all applicable requirements, the Unsubsidized Early Retirement Pension will be the only type of Early Retirement Pension with an Effective Date of Pension on or after February 1, 2014, which is payable with respect to the Participant's Contribution Hours under such classification of employment after the date that the Contribution Rate increase would have been made had the Collective Bargaining Agreement reflected the required Contribution Rate increase under (C) or (D) above (i.e., Default Option under FIP Schedule).

47

(F)    <u>Consequences of Making Increases under (D) Rather than (C)/Second Alternative Option under FIP Schedule</u>

If a Participant works in a classification of employment on or after January 1, 2014, which would have been covered under the First Alternative Schedule when the Plan was in Critical Status, but is covered under a Collective Bargaining Agreement (or similar agreement) that ceases to reflect the Contribution Rate increases required under (C) above but instead reflects the Contribution Rate increases required under (D) above during a Plan Year beginning on or after January 1, 2014, then, subject to all applicable requirements, the Unsubsidized Early Retirement Pension, the Age 62 Pension, or if applicable, the 60/30 Pension, shall be the only type(s) of Early Retirement Pension(s) with an Effective Date of Pension on or after February 1, 2014, which are payable with respect to the Participant's Contribution Hours under such classification of employment after the date that the Contribution Rate increase would have been made under (C) above had the Collective Bargaining Agreement reflected the required Contribution Rate increase under (C) above (<u>i.e.,</u> Second Alternative Option under FIP Schedule).

(G)    <u>Classifications of Employment That Were Not covered Under Rehabilitation Schedule</u>

If a Participant works in a classification of employment on or after January 1, 2014, which was not covered under the Plan's Rehabilitation Plan or any Rehabilitation Plan Schedule when the Plan was in Critical Status, then, solely for purposes of determining the type(s) of Early Retirement Pension(s) applicable to the Participant's Contribution Hours on or after January 1, 2014, the Participant's classification of employment will be treated as having been covered under:

(i) the Default Schedule when the Plan was in Critical Status if the Participant's classification of employment is covered under a Collective Bargaining Agreement (or similar agreement), which does not reflect the required Contribution Rate increases in either (C) or (D) above, and the type(s) of Early Retirement Pension(s) (with an Effective Date of Pension on or after February 1, 2014) applicable to those Contribution Hours shall be the same as in (A) above (<u>i.e.,</u> Default Option under FIP Schedule);

(ii) the First Alternative Schedule when the Plan was in Critical Status if the Participant's classification of employment is covered under a Collective Bargaining Agreement (or similar agreement), which reflects the Contribution Rate increases that are required in (C) above, and, if so, the type(s) of Early Retirement Pension(s) (with an Effective Date of Pension on or after February 1, 2014) applicable to those Contribution Hours shall be the same as in (C) above (<u>i.e.,</u> First Alternative Option under FIP Schedule), subject to (E) and (F) above; or

48

(iii) the Second Alternative Schedule when the Plan was in Critical Status if the Participant's classification of employment is covered under a Collective Bargaining Agreement (or similar agreement), which reflects the Contribution Rate increases that are required in (D) above, and if so, the type(s) of Early Retirement Pension(s) (with an Effective Date of Pension on or after February 1, 2014) applicable to those Contribution Hours shall be the same as in (D) above (i.e., Second Alternative Option under FIP Schedule), subject to (E) above.

(d)    Early Retirement Pension Comprised of Different Types

A Participant's Early Retirement Pension may consist of one or more types of Early Retirement Pensions. For example, the portion attributable to Contribution Hours before 2014 may be payable as a Special Early Retirement Pension or a 55/30 Pension (depending on eligibility), and the portion attributable to Contribution Hours after 2013 may consist of the Age 62 Pension or 60/30 Pension (depending on eligibility) for some of those Contribution Hours, and the Unsubsidized Early Retirement Pension for the remainder of those post-2013 Contribution Hours. However, the Participant must meet the requirements of each type of Early Retirement Pension in order to receive an Early Retirement Pension that takes into account each of those types. Otherwise, the Early Retirement Pension will take into account only the type or types of Early Retirement Pension for which the requirements have been met (including all rules pertaining to work in non-signatory employment (e.g., delayed early retirement) and suspension of benefit rules). Further, a Participant who elects to retire before Normal Retirement Age may only have one Effective Date of Pension and may not elect to defer any portion of his Early Retirement Pension because he does not meet the requirements for one or more of the types of Early Retirement Pensions that comprise his aggregate Early Retirement Pension. For example, if a portion of the Participant's benefit at age 57 is comprised of a 55/30 Pension, and a portion of his benefit is comprised of a 60/30 Pension, he cannot retire at age 57 and elect to take the portion attributable to the 55/30 Pension and defer the portion attributable to the 60/30 Pension until he attains age 60. Instead, if the Participant actually retires at age 57 and meets the eligibility requirements of a 55/30 Pension, a portion of his Early Retirement Pension would be comprised of a 55/30 Pension, and a portion would be comprised of the Unsubsidized Early Retirement Pension, since the Participant would not meet the requirements for a 60/30 Pension at age 57.

**Section 5.05    Unsubsidized Early Retirement Pension**

(a)    Eligibility for Unsubsidized Early Retirement Pension

A Participant shall be entitled to retire on an Unsubsidized Early Retirement Pension if he meets the requirements for receiving a Standard Early Retirement Pension, assuming such type of Early Retirement Pension were applicable to the Participant. Specifically, the Participant (i) must meet the eligibility requirements described in Section 5.06(a) below as if he were applying for a Standard Early Retirement Pension, and (ii) if his early retirement date would have been delayed under Section 5.06(b) below had the Standard Early Retirement Pension been applicable to the Participant, his Effective Date of Pension for an

49

Unsubsidized Early Retirement Pension may not be earlier than such delayed early retirement date.

(b)    Amount of Unsubsidized Early Retirement Pension

The monthly amount of a Participant's Unsubsidized Early Retirement Pension shall be the actuarial equivalent of his monthly Normal Retirement Pension under Section 5.03, based on the Participant's age on his Effective Date of Pension. The actuarial equivalent of the Participant's Normal Retirement Pension shall be determined by multiplying the monthly amount of his Normal Retirement Pension determined under Section 5.03 (as if he were then of Normal Retirement Age) by the factor in the table below, which corresponds to the Participant's age on his Effective Date of Pension:.

<u>TRUE ACTURIAL EQUIVAENT EARLY RETIREMENT REDUCTION FACTORS (FROM NORMAL RETIREMENT AGE 65)</u>

----------------MONTHS----------------

| Age in Years | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 55 | 0.3659 | 0.3688 | 0.3718 | 0.3747 | 0.3777 | 0.3806 | 0.3836 | 0.3865 | 0.3894 | 0.3924 | 0.3953 | 0.3983 |
| 56 | 0.4012 | 0.4045 | 0.4078 | 0.4111 | 0.4144 | 0.4177 | 0.4210 | 0.4242 | 0.4275 | 0.4308 | 0.4341 | 0.4374 |
| 57 | 0.4407 | 0.4444 | 0.4481 | 0.4517 | 0.4554 | 0.4591 | 0.4628 | 0.4664 | 0.4701 | 0.4738 | 0.4775 | 0.4811 |
| 58 | 0.4848 | 0.4889 | 0.4931 | 0.4972 | 0.5013 | 0.5054 | 0.5096 | 0.5137 | 0.5178 | 0.5219 | 0.5261 | 0.5302 |
| 59 | 0.5343 | 0.5389 | 0.5436 | 0.5482 | 0.5528 | 0.5575 | 0.5621 | 0.5667 | 0.5714 | 0.5760 | 0.5806 | 0.5853 |
| 60 | 0.5899 | 0.5951 | 0.6004 | 0.6056 | 0.6108 | 0.6160 | 0.6213 | 0.6265 | 0.6317 | 0.6369 | 0.6422 | 0.6474 |
| 61 | 0.6526 | 0.6585 | 0.6644 | 0.6703 | 0.6762 | 0.6821 | 0.6881 | 0.6940 | 0.6999 | 0.7058 | 0.7117 | 0.7176 |
| 62 | 0.7235 | 0.7302 | 0.7369 | 0.7436 | 0.7503 | 0.7570 | 0.7637 | 0.7704 | 0.7771 | 0.7838 | 0.7905 | 0.7972 |
| 63 | 0.8039 | 0.8115 | 0.8192 | 0.8268 | 0.8344 | 0.8420 | 0.8497 | 0.8573 | 0.8649 | 0.8725 | 0.8802 | 0.8878 |
| 64 | 0.8954 | 0.9041 | 0.9128 | 0.9216 | 0.9303 | 0.9390 | 0.9477 | 0.9564 | 0.9651 | 0.9739 | 0.9826 | 0.9913 |
| 65 | 1.0000 | | | | | | | | | | | |

Source: The Segal Company
Assumptions -- Interest rate: 7.50%; Mortality table: RP-2000 Male
Combined Healthy Blue Collar Table; Form of Payment: Single Life Only

(c)    For purposes of this Section 5.05, the term "actuarial equivalent" is based on the factors and assumptions in the chart above, and is different than the definition in Section 1.01A, which shall not apply to this Section 5.05. Additionally, in accordance with Section 5.04(d) above, the Unsubsidized Early Retirement Pension may comprise only a portion of a Participant's total monthly Early Retirement Pension.

**Section 5.06    Standard Early Retirement Pension**

(a)     Eligibility for Standard Early Retirement Pension (General Rule) Except as may have been provided under the Rehabilitation Plan or Rehabilitation Plan Schedule when the Plan was in Critical Status, and except as provided in subsection (b) below, a Participant shall be entitled to retire on a Standard Early Retirement Pension if he has attained age 55 and he meets either the requirements of (1) or (2) below, and for Effective Dates of Pension on or after February 1, 2014, the Standard Early Retirement Pension is an applicable type of Early Retirement Pension under Section 5.04:

    (1)     He has both:

        (A)     at least 15 years of Pension Credit, and

        (B)     at least 12 months of Future Service Credit; or

    (2)     He has either:

        (A)     at least 10 years of Pension Credit, five of which are Future Service Credit, or

        (B)     he has at least 10 Years of Service for purposes of vesting under Section 8.07.

(b)     Delayed Early Retirement Date

    (1)     Except as provided for in paragraph (6) below, for every calendar quarter in which a Participant or Employee, or a former Participant or Employee performs at least one hour of employment on or after September 1, 1988, in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer, the early retirement date of said Participant or Employee, or former Participant or Employee will be delayed six (6) months.

    (2)     In the event that the early retirement date of a Participant or Employee, or a former Participant or Employee, is delayed pursuant to the preceding paragraph, that delay shall be waived if said Participant or Employee returns to Covered Employment and earns a number of Pension Credit months, as that term is defined in Article 4, equal to the number of months during which he was previously employed for at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer. In the event that the Participant does not earn an equal amount of Pension Credit, the delay will be reduced on a pro rata basis determined by dividing the number of months of Pension Credit earned subsequent to his return to Covered Employment by the number of months during which the individual previously worked at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer. Such percentage shall not be greater than 100%. Notwithstanding the foregoing, effective January 1, 2003, an Employee or Participant who returns to Covered Employment after working in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer shall have the delay described above waived provided he (1) terminates the non-covered employment, (2) returns to Covered Employment

51

between January 1, 2002 and December 31, 2004, and (3) thereafter earns at least twelve (12) months of Future Service Credit.

(3)    A Participant or Employee's right to a waiver of the delay of his early retirement date pursuant to the preceding paragraph shall be limited to his first return to Covered Employment after being employed for at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer.  If the Participant or Employee then leaves Covered Employment again and is again employed at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer, a subsequent return to Covered Employment shall not qualify for the remedial provisions set forth in the preceding paragraph.

(4)    Notwithstanding the foregoing paragraphs (1) through (3), any accrued benefits (as that term is used in Section 411(d)(6) of the Code) of participants that were accrued prior to September 1, 1988 shall, upon application for early retirement, be paid according to the terms of the Plan Document in effect on August 31, 1988.

(c)    Amount of Standard Early Retirement Pension

The reduction factors for Standard Early Retirement Pensions were modified by the Rehabilitation Plan.  This modification was and remains permanent.  For Participants with an Effective Date of Pension on or after March 1, 2008, the monthly amount of the Standard Early Retirement Pension shall be the monthly amount of the Normal Retirement Pension under Section 5.03, which the Participant would have been entitled to if he were then of Normal Retirement Age, but reduced by $\frac{1}{2}$ of 1% (0.005) for each month (6% per year) by which the Participant is younger than age 65 on his Effective Date of Pension.

For Participants who had an Effective Date of Pension on or after June 1, 1979 but before March 1, 2008, the monthly amount of the Standard Early Retirement Pension shall be the amount of the Normal Retirement Pension under Section 5.03, which the Participant would have been entitled to if he were then of Normal Retirement Age, but reduced by $\frac{1}{2}$ of 1% for each month by which the Participant is younger than age 62 (i.e., over age 55 but less than 62), plus $\frac{1}{4}$ of 1% for each month between age 62 and 65.  In accordance with Section 5.04(d) above, the Standard Early Retirement Pension may comprise only a portion of a Participant's total monthly Early Retirement Pension.

## Section 5.07    Special Early Retirement Pension

(a)    Eligibility for Special Early Retirement Pension

Except as may have been provided under the Rehabilitation Plan or Rehabilitation Plan Schedule when the Plan was in Critical Status, and except as provided in subsection (c) below, a Participant shall be entitled to retire on a Special Early Retirement Pension if he has attained age 55 and he satisfies the requirements of (1) below and, with respect to a Participant who performed Construction Work, satisfies the requirements of (2), below, and for Effective Dates of Pension on or after February 1, 2014, the Special Early Retirement Pension is an applicable type of Early Retirement Pension under Section 5.04:

52

(1)    the Participant has met the requirements of either Section 5.06(a)(1) or Section 5.06(a)(2); and

(2)    if the Participant performed Construction Work, the Participant has performed at least 3,500 Hours of Work in Covered Employment during the five (5) consecutive Calendar Year period immediately preceding:

(A)    the Calendar Year in which he applies for a Special Early Retirement Pension under this Section 5.07, or

(B)    if earlier and the Participant retires on or after January 1, 1997, the Calendar Year in which the Participant begins to receive pension benefits, with no reduction for age, under another multiemployer defined benefit pension plan that is, on the date the Participant retires under this Plan, a party to the International Reciprocal Agreement for Sheet Metal Workers' Pension Funds.

(b)    Amount of Special Early Retirement Pension

The reduction factors for Special Early Retirement were modified by the Rehabilitation Plan. This modification was and remains permanent. For Participants with an Effective Date on or after March 1, 2008, the monthly amount of the Special Early Retirement Pension shall be the monthly amount of the Participant's Normal Retirement Pension under Section 5.03, which the Participant would have been entitled to if he were then of Normal Retirement Age, but reduced by ½ of 1% (.005) for each month (6% per year) by which the Participant is younger than age 62 on his Effective Date of Pension. If the Participant is age 62 or older on his Effective Date of Pension, the monthly amount of his Special Early Retirement Pension is equal to the monthly amount of his Normal Retirement Pension (determined as if he attained Normal Retirement Age on his Effective Date of Pension). In accordance with Section 5.04(d) above, the Special Early Retirement Pension may comprise only a portion of a Participant's total monthly Early Retirement Pension.

For Participants who had an Effective Date of Pension before March 1, 2008, the monthly amount of the Special Early Retirement Pension shall be the monthly amount of his Normal Retirement Pension under the applicable provision of Section 5.03, determined as if the Participant were then of Normal Retirement Age, but reduced by 0.25% for each month by which he is younger than age 62 but not younger than age 60 plus 0.5% for each month by which he is younger than age 60 at the time he retires. If the Participant was age 62 or older on his Effective Date of Pension, the monthly amount of his Special Early Retirement Pension is equal to the monthly amount of his Normal Retirement Pension (determined as if he attained Normal Retirement Age on his Effective Date of Pension).

(c)    Delayed Special Early Retirement Date

(1)    Except as provided in paragraph (4) below, for every quarter in a Calendar Year in which a Participant or Employee, or former Participant or Employee performs at least one (1) hour of employment on or after September 1, 1988 in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union

53

and the employer, the special early retirement date of said Participant or Employee, or former Participant or Employee will be delayed six (6) months.

(2)    In the event that the special early retirement date of a Participant or Employee, or a former Participant or Employee, is delayed pursuant to the preceding paragraph, that delay shall be waived if said Participant or Employee returns to Covered Employment and earns a number of Pension Credit months, as that term is defined in Article 4, equal to the number of months during which he was previously employed for at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer. In the event that the Participant does not earn an equal amount of Pension Credit, the delay will be reduced on a pro rata basis determined by dividing the number of months of Pension Credit earned subsequent to his return to Covered Employment by the number of months during which the individual previously worked at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer. Such percentage shall not be greater than 100%. Notwithstanding the foregoing, effective January 1, 2003, an Employee or Participant who returns to Covered Employment after working in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer shall have the delay described above waived provided he (1) terminates the non-covered employment, (2) returns to Covered Employment between January 1, 2002 and December 31, 2004, and (3) thereafter earns at least twelve (12) months of Future Service Credit.

(3)    A Participant or Employee's right to a waiver of the delay of his special early retirement date pursuant to the preceding paragraph shall be limited to his first return to Covered Employment after being employed for at least one (1) hour on or after September 1, 1988 in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer. If the Participant or Employee then leaves Covered Employment again and is again employed at least one hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer, a subsequent return to Covered Employment shall not qualify for the remedial provisions set forth in the preceding paragraph.

(4)    The foregoing paragraphs (1) through (3) shall apply only to that portion of a Participant's Special Early Retirement Pension that is based on Pension Credit credited on or after September 1, 1988.

**Section 5.08    Age 62 Pension**

(a)    Eligibility for an Age 62 Pension

Except as may have been provided under the Rehabilitation Plan or Rehabilitation Plan Schedule when the Plan was in Critical Status, a Participant who has attained age 62 shall be eligible for an Age 62 Pension if he meets the requirements for receiving a Special Early Retirement Pension, as if such type of Early Retirement Pension were applicable to the Participant. Specifically, (i) the Participant must meet the eligibility requirements described in Section 5.07(a) (but substituting age 62 for age 55); (ii) the Participant may not

54

receive any portion of his Age 62 Pension earlier than he would have received such portion of a Special Retirement Pension under the delayed early retirement date provisions of Section 5.07(c); (iii) for Effective Dates of Pension on or after February 1, 2014, the Age 62 Pension is an applicable type of Early Retirement Pension under Section 5.04.

(b)    Amount of Age 62 Pension

If an eligible Participant retires on an Age 62 Pension on or after age 62 but before age 65, the amount of his Age 62 Pension shall be the amount of the Normal Retirement Pension under Section 5.03, which the Participant would have been entitled to if he were then of Normal Retirement Age.  In accordance with Section 5.04(d) above, the Age 62 Pension may comprise only a portion of a Participant's total monthly Early Retirement Pension.

**Section 5.09    55/30 Pension**

(a)    Eligibility for 55/30 Pension

(1)    Except as may have been provided under the Rehabilitation Plan or Rehabilitation Plan Schedule when the Plan was in Critical Status, and except as provided in subsection (d) below, a Participant who retires on or after January 1, 2006 shall be eligible for a 55/30 Pension as described in this Section 5.09 if he (i) satisfies the requirements of Section 5.07 for Special Early Retirement, (ii) has 360 months of Future Service Credit, (iii) has 3,500 Hours of Work at the 55/30 Rate within the five calendar year period immediately preceding the calendar year in which he applies for a pension, and (iv) has at least 60 months, out of the last 120 months, of Future Service Credit in a position that, prior to his retirement, is or becomes subject to the 55/30 Rate; provided, that, for Effective Dates of Pension on or after February 1, 2014, the 55/30 Pension is an applicable type of Early Retirement Pension under Section 5.04

(2)    Except as provided in subsection (d) below, a Participant who retired before January 1, 2006, was eligible for a 55/30 Pension as described in this Section 5.09 if he (i) satisfied the requirements of Section 5.07 for Special Early Retirement, (ii) had 360 months of Future Service Credit, (iii) had 24 months of Future Service Credit at the 55/30 Rate, and (iv) had at least 60 months, out of the last 120 months, of Future Service Credit in a position that, prior to his retirement, was or became subject to the 55/30 Rate.

(b)    Amount of 55/30 Pension

If an eligible Participant retires on a 55/30 Pension on or after age 55 but before age 65, the monthly amount of his 55/30 Pension shall be equal to the monthly amount of the Normal Retirement Pension under Section 5.03, which the Participant would have been entitled to if he were then of Normal Retirement Age.  In accordance with Section 5.04(d) above, the 55/30 Pension may comprise only a portion of a Participant's total monthly Early Retirement Pension.

(c)    55/30 Rate

(1) For an eligible Participant, the 55/30 Rate prior to December 1, 2007 is the rate of contributions (i) specified by the Participating Local in which he is a member or with respect to which his Contribution Rate is determined in a resolution adopting the 55/30 Pension, (ii) that is in addition to the Participating Local's Contribution Rate for the Participant's position or classification, and (iii) that is based on a rate that is no less than twenty-five percent of such Participating Local's Contribution Rate in effect as of January 1, 2000 for the Participant's position or classification, rounded up to the next whole cent. For the period after December 1, 2007, the 55/30 Rate is 30% of the Participant's Contribution Rate. For purposes of this subsection, the term "Participating Local" includes other Contributing Employers who adopted the 55/30 Pension option.

(2) The adoption of the 55/30 Rate and the 55/30 Pension by a Participating Local shall be effective on a prospective basis as of the date specified in the Participating Local's resolution adopting the 55/30 Pension and shall apply to all Participants who are members of, or whose Contribution Rates are otherwise determined with respect to, the Participating Local and whose position or classification is subject to the 55/30 Rate. Notwithstanding the preceding sentence, the 55/30 Pension shall not be effective with respect to Participants who are members of, or whose Contribution Rates are otherwise determined with respect to, a particular Participating Local unless by December 31, 2005 (i) the Participating Local irrevocably adopts the 55/30 Pension by means of a resolution in the form and manner acceptable to the Fund, (ii) the Participating Local files with the Fund the resolution and the minutes from the Participating Local's meeting at which such resolution was adopted, and (iii) contributions are payable to the Fund at the 55/30 Rate on behalf of the Participants who are members of the Participating Local or whose Contribution Rates are otherwise determined with respect to such Participating Local. The Trustees have the sole authority to determine whether contributions on behalf of such Participants with respect to the 55/30 Rate are being made at the proper level. A Participant's benefits shall continue to accrue under the Plan without regard to this Section 5.09 until the requirements of the second sentence of this paragraph (2) are met. For purposes of this subsection, the term "Participating Local" shall be deemed to include the International Training Institute, the National Energy Management Institute, or the SMWIA.

(3) For any Participant, contribution increases before December 1, 2007 in excess of the 55/30 Rate that become effective after the 55/30 Pension is adopted by the Participating Local under paragraph (2) above shall be proportionately allocated to benefit accrual and to pay for the 55/30 Pension, with 80% of each such increase being allocated to benefit accrual without regard to this Section 5.09 and becoming part of the Contribution Rate and 20% of each such increase being allocated to pay for the 55/30 Pension and becoming part of the 55/30 Rate for such Participant.

(d) Effect of Non-Covered Employment

(1) Except as provided in paragraph (2) below, if a Participant or Employee, or former Participant or Employee, at any time after his Contribution Date performed or performs at least one (1) hour of employment on or after September 1, 1988 in the

56

Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer, the Participant will not be eligible to retire pursuant to the provisions of this Section 5.09.

(2)     In the event that a Participant or Employee, or former Participant or Employee, becomes ineligible for the 55/30 Pension pursuant to the preceding paragraph, such ineligibility shall be waived if the Participant or Employee returns to Covered Employment and earns a number of months of Pension Credit equal to the number of months during which he was previously employed for at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer.  Notwithstanding the foregoing, effective January 1, 2003, an Employee or Participant who returns to Covered Employment after working in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer shall have his ineligibility waived provided he (i) terminates the non-covered employment, (ii) returns to Covered Employment between January 1, 2002 and December 31, 2004, and (iii) thereafter earns at least twelve (12) months of Future Service Credit.

(3)     A Participant's or Employee's right to a waiver of his ineligibility for the 55/30 Pension pursuant to the preceding paragraph (2) shall be limited to his first return to Covered Employment after being employed for at least one (1) hour on or after September 1, 1988, in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer.  If the Participant or Employee then leaves Covered Employment again and is again employed at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer, a subsequent return to Covered Employment shall not qualify for the remedial provisions set forth in the preceding paragraph (2).

## Sections 5.10    60/30 Pension

(a)     Eligibility

Except as may have been provided under the Rehabilitation Plan or Rehabilitation Plan Schedule when the Plan was in Critical Status, a Participant who has attained age 60 shall be eligible for a 60/30 Pension if he meets the requirements for receiving a 55/30 Pension, as if that type of Early Retirement Pension were applicable to the Participant. Specifically, the Participant must meet the requirements of Section 5.09 (a)(1) (including the effect of Non-Covered Employment in Section 5.09 (d)), as if he were applying for a 55/30 Pension, but the Participant must attain age 60 to be eligible; and for Effective Dates of Pension on or after February 1, 2014, the 60/30 Pension is an applicable type of Early Retirement Pension under Section 5.04.

(b)     Amount of a 60/30 Pension

If an eligible Participant retires on a 60/30 Pension on or after age 60 but before age 65, the monthly amount of his 60//30 Pension shall be equal to the monthly amount of the Normal Retirement Pension under Section 5.03, which the Participant would have been entitled to if

he were then of Normal Retirement Age. In accordance with Section 5.04 (d) above, the 60/30 Pension may comprise only a portion of a Participant's total monthly Early Retirement Pension.

**Section 5.11     Continued Application of 55/30 Rate if 55/30 Pension Ceased to be an Applicable Type of Early Retirement Pension**

In determining the monthly amount of any pension described in this Article 5 after March 1, 2008, a Participant's monthly pension benefit shall continue to be based on 70% of the Participant's Contribution Rate (i.e., full dollar amount of Contribution Rate less 30% -- the Benefit Rate) if the 55/30 Pension had applied to a Participant's classification of employment before March 1, 2008 (regardless of whether he was actually participating in the Plan at that time), and the 55/30 Pension ceased to be an applicable type of Early Retirement Pension for the Participant's classification of employment (i) under the Rehabilitation Plan or a Rehabilitation Plan Schedule when the Plan was in Critical Status, or (ii) by operation of subsection (E) or (F) of Section 5.04(c)(2).

**Section 5.12     Monthly Pension Amounts Based on Single Life Annuity**

The monthly pension amounts described in this Article 5 are expressed in the form of a single life annuity (i.e., a monthly benefit paid over the life of the Participant), which is referred to as a "Lifetime Pension." If a pension benefit is paid in a form other than the Lifetime Pension, the monthly amount may be different. Article 6 describes the other benefit payment options.

**Section 5.13     Whole Dollar Amount**

For the purpose of this Article 5, if the monthly pension benefit amount is not a whole dollar amount, it shall be rounded to the next higher dollar amount.

**Section 5.14     Non-Duplication of Pensions**

A Participant may only receive one type of pension from the Plan, except that his Early Retirement Pension may be comprised of more than one type of Early Retirement Pension. Further, a Participant who is receiving Disability Benefits under Article 16 of the Plan Document will not be permitted to elect any type of pension under this Article 5. If, however, a Participant's Disability Benefit is terminated under Article 16, he will be permitted to elect any type of pension for which he qualifies under this Article 5, and his pension will be unaffected by the prior receipt of any Disability Benefits that he was eligible to receive. Nothing herein will be construed to affect any rights and remedies the Plan has at law or equity to recover any payments that a person was not eligible to receive, including, but not limited to, the Plan's right to recoup benefit overpayments from future payments.

**Section 5.15     Amount of Benefits after Separation from Covered Employment**

Except for benefits that were adjusted under the Rehabilitation Plan and/or Rehabilitation Schedules, the pension to which a Participant is entitled shall be determined under the terms of the Plan Document as in effect at the time the Participant separates from Covered Employment, based on the actual Pension Credit he had accrued and the Contribution Rates at which he had worked prior to such separation, as determined under the applicable provisions of the Plan Document.  For the purposes of this Section, a Participant shall be deemed to have separated from Covered Employment on the earlier of his Effective Date of Pension or on the last day of work, which is followed by five (5) consecutive One-Year Breaks in Service.  If following such a Participant's separation from Covered Employment, as defined above, he returns to Covered Employment and earns at least five (5) additional years of Future Service Credit, then his benefits will be computed on the basis of the provisions of the Plan Document in effect when he again separates from Covered Employment or when he retires.  If following such a Participant's separation from Covered Employment as defined above he returns to Covered Employment but does not earn at least five (5) additional years of Future Service Credit, the benefit which he accrues following his separation from Covered Employment shall be added to the benefit accrued before the separation from Covered Employment in order to determine the amount of his pension.

**Section 5.16        Reserved for Appendix A**

## ARTICLE 6.  NORMAL FORM OF PENSION AND OPTIONAL FORMS OF PENSION PAYMENTS

**Section 6.01        General**

The normal form of pension for a married Participant is a 50% Joint and Survivor Annuity, and the normal form of pension for an unmarried Participant is a Lifetime Pension.  The 50% Joint and Survivor Annuity provides a lifetime pension for a married Participant plus a lifetime pension for his or her surviving spouse, starting after the death of the Participant.  The monthly amount to be paid to the surviving spouse is one-half the monthly amount paid to the Participant.  When a 50% Joint and Survivor Annuity is in effect, the monthly amount of the Participant's pension is reduced in accordance with the provisions of Section 6.04 from the full amount otherwise payable.  The Lifetime Pension is paid in the form of a single life annuity -- over the life of the Participant.

The "Joint and Survivor Annuity Option," as further described in this Article 6, was referred to under older versions of the Plan Document as a "Husband-and-Wife Option."  In general, the question of whether a Participant is married (and has a spouse, including a same-sex spouse) for purposes of the Plan Document shall be determined in accordance with any applicable guidance from the United States Department of Treasury or United States Department of Labor.

Certain optional forms of payments described in this Article 6 were adjusted (i.e., reduced or eliminated) under the Rehabilitation Plan and/or Rehabilitation Plan Schedules.  Those adjustments were and remain permanent and continue to apply to benefits accrued after the Plan's emergence from Critical Status.

**Section 6.02**    **Upon Retirement**

(a)    Except as provided in paragraph (d) below, all pensions shall be paid in the form of a 50% Joint and Survivor Annuity (also referred to as the "50% Joint and Survivor Annuity Option") for a married Participant, or in the form of a Lifetime Pension to an unmarried Participant, unless the Participant has filed with the Trustees in writing a timely rejection of that form of pension, subject to all of the conditions of this Section. In no event shall the rejection of all Joint and Survivor Annuity Options by a Participant be effective unless (i) the spouse of the Participant has consented in writing to such rejection; (ii) if applicable, the rejection designates a specific alternate beneficiary, including any class of beneficiaries or any contingent beneficiaries, which may not be changed without spousal consent, unless the spouse expressly permits designations by the Participant without any further spousal consent; (iii) the spouse's consent acknowledges the effect of the election; and (iv) the spouse's consent is witnessed by a notary public. Also, a Participant's rejection of all Joint and Survivor Annuity Options shall not be effective unless the election designates a form of benefit payment that may not be changed without spousal consent, unless the spouse expressly permits designations by the Participant without any further spousal consent. Notwithstanding the foregoing, no spousal consent shall be required if it is established to the satisfaction of the Trustees that there is no spouse or the spouse cannot be located. If the spouse is legally incompetent to give consent, the spouse's legal guardian may give consent, even if the guardian is the Participant. Also, if the Participant is legally separated or the Participant has been abandoned by the spouse (within the meaning of applicable law), and the Participant has a court order to such effect, spousal consent is not required unless a "qualified domestic relations order" (within the meaning of ERISA) provides otherwise.

(b)    Time for Providing the Written Explanation of the Joint and Survivor Annuity Option and the Lifetime Pension

(1)    A Participant and his or her spouse shall be given a written explanation of all Joint and Survivor Annuity Options (or, in the case of an unmarried Participant, the Lifetime Pension) no less than 30 days and no more than 90 days before the first day of the month for which the benefit first becomes payable, which shall include a description of: (i) the terms and conditions of the Joint and Survivor Annuity Option (or, in the case of an unmarried Participant, a Lifetime Pension); (ii) the Participant's right to make and the effect of a rejection of a Joint and Survivor Annuity Option (or, in the case of an unmarried Participant, a Lifetime Pension); (iii) the rights of a Participant's spouse with respect to a Joint and Survivor Annuity Option; (iv) the right to make, and the effect of, a revocation of a previous rejection of a Joint and Survivor Annuity Option (or, in the case of an unmarried Participant, a Lifetime Pension); and (v) the relative values of the various optional forms of benefit under the Plan. A Participant and his spouse may, in accordance with Section 6.02(a) above, elect to reject a Joint and Survivor Annuity Option (or revoke a previous rejection) at any time within 90 days before the Effective Date of Pension (i.e., within 90 days before the first day of the month for which a benefit first becomes payable), and an unmarried Participant may elect in writing to reject the Lifetime Pension (or revoke a previous rejection) at any time within the 90 days before the Effective Date of Pension (i.e., within 90 days before the first day of the month for which a benefit first becomes payable).

60

(2)    Effective for distributions on or after September 22, 1995, the Effective Date of Pension may be less than 30 days after the written explanation that is described in Section 6.02(b)(1) is provided to the Participant, provided that the Participant is given written information that indicates:  (i) that the Participant had at least 30 days to consider whether to waive the Joint and Survivor Annuity Option (or, in the case of an unmarried Participant, a Lifetime Pension); (ii) that the Participant is permitted to revoke a distribution election until the Effective Date of Pension, or, if later, at any time before the end of the seven-day period that begins the day after the written explanation that is described in Section 6.02(b)(1) is provided to the Participant; and (iii) distribution in accordance with the Participant's affirmative election is not made before the end of the seven-day period that begins the day after the explanation that is described in the preceding paragraph is provided to the Participant.

(3)    Notwithstanding the foregoing provisions of this Section, effective for distributions beginning after December 31, 1996, the written explanation described in Section 6.02(b)(1) may be provided after the Effective Date of Pension, provided that:

(i)    the period for a Participant and his spouse to elect to reject the Joint and Survivor Annuity Option (or, in the case of an unmarried Participant, for the Participant to elect to reject the Lifetime Pension) is no less than 30 days before pension benefits are first paid, unless the Participant and the Participant's spouse (or, in the case of an unmarried Participant, just the Participant) elect to waive the requirement that the written explanation described in 6.02(b)(1) be provided at least 30 days before the first day of the month for which the pension first becomes payable, provided that the distribution election is revocable for 7 days or, if later, until the date that pension benefits are first paid, and the pension payments do not begin earlier than 8 days after such explanation is provided; and

(ii)    for distributions beginning after December 31, 2003, in the event that the amount of survivor benefit payable to the spouse upon the Effective Date of Pension is less than the amount that would have been payable had the distribution begun after the written explanation in section 6.02(b)(2), then the spouse must consent in writing to the Effective Date of Pension in the same manner and form as provided in 6.02(a) for the rejection of a Joint and Survivor Annuity Option.

(c)    If benefit payments are suspended in accordance with Section 8.06 for an Employee who continues in service without separation and who does not receive a benefit payment, this Section 6.02 shall apply upon the commencement of a pension after the period of suspension.

(d)    Notwithstanding anything in this Article 6 to the contrary, if the Actuarial Equivalent of a Participant's nonforfeitable Accrued Benefit, as determined under Section 8.05(b), does not exceed the "applicable amount" described in Section 8.05(b)(1) as of the first day of the month for which a pension first becomes payable, the notice and spousal consent and other

requirements of this Article 6 shall not apply, and the Participant's benefit shall be paid in accordance with Section 8.05(b)(1).

**Section 6.03**     **Death of an Eligible Employee Before Retirement (Pre-Retirement Annuity)**

(a)     If a Participant dies at a time when he has attained Vested Status under Section 8.07, and after completing one (1) or more Hours of Work after August 22, 1984, the Participant's surviving spouse will receive a survivor's pension, unless, in accordance with paragraph (d) below, the Participant dies before January 1, 2008, and his surviving spouse elects to receive a Death Benefit under section 7.01 instead of the survivor's pension.

(b)     Subject to the provisions of 16.07 and 8.05(a)(5), as applicable, if the Participant's death occurs after attainment of his earliest retirement age his spouse shall be paid a survivor's pension as if the Participant had retired with a 50% Joint and Survivor Annuity on the day before his death. Subject to paragraph (f) below, if the Participant's death occurs before attainment of his earliest retirement age, his spouse shall be paid a survivor's pension commencing with the month in which the Participant would have attained his earliest retirement age had he lived, and the amount of such pension shall be determined as if the Participant had left Covered Employment on the date of death, retired on a Joint and Survivor Annuity upon reaching his earliest retirement age, and died on the last day of the month in which earliest retirement age was reached; provided, however, that the surviving spouse of a deceased Participant may elect to defer commencement of the survivor benefit otherwise payable under this Section until a date not later than the date the Participant would have attained Normal Retirement Age.

(c)     This Section shall also apply to an inactive Participant who has met the requirements for a Normal Retirement Pension or early retirement pension (i.e., has attained Vested Status under Section 8.07), had one or more Hours of Work on or after January 1, 1976 and dies after August 22, 1984.

(d)     For benefits under this Section 6.03 that become effective on or after August 1, 2005, the surviving spouse of a Participant who dies before January 1, 2008 may waive the survivor's benefit under this Section 6.03 and elect instead to receive the Death Benefit provided under Section 7.01 if the Participant had met the eligibility requirements for a Death Benefit and notwithstanding any designation of Beneficiary in accordance with section 7.01. However, in no event shall the Death Benefit payable to such surviving spouse be less than the Actuarial Equivalent of the survivor's benefit otherwise payable under this Section 6.03.

(e)     If a disabled Participant applies for a Disability Benefit under Article 16 and then dies prior to satisfaction of the six-month waiting period under Section 16.05 and such death is related to the disability for which the Participant applied for benefits, the Participant's surviving spouse is entitled to a pre-retirement spousal benefit. The Spouse's lifetime benefit shall be calculated as one-half of what the Participant would have received under a Full Disability Joint and Survivor Benefit, payable one month after the Participant's death. The surviving spouse may not elect to receive the Death Benefit as provided for in Section 6.03(d) above.

62

(f)     If a Participant dies on or after January 1, 2008 and the surviving spouse is eligible for a survivor's pension described in paragraph (b) above, the surviving spouse may irrevocably elect in writing to begin receiving the survivor's pension before the month in which the Participant would have attained his earliest retirement age had he lived.  If such an election is made, the amount of the survivor's pension will be the Actuarial Equivalent of the amount that would have been payable in the month in which the Participant would have attained his earliest retirement age had he lived, determined as if the Participant had left Covered Employment on the date of death, retired on a Joint and Survivor Annuity upon reaching his earliest retirement age, and died on the last day of the month in which earliest retirement age was reached.  The Actuarial Equivalent of such amount will be determined as of the first day of the month following the month in which the Fund received the surviving spouse's written election and all other documents requested by the Fund.

**Section 6.04     Lifetime Pension**

(a)     The Lifetime Pension option is paid over the life of the Participant.  Benefit payments cease upon the death of the Participant, unless the 60-Certain Payment feature described below applies to the Participant's Lifetime Pension.

(b)     60-Month Certain

(1)     This provision applies to Effective Dates of Pension on or after February 1, 2014, and it reflects adjustments that were made to the 60-Month Certain feature (also referred to as the "60 Certain Payments" feature) when the Plan was in Critical Status.  Those adjustments, which among other things eliminated the 60 Certain Payments feature for Participants who were covered under the Default Schedule, whose benefits were adjusted under the Rehabilitation Plan's NIC provision, and for Participants classified as "Persons for Whom" under the Rehabilitation Plan, were and remain permanent.  The provisions of Section 7.02 apply to Effective Dates of Pension before March 1, 2008.  The provisions of the Rehabilitation Plan and Rehabilitation Plan Schedules governed the applicability of the 60-Month Certain feature for Participants with an Effective Dates of Pension on or after March 1, 2008 but before February 1, 2014 (based on the terms of the Plan Document as in effect before January 1, 2014).

(2)     The 60-Month Certain provision described in (3) below applies only to a Pensioner: who (i) has an Effective Date of Pension on or after February 1, 2014; (ii) whose Home Local Schedule was, as of December 31, 2013, the First Alternative Schedule or the Second Alternative Schedule (or would have been if the Participant's Contribution Date had been during the Plan's Rehabilitation Period); (iii) who did not have his benefits adjusted under the Rehabilitation Plan's NIC provision or "Person for Whom" provision; and (iv) who did not have 3,500 Hours of Work under the Default Schedule in a five (5) consecutive Calendar Year period preceding January 1, 2014, but only with respect to that portion of the benefit attributable to Contribution Hours before January 1, 2014.

(3)     <u>Portion of Pension Attributable to Contribution Hours Before January 1, 2014.</u>  If a Pensioner described in (2) above is receiving a Lifetime Pension under a Normal

63

Retirement Pension, an Unsubsidized Early Retirement Pension, a Standard Early Retirement Pension, a Special Early Retirement Pension, a 55/30 Pension, a 60/30 Pension, or an Age 62 Pension on the basis of, among other things, having at least 15 years of Pension Credit, and he dies on or after his Effective Date of Pension, but before he has received 60 monthly pension payments, then with respect to the portion of the benefit attributable to Contribution Hours before January 1, 2014, his monthly pension shall continue to be paid to his designated Beneficiary or Beneficiaries, if any, until 60 such payments have been made, including the payments to both the Pensioner and his Beneficiary or Beneficiaries. In no event shall the 60-Month Certain feature apply to a Pensioner who retired on a Normal Retirement Pension on the basis of the eligibility criteria of Section 5.02(b)(1)(B) of Appendix A, a Standard Early Retirement Pension (or Unsubsidized Early Retirement Pension) on the basis of the eligibility criteria of Section 5.06(a)(2), any Disability Benefits, or to a Pensioner who had elected the 100% Joint and Survivor Annuity Option provided in Section 6.07, the 75% Joint and Survivor Annuity Option provided in Section 6.06, or the 50% Joint and Survivor Annuity Option provided in Section 6.05 (except as provided under Section 6.05(b)).

(4)    <u>Portion of Pension Attributable to Contribution Hours On or After January 1, 2014</u>. If a Pensioner is receiving a Lifetime Pension under a Normal Retirement Pension, an Unsubsidized Early Retirement Pension, a Standard Early Retirement Pension, a Special Early Retirement Pension, a 55/30 Pension, a 60/30 Pension, or an Age 62 Pension on the basis of, among other things, having at least 15 years of Pension Credit, and he dies on or after his Effective Date of Pension, but before he has received 60 monthly pension payments, then with respect to the portion of the benefit attributable to Contribution Hours on or after January 1, 2014, his monthly pension shall continue to be paid to his designated Beneficiary or Beneficiaries but only if, and to the extent that those Contribution Hours were under a classification of employment which was covered under a Collective Bargaining Agreement (or similar agreement) that reflected the required Contribution Rate increases specified either in Section 5.04(c)(2)(C) or Section 5.04(c)(2)(D). If no Beneficiary has been named, or if the last named Beneficiary has predeceased the Pensioner or dies before 60 payments have been made, any remaining payments shall be made to the executor or administrator of the Pensioner's estate as an actuarially equivalent lump sum. This 60-Month Certain provision shall not apply to any portion of the benefits attributable to Contribution Hours on or after January 1, 2014, which were under a Collective Bargaining Agreement (or similar agreement) that did not reflect (or that ceased to reflect) the required Contribution Rate increases specified in either Section 5.04(c)(2)(C) or Section 5.04(c)(2)(D). Also, in no event shall the 60-Month Certain feature apply to a Pensioner who retired on a Normal Retirement Pension on the basis of the eligibility criteria of Section 5.02(b)(1)(B) of Appendix A, a Standard Early Retirement Pension (or Unsubsidized Early Retirement Pension) on the basis of the eligibility criteria of Section 5.06(a)(2), any Disability Benefits, or to a Pensioner who had elected the 100% Joint and Survivor Annuity Option provided in Section 6.07, the 75% Joint and Survivor Annuity Option provided in Section 6.06, or the 50% Joint and Survivor Annuity Option provided in Section 6.05 (except as provided in Section 6.05(b)).

**Section 6.05     50% Joint and Survivor Annuity Option**

(a)    Any benefit (i.e., pension benefit or Disability Benefit), which become effective on or after August 1, 1983 and is payable as a 50% Joint and Survivor Annuity (formerly referred to as a Husband and Wife Pension), will be adjusted for the 50% Joint and Survivor Annuity Option by multiplying the full amount otherwise payable as a Lifetime Pension by the following factors:

    (1)    Disability Benefits - 82% plus .4% for each full year that the spouse's age is greater than the Participant's age or minus .4% for each full year that the spouse's age is less than the Participant's age with a maximum factor of 99%.

    (2)    Pension Benefits - 90% plus .4% for each full year that the spouse's age is greater than the Participant's age or minus .4% for each full year that the spouse's age is less than the Participant's age with a maximum factor of 99%.

Under the 50% Joint and Survivor Annuity Option, upon the death of the Participant, the Participant's spouse receives one-half of the monthly amount that was payable to the Participant.  Upon the spouse's death, benefit payments cease, unless the 60-Certain Payment feature described below applies to the Participant's 50% Joint and Survivor Annuity.

(b)    60-Month Certain

    (1)    This provision applies to Effective Dates of Pension on or after February 1, 2014, and it reflects adjustments that were made to the 60-Motnh Certain feature (also referred to as the "60 Certain Payments" feature) when the Plan was in Critical Status.  Those adjustments, which among other things eliminated the 60 Certain Payments feature for Participants who were covered under the Default Schedule, whose benefits were adjusted under the Rehabilitation Plan's NIC provision, and for Participants classified as "Persons for Whom" under the Rehabilitation Plan, were and remain permanent.  Section 6.10 below applies to Effective Dates of Pension before March 1, 2008. The terms of the Rehabilitation Plan and Rehabilitation Plan Schedules govern the applicability of the 60 Certain Payment feature for Participants with an Effective Dates of Pension on or after March 1, 2008 but before February 1, 2014 (based on the terms of the Plan Document as in effect before January 1, 2014).

    (2)    The 60-Month Certain provision described in (3) below applies only to a Pensioner: who (i) has an Effective Date of Pension on or after February 1, 2014; (ii) whose Home Local Schedule was, as of December 31, 2013, the First Alternative Schedule or the Second Alternative Schedule (or would have been if the Participant's Contribution Date had been during the Plan's Rehabilitation Period); (iii) who did not have his benefits adjusted under the Rehabilitation Plan's NIC provision or "Person for Whom" provision; and (iv) who did not have 3,500 Hours of Work under the Default Schedule in a five (5) consecutive Calendar Year period preceding January 1, 2014, but only with respect to that portion of the pension, which is attributable to Contribution Hours before January 1, 2014.

(3)     <u>Portion of Pension Attributable to Contribution Hours Before January 1, 2014</u>.  If a Pensioner described in (2) above dies after his Effective Date of Pension while receiving a 50% Joint and Survivor Annuity under a Normal Retirement Pension, an Unsubsidized Early Retirement Pension, a Standard Early Retirement Pension, a Special Early Retirement Pension, a 55/30 Pension, a 60/30 Pension, or an Age 62 Pension on the basis of, among other things, having at least 15 years of Pension Credit, and the Pensioner's spouse dies before the total payments made to the Pensioner and spouse equal 60 times the amount of the Lifetime Pension that the Participant would have been entitled to before reduction for the 50% Joint and Survivor Annuity, then with respect to the portion of the benefit attributable to Contribution Hours before January 1, 2014, the difference shall be paid to the Pensioner's designated Beneficiary or Beneficiaries either in equal monthly payments or as a lump sum, as the Beneficiary or Beneficiaries elect(s).  If no Beneficiary has been named or if the last named Beneficiary has predeceased the Pensioner or spouse, payment shall be made to the executor or administrator of the Pensioner's estate.  In no event shall the 60-Month Certain feature apply to a Pensioner who retired on a Normal Retirement Pension on the basis of the eligibility criteria of Section 5.02(b)(1)(B) of Appendix A, a Standard Early Retirement Pension (or Unsubsidized Early Retirement Pension) on the basis of the eligibility criteria of Section 5.06(a)(2), any Disability Benefits, or to a Pensioner who had elected the 100% Joint and Survivor Annuity Option provided in Section 6.07, or the 75% Joint and Survivor Annuity Option provided in Section 6.06.

(4)     <u>Portion of Pension Attributable to Contribution Hours On or After January 1, 2014</u>.  If a Pensioner dies after his Effective Date of Pension while receiving a 50% Joint and Survivor Annuity under a Normal Retirement Pension, an Unsubsidized Early Retirement Pension, a Standard Early Retirement Pension, a Special Early Retirement Pension, a 55/30 Pension, a 60/30 Pension, or an Age 62 Pension on the basis of, among other things, having at least 15 years of Pension Credit, and the Pensioner's spouse dies before the total payments made to the Pensioner and spouse equal 60 times the amount of the Lifetime Pension the Participant would have been entitled to before reduction for the 50% Joint and Survivor Annuity, then with respect to the portion of the benefit attributable to Contribution Hours on or after January 1, 2014, the difference shall be paid to the Pensioner's designated Beneficiary or Beneficiaries either in equal monthly payments or as a lump sum, as the Beneficiary or Beneficiaries elect(s), but only if, and to the extent that those Contribution Hours were under a classification of employment which was covered under a Collective Bargaining Agreement (or similar agreement) that reflected the required Contribution Rate increases specified either in Section 5.04(c)(2)(C) or Section 5.04(c)(2)(D).  If no Beneficiary has been named or if the last named Beneficiary has predeceased the Pensioner or spouse, payment shall be made to the executor or administrator of the Pensioner's estate.  This 60-Month Certain shall not apply to any portion of the benefits attributable to Contribution Hours on or after January 1, 2014, which were under a Collective Bargaining Agreement (or similar agreement) that did not reflect (or that ceased to reflect) the required Contribution Rate increases specified in either Section 5.04(c)(2)(C) or Section 5.04(c)(2)(D).  Also, in no event shall the 60-Month Certain feature apply to a Pensioner who retired on a Normal Retirement Pension on the basis of the eligibility criteria of Section 5.02(b)(1)(B) of Appendix A, a Standard Early Retirement Pension (or

Unsubsidized Early Retirement Pension) on the basis of the eligibility criteria of Section 5.06(a)(2), any Disability Benefits, or to a Pensioner who had elected the 100% Joint and Survivor Annuity Option provided in Section 6.07, or the 75% Joint and Survivor Annuity Option provided in Section 6.06.

(c)    Reversion (Pop-Up) Feature

(1)    <u>Effective Dates of Pension on or after February 1, 2014.</u>  The reversion (pop-up) feature was adjusted while the Plan was in Critical Status.  That adjustment was and remains permanent and is reflected in Section 6.11 below, which governs the extent to which the reversion (pop-up) feature applies for Effective Dates of Pension on or after February 1, 2014.

(2)    <u>Effective Dates of Pension on or After March 1, 2008 but before February 1, 2014</u>. The provisions of the Rehabilitation Plan and Rehabilitation Plan Schedules governed the applicability of the reversion (pop-up) feature for Participants with an Effective Dates of Pension on or after March 1, 2008 but before February 1, 2014 (based on the terms of the Plan Document that were in effect before January 1, 2014).

(3)    <u>Effective Dates of Pension after March 1, 1999 but before March 1, 2008</u>. If a Participant's Effective Date of Pension is on or after March 1, 1999, but before March 1, 2008, and the spouse predeceases the Pensioner while the Pensioner is receiving a 50% Joint and Survivor Annuity pursuant to subsection (a)(2) (which is not based on any Disability Benefit), the 50% Joint and Survivor Annuity shall cease to be effective as of the date of the spouse's death.  After that date, the monthly amount of the Participant's pension shall increase to the monthly amount that would have been payable had the Pensioner and his spouse waived the Joint and Survivor Annuity at the time of his retirement without electing any optional form of pension (other than a Level Income Option, if such option was elected).

(4)    <u>Effective Dates of Pension before March 1, 1999</u>. If the Participant's Effective Date of Pension was prior to March 1, 1999, the monthly amount of the Joint and Survivor Annuity, once it becomes payable, shall not be increased if the spouse predeceases the Pensioner, unless the Participant had elected the reversion (pop-up) option described in the applicable provision of the Plan Document as in effect prior to March 1, 1999 in a timely manner.

**Section 6.06        75% Joint and Survivor Annuity Option**

(a)    (1)    A Participant who is eligible to retire on a Normal Retirement Pension, an Unsubsidized Early Retirement Pension, a Standard Early Retirement Pension, a Special Early Retirement Pension, an Age 62 Pension, a 55/30 Pension, or a 60/30 Pension, and whose Effective Date of Pension is on or after January 1, 2008, may elect a lesser monthly pension amount payable during his lifetime with monthly payments to continue to his surviving spouse during the surviving spouse's remaining lifetime after the Participant's death at 75% of this reduced monthly

amount.  The 75% Joint and Survivor Annuity Option is actuarially equivalent to the Joint and Survivor Annuity payable in accordance with Section 6.02.

(2)    A Participant who is eligible to receive a Full Disability Benefit, and whose Effective Date of Disability Benefit is on or after January 1, 2009, may elect a lesser monthly benefit amount payable during his lifetime with monthly payments to continue to his surviving spouse during the surviving spouse's remaining lifetime after the Participant's death, at 75% of this reduced monthly amount.

(b)    The 75% Joint and Survivor Annuity Option described in this Section is subject to the following conditions:

(1)    The Participant and spouse must be legally married to each other as of the Participant's Effective Date of Pension.

(2)    This option must be elected by the Participant on the form provided for this purpose by the Trustees.

(3)    Once this option is elected, it cannot be revoked after the Participant's Effective Date of Pension, except as provided in Section 6.02(b)(3).

(c)    The monthly amount of any benefit (other than the Full Disability Benefit) that becomes effective in the form of a 75% Joint and Survivor Annuity Option shall be determined by multiplying the full monthly amount of pension otherwise payable (had the Participant and his spouse rejected the Joint and Survivor Annuity at the time of retirement without electing any optional form of pension) by 85.5% subtracted by 0.6% for each full year that the spouse's age is less than the Participant's age or added 0.6% for each full year that the spouse's age is greater than the Participant's age up to 15 years.  In the event that the difference in the spouse's age is equal to or greater than 16 years then this optional form would be further increased by .7% for every year thereafter with a maximum factor of 99%.

(d)    The monthly amount of any Full Disability Benefit that becomes effective in the form of a 75% Joint and Survivor Annuity Option shall be determined by multiplying the full monthly amount of the benefit otherwise payable (had the Participant and his spouse rejected the Joint and Survivor Annuity at the time the Full Disability Benefit became payable without electing any optional form of pension) by 74.5% subtracted by 0.5% for each full year that the spouse's age is less than the Participant's age or added 0.5% for each full year that the spouse's age is greater than the Participant's age with a maximum factor of 99%.

(e)    The monthly amount of the 75% Joint and Survivor Annuity Option, once it becomes payable, shall not be increased if the spouse is subsequently divorced from the Pensioner.

(f)    Reversion (Pop-Up) Feature

(1)    Effective Dates of Pension on or after February 1, 2014.  The reversion (pop-up) feature was adjusted by the Plan's Rehabilitation Plan while the Plan was in Critical Status.  That adjustment was and remains permanent and is reflected in Section 6.11

68

below, which governs the extent to which the reversion (pop-up) feature applies for Effective Dates of Pension on or after February 1, 2014.

(2)    Effective Dates of Pension on or After March 1, 2008 but before February 1, 2014. The provisions of the Rehabilitation Plan and Rehabilitation Plan Schedules governed the applicability of the reversion (pop-up) feature for Participants with an Effective Dates of Pension on or after March 1, 2008 but before February 1, 2014, based on the terms of the Plan Document that applied to the Pensioner on his Effective Date of Pension.

(3)    Effective Dates of Pension before March 1, 2008. In the event a spouse predeceases a Participant who retired under a 75% Joint and Survivor Annuity option described in subsection (a)(1) with an Effective Date of Pension before March 1, 2008, the 75% Joint and Survivor Annuity Option described in subsection (a)(1) above shall cease to be effective as of the date of the spouse's death. After' that date, the monthly amount of the Participant's pension shall increase to the monthly amount that would have been payable had the Participant and his spouse rejected a Joint and Survivor Annuity Option at the time of retirement without electing any optional form of pension. In all other cases, the monthly amount shall remain unchanged following the spouse's death.

## Section 6.07    100% Joint and Survivor Annuity Option

(a)    The 100% Joint and Survivor Annuity is an optional form of payment applicable only to pensions with an Effective Date of Pension after February 28, 1999.  It does not apply to Disability Benefits. A Participant who is eligible to retire on a Normal Retirement Pension, an Unsubsidized Early Retirement Pension, a  Standard Early Retirement Pension, a Special Early Retirement Pension, a 55/30 Pension, a 60/30 Pension or an Age 62 Pension, as applicable, may elect a lesser monthly pension amount payable during his lifetime with monthly payments to continue to his surviving spouse, during the surviving spouse's remaining lifetime after the Participant's death, at 100% of this reduced monthly amount.

(b)    The 100% Joint and Survivor Annuity described in subsection (a) above is subject to the following conditions:

(1)    The Participant and spouse must be legally married to each other as of the Participant's Effective Date of Pension.

(2)    This option must be elected by the Participant on the form provided for this purpose by the Trustees.

(3)    Once this option is elected, it cannot be revoked after the Participant's Effective Date of Pension, except as provided in Section 6.02(b)(3).

(c)    The monthly amount of any pension that becomes effective in the form of a 100% Joint and Survivor Annuity Option shall be determined by multiplying the full monthly amount of pension otherwise payable (had the Participant and his spouse rejected the Joint and Survivor Annuity at the time of retirement without electing any optional form of pension)

69

by 84% plus .7% for each full year that the spouse's age is greater than the Participant's age or minus .7% for each full year that the spouse's age is less than the Participant's age with a maximum factor of 99%.

(d)     The monthly amount of the 100% Joint and Survivor Annuity Option, once it becomes payable, shall not be increased if the spouse is subsequently divorced from the Pensioner.

(e)     Reversion (Pop-Up) Feature

   (1)     <u>Effective Dates of Pension on or after February 1, 2014</u>.  The reversion (pop-up) feature was adjusted while the Plan was in Critical Status.  That adjustment was and remains permanent and is reflected in Section 6.11 below, which governs the extent to which the reversion (pop-up) feature applies for Effective Dates of Pension on or after February 1, 2014.

   (2)     <u>Effective Dates of Pension on or After March 1, 2008 but before February 1, 2014</u>. The terms of the Rehabilitation Plan and Rehabilitation Plan Schedules governed the applicability of the reversion (pop-up) feature for Participants with an Effective Dates of Pension on or after March 1, 2008 but before February 1, 2014 (based on the terms of the Plan Document in effect before January 1, 2014).

   (3)     <u>Effective Dates of Pension before March 1, 2008</u>. In the event a spouse predeceases a Participant who retired under a 100% Joint and Survivor Annuity option described in subsection (a) above with an Effective Date of Pension before March 1, 2008, the 100% Joint and Survivor Annuity Option described in subsection (a) above shall cease to be effective as of the date of the spouse's death. After' that date, the monthly amount of the Participant's pension shall increase to the monthly amount that would have been payable had the Participant and his spouse rejected a Joint and Survivor Annuity Option at the time of retirement without electing any optional form of pension. In all other cases, the monthly amount shall remain unchanged following the spouse's death.

**Section 6.08     Additional Conditions**

(a)     A Joint and Survivor Annuity Option shall not be effective under any of the following circumstances:

   (1)     The Participant and spouse were not married to each other on the Participant's Effective Date of Pension.  The Trustees shall be entitled to rely on a written representation last filed by the Participant before his Effective Date of Pension as to whether he or she is married.  If such representation later proves to be false, the Trustees may, in addition to any other rights or remedies, adjust benefit payments to recoup excess benefits paid as a result of the misrepresentation.

   (2)     The spouse died before the Participant's Effective Date of Pension.

70

(3)    The present value of the Participant's non-forfeitable Accrued Benefit, as determined under Section 6.02(d), does not exceed the "applicable amount" described in Section 8.05(b).

(b)    Election or rejection of a Joint and Survivor Annuity Option (or, in the case of an unmarried Participant, a Lifetime Pension) may not be made or altered after a Participant's Effective Date of Pension, except as specifically provided for in Section 6.02(b)(3).

**Section 6.09    Continuation of the Joint and Survivor Annuity**

(a)    The monthly amount of a Joint and Survivor Annuity, once it becomes payable, shall not be increased if the spouse is subsequently divorced from the Pensioner.

(b)    A Joint and Survivor Annuity is payable for the lifetime of the Pensioner and the surviving spouse to whom the Pensioner was married on his Effective Date of Pension and cannot be terminated on remarriage.

**Section 6.10    Coordination with 60 Certain Payments (Pre-March 1, 2008 Effective Dates)**

If a surviving spouse of a Pensioner who had an Effective Date of Pension before March 1, 2008 is eligible for benefits under Section 7.02, and is receiving pension benefits (not Disability Benefits) under a 50% Joint and Survivor Annuity, but dies before the total payments made to the Pensioner and spouse equal 60 times the amount of the pension the Participant had been entitled to before reduction for the 50% Joint and Survivor Annuity, the difference shall be paid to the Pensioner's designated Beneficiary or Beneficiaries either in equal monthly payments or as a lump sum, as the Beneficiary or Beneficiaries elect(s).  If no Beneficiary has been named or if the last named Beneficiary has predeceased the Pensioner or spouse, payment shall be made to the executor or administrator of the Pensioner's estate.

**Section 6.11    Reversion (Pop-Up) Feature for Effective Dates of Pension on or after February 1, 2014**

(a)    When the Plan was in Critical Status, the Rehabilitation Plan adjusted the reversion (pop-up) feature for all Joint and Survivor Annuity Options.  In general, the Rehabilitation Plan eliminated the reversion (pop-up) feature for all Joint and Survivor Annuity Options, except for Participants whose benefit adjustments were governed by the First Alternative Schedule or the Second Alternative Schedule (and who did not become "Persons for Whom" under the Rehabilitation Plan and were not subject to the NIC benefit adjustments under the Rehabilitation Plan).  That adjustment was and remains permanent, and continues to apply after the Plan's emergence from Critical Status, as reflected in this Section 6.11.  As described below, for Effective Dates of Pension on or after February 1, 2014, the reversion (pop-up) feature may apply to the portion of a Participant's pension benefits accrued before January 1, 2014, but may not apply to all or some of the Participant's pension benefits accrued on or after January 1, 2014.

71

(b)     Applicability of Reversion (Pop-Up) Feature to Pension Benefits Earned before January 1, 2014

In the event a spouse predeceases a Participant who retires with an Effective Date of Pension on or after February 1, 2014 under a 50% Joint and Survivor Annuity described in Section 6.05(a)(2), a 75% Joint and Survivor Annuity described in Section 6.06(a)(1), or a 100% Joint and Survivor Annuity described in Section 6.07, such Joint and Survivor Annuity shall cease to be effective as of the date of the spouse's death with respect to the portion of the Participant's Joint and Survivor Annuity attributable to Contribution Hours before January 1, 2014, and after the date of the spouse's death, the monthly amount of the Participant's pension attributable to Contribution Hours before January 1, 2014 shall increase to the monthly amount that would have been payable had the Participant and his spouse rejected a Joint and Survivor Annuity option at the time of retirement without electing any optional form of pension, if, and only if, the following conditions are satisfied:

(1)     The Participant's Home Local Schedule was, as of December 31, 2013, the First Alternative or Second Alternative Schedule (or would have been if the Participant's Contribution Date had been during the Plan's Rehabilitation Period);

(2)     The Participant was not subject to the NIC benefit adjustments under the Rehabilitation Plan (or would have been if the Participant's Contribution Date had been during the Rehabilitation Period);

(3)     The Participant did not have 3,500 or more Hours of Work in Covered Employment under the Default Schedule during a five (5) consecutive Calendar Year period preceding January 1, 2014; and

(4)     The Participant had not become a "Person for Whom" under the Rehabilitation Plan when the Plan was in Critical Status.

In all other cases, the monthly amount shall remain unchanged following the spouse's death. No reversion feature applies to Disability Benefits.

(c)     Applicability of Reversion (Pop-Up) Feature to Pension Benefits Earned on or after January 1, 2014

In the event a spouse predeceases a Participant who retires with an Effective Date of Pension on or after February 1, 2014 under a 50% Joint and Survivor Annuity described in Section 6.05(a)(2), a 75% Joint and Survivor Annuity described in Section 6.06(a)(1), or a 100% Joint and Survivor Annuity described in Section 6.07(a), such Joint and Survivor Annuity shall cease to be effective as of the date of the spouse's death with respect to the portion of the Participant's Joint and Survivor Annuity attributable to Contribution Hours on or after January 1, 2014, and, after the date of the spouse's death, the monthly amount of the Participant's pension attributable to Contribution Hours on or after January 1, 2014 shall increase to the monthly amount that would have been payable had the Participant and his spouse rejected a Joint and Survivor Annuity option at the time of retirement without electing any optional form of pension, if, and only if, those Contribution Hours were under a classification of employment, which was covered under a Collective Bargaining Agreement (or similar agreement) that reflected the required Contribution Rate increases

specified either in Section 5.04(c)(2)(C) or Section 5.04(c)(2)(D). The monthly amount attributable to any Contribution Hours on or after January 1, 2014 under a classification of employment, which was covered under a Collective Bargaining Agreement (or similar agreement) that did not reflect (or that ceased to reflect) the required Contribution Rate increases specified in either Section 5.04(c)(2)(C) or Section 5.04(c)(2)(D) shall remain unchanged following the spouse's death. The reversion (pop-up) feature may apply to some portions of a Joint and Survivor Annuity and not to others. No reversion feature applies to Disability Benefits.

**Section 6.12      120 Certain Payments Option**

When the Plan was in Critical Status, the 120 Certain Payments Option was eliminated pursuant to the Plan's Rehabilitation Plan for Participants whose benefit commencement dates are on or after March 1, 2008. This adjustment was and remains permanent. The 120 Certain Payment Option continues to be inapplicable after the Plan's emergence from Critical Status, and will not apply to any benefits accrued on or after January 1, 2014 or to any benefits accrued before such date unless the payment of those benefits commenced before the adjustment was made pursuant to the Rehabilitation Plan. Section 6.09 of Appendix A reflects the 120 Certain Payments Option provision that was in effect before January 1, 2014, and includes the terms of the 120 Certain Payments Option before it was eliminated pursuant to the Plan's Rehabilitation Plan.

**Section 6.13      Level Income Option**

When the Plan was in Critical Status, the Level Income Option was eliminated pursuant to the Plan's Rehabilitation Plan for Participants whose benefit commencement dates are on or after March 1, 2008. This adjustment was and remains permanent. The Level Income Option continues to be inapplicable after the Plan's emergence from Critical Status, and will not apply to any benefits accrued on or after January 1, 2014, nor to any benefits accrued before such date unless the payment of those benefits commenced before March 1, 2008. Section 6.10 of Appendix A reflects the Level Income Option provision that was in effect before January 1, 2014, and includes the terms of the Level Income Option before it was eliminated pursuant to the Plan's Rehabilitation Plan.

### ARTICLE 7   DEATH BENEFITS

**Section 7.01      Death Benefit Before Retirement**

(a)    General Rule

(1)    Except as provided in subsections 7.01(b) and (c), if a Participant dies before January 1, 2008 and satisfied (A) or (B) below at the time of his death, a Death Benefit shall be paid to the Participant's Beneficiary in an amount equal to 50% of all contributions required to be made to the Fund on the Participant's behalf; provided that in the case of a Participant who participated under a plan that was merged into the Plan, if it is not administratively feasible to compute such benefit, a Death Benefit shall be paid to his Beneficiary in accordance with the terms of the

73

Plan Document in effect on December 31, 1999.  In the event that the Participant is survived by his spouse, the surviving spouse may elect a Death Benefit as provided in Section 6.03 notwithstanding the designation of any other person as a recipient of a Death Benefit under this section 7.01.  The Death Benefit provided by this section is not payable if a Joint and Survivor Annuity is payable.

    (A)    The Participant dies before he becomes a Pensioner, and after he has earned at least 60 months of Future Service Credit, which have not been lost as a result of a Permanent Break-in-Service; or

    (B)    The Participant:

        (i)    dies on or after January 1, 2000, before becoming a Pensioner, and

        (ii)    dies before earning at least 60 months of Future Service Credit, and

        (iii)    had at least 435 Hours of Work in Covered Employment within the 24-month period preceding his death.

    (C)    Application for the benefit under section (a)(1) is submitted to the Fund Office on or before December 31, 2008.

If the Participant's primary and successor Beneficiary or Beneficiaries die prior to the death of the Participant, or if no Beneficiary is designated, then any death benefit otherwise payable under this Section shall be paid in the following order:  (i) to the Participant's spouse; (ii) if no spouse survives the Participant, to his children; (iii) if no children survive the Participant, to his parents; (iv) if no parents survive the Participant, to his brothers and/or sisters in equal shares.  If none of the persons enumerated in the foregoing listing of heirs survive the Participant, then the death benefit will be paid to the Participant's estate.

(2)    Except as provided in subsections 7.01(b)(1) through (3) and (c) below, if a Participant dies after December 31, 2007, and satisfied (A), (B), (C), and (D) below at the time of his death, a death benefit in the amount of $5,000 will be paid: (i) to his surviving child or children (in equal shares); (ii) if he has no surviving children, to his surviving parent or parents (in equal shares); or (iii) if he has no surviving parents, to his sibling or siblings (in equal shares).

    (A)    At the time of his death, the Participant obtained Vested Status, was not a Pensioner, and was not married;

    (B)    No portion of the Participant's Accrued Benefit is payable to an alternate payee pursuant to a "qualified domestic relations order," as defined in Section 206(d)(3) of ERISA;

    (C)    The Participant had at least 435 Hours of Work in Covered Employment within the 24 months preceding his death;

      (D)    The Participant is survived by one or more children, one or more parents, or one or more siblings.

(b)    Loss of Entitlement to Death Benefit Before Retirement

    (1)    If a Participant or Employee, or a former Participant or Employee, at any time performs at least one (1) hour of employment in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the Employer, no Death Benefit shall thereafter be payable under Section 7.01(a).

    (2)    If a Participant who has lost his entitlement to a Death Benefit pursuant to the preceding paragraph terminates his non-covered employment and then returns to Covered Employment and earns a number of months of Pension Credit, his entitlement to a Death Benefit shall be calculated on a pro rata basis determined by dividing the number of months of Pension Credit subsequently earned by the number of months during which the individual previously worked at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer.  Such percentage shall not be greater than 100%.  Notwithstanding the foregoing, effective January 1, 2003, an Employee or Participant who returns to Covered Employment after working in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer shall have his ineligibility waived provided he (1) terminates the non-covered employment, (2) returns to Covered Employment between January 1, 2002 and December 31, 2004, and (3) thereafter earns at least twelve (12) months of Future Service Credit.

    (3)    A Participant or Employee's right to reinstatement of his entitlement to a death benefit pursuant to the preceding paragraph shall be limited to his first return to Covered Employment after being employed for at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer.  If the Participant or Employee then leaves Covered Employment again and is again employed for at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer, a subsequent return to Covered Employment shall not qualify for the remedial provisions set forth in the preceding paragraph.

    (4)    If all or a portion of Participant's Accrued Benefit is payable to one or more alternate payees pursuant to a "qualified domestic relations order," as defined by Section 206(d)(3) of ERISA, the death benefit that would otherwise be payable under Section 7.01(a) shall be reduced by the Actuarial Equivalent present value of the portion of the Participant's Accrued Benefit payable to the alternate payee, determined as of the date of the Participant's death.

(c)    The amount and payment of the Death Benefit is subject to the provisions of Sections 8.05(a)(5) and 16.07.

**Section 7.02    Death Benefit after Retirement - 60 Certain Payments**

The following provision reflects the terms of the 60 Certain Payment feature for Effective Dates of Pension before March 1, 2008. If a Pensioner who had an Effective Date of Pension before March 1, 2008, is receiving a Normal Retirement Pension, a Standard Early Retirement Pension, a Special Early Retirement Pension or, effective August 1, 2001, a 55/30 Pension, on the basis of having at least 15 years of Pension Credit dies on or after his Effective Date of Pension, and before he has received 60 monthly pension payments, his monthly pension shall continue to be paid to his designated Beneficiary or Beneficiaries, if any, until 60 such payments have been made, including the payments to both the Pensioner and his Beneficiary or Beneficiaries. If no Beneficiary has been named, or if the last named Beneficiary has predeceased the Pensioner or dies before 60 payments have been made, any remaining payments shall be made to the executor or administrator of the Pensioner's estate as an actuarially equivalent lump sum. This provision for 60 Certain Payments shall not apply to a Pensioner who retired on a Normal Retirement Pension on the basis of the eligibility criteria of Section 5.02(b)(1)(B) of Appendix A, a Standard Early Retirement Pension on the basis of the eligibility criteria of Section 5.06(a)(2), Disability Benefits, or to a Pensioner who had elected the Level Income Option provided in Section 6.13, the 100% Joint and Survivor Annuity Option provided in Section 6.07, or the 75% Joint and Survivor Annuity Option provided in Section 6.06. If benefits continue to a surviving spouse under the 50% Joint and Survivor Annuity, the 60 Certain Payments shall apply as provided under Section 6.10.

## Section 7.03    Death Benefit after Retirement - Lump Sum Death Benefit

If a Participant with less than 15 Years of Pension Credit who is receiving a Pension other than a Disability Benefit, and who did not elect a 50% Joint and Survivor Annuity, 120 Certain Payments Option, Level Income Option, 75% Joint and Survivor Annuity, or 100% Joint and Survivor Annuity, as applicable, dies before receiving payments equal to the amount of the Death Benefit which would have been payable if he had died prior to retirement, the difference shall be paid to the Pensioner's Beneficiary.

## Section 7.04    Designation of Beneficiary

Subject to provisions in Article 6, a Participant who died before January 1, 2008 may have designated an individual, a personal trust or estate as his primary Beneficiary for the Death Benefit, if any, payable in accordance with Section 7.01, and a Pensioner receiving a Normal Retirement Pension or an Early Retirement Pension may designate an individual, personal trust or estate as his primary Beneficiary for the monthly pension payments or amount of payments, if any, payable in accordance with Section 6.10, 6.12 or 7.02, as applicable. Subject to Article 6, the Participant or Pensioner, as the case may be, may also designate an individual, personal trust or estate as his successor Beneficiary to receive such corresponding benefits in the event that the primary Beneficiary dies before receipt of the full number or amount of payments guaranteed under the 60-Month Certain feature or the 120 Certain Payments Option, as applicable, and may change these designations from time to time. All designations of Beneficiaries shall be subject to the requirements of Article 6 and shall be made in the form and manner required by the Trustees, who shall be the sole judge of the validity thereof.

## Section 7.05    Death Benefits Under USERRA

For purposes of determining survivor benefits, a Participant who dies while performing qualified military service (as defined in Section 414(u)(5) of the Code) on or after January 1, 2007, notwithstanding any provisions of this Plan Document to the contrary, will be credited with Years of Service for purposes of vesting and eligibility for benefits, but not for purposes of accruals, for the period of that military service as if the Participant resumed and then terminated Covered Employment on the date of his or her death.

## ARTICLE 8   APPLICATIONS, BENEFIT PAYMENTS, AND RETIREMENT

### Section 8.01     Applications

An application for benefits must be made in writing in the form, manner and time prescribed by the Trustees, and must be filed with the Fund in advance of the first month for which benefits are payable. A Participant's application for benefits will be deemed null and void, and will be treated as if it has not been filed with the Fund for purposes of the preceding sentence, if the Fund has not received:

(i)     a fully completed election form setting forth the optional form of benefit selected by the Participant (along with any other forms required for such optional form of benefit, including but not limited to any required spousal consent) within 90 days after the Fund has provided the notice described in Section 6.02(b) (written explanation of benefit options) to the Participant; or

(ii)    any other information or documentation within 90 days after the Fund requested such information or documentation

Any benefit application that is deemed null and void under this Section 8.01 must be resubmitted to the Fund in the form, manner and time prescribed by the Trustees, and will be treated as a new application for benefits, including for purposes of determining the first month for which benefits are payable.

If the Trustees determine that a Participant was unable to complete the application process within the time prescribed in (i) or (ii) above, the Trustees may, in their sole and absolute discretion, extend such 90-day period, but only if and to the extent, such extension is permitted under the Internal Revenue Code and the regulation thereunder.

### Section 8.02     Information Required

Each Participant, Pensioner and Beneficiary shall furnish the Fund Office with any information or proof requested by it and reasonably required to administer the Plan. If a Participant or Pensioner or other claimant to benefits makes a materially inaccurate statement related to his claim for benefits, or furnishes materially inaccurate or incomplete information or proof relative to eligibility or continued eligibility for benefits, then benefits may be denied, suspended, or discontinued to the extent permitted by law. The Trustees shall have the right to recover any benefit payments made in reliance on any materially inaccurate or incomplete statement, information or proof submitted by a Participant, Pensioner or Beneficiary.

**Section 8.03     Action of Trustees**

(a)     The Trustees shall have the sole and absolute power, authority and discretion to determine:

    (1)     the standard of proof required in any case;

    (2)     the application and interpretation of the Plan Document;

    (3)     entitlement to or amount of a pension;

    (4)     the disability, the timing, extent and or duration of the disability, or non-disability of Participants and the effect these determinations have on the Participant's eligibility for Disability Benefits under the Plan;

    (5)     the crediting of Future or Past Service Credit and/or Contribution Hours; and

    (6)     the crediting of Hours of Work and Years of Service.

(b)     The decisions of the Trustees or any delegate of the Trustees with respect to any of the foregoing shall be final and binding.  Wherever in the Plan Document the Trustees are given discretionary powers, the Trustees shall exercise such powers in a uniform and non-discriminatory manner.  In addition, whenever the Trustees have delegated their power or authority to a committee or person, the delegate shall have the same power and authority as the Trustees to the extent of the Trustees' delegation to such committee or person.

**Section 8.04     Right of Appeal**

A Participant or Beneficiary whose application for benefits under the Plan has been denied, in whole or in part, is to be provided with adequate notice in writing setting forth the specific reasons for such denial, and shall have the right to appeal the decision by filing a written request with the Trustees within 180 days after receipt of such notice.  The appeal shall be considered by the Trustees or by a person or committee designated by the Trustees.  The decision shall be final and binding and shall be communicated to the claimant.  No action at law or equity may be commenced against the Plan or Trustees (or any committee or person designated by the Trustees) with respect to a claim for benefits unless the claimant exhausts the Plan's appeal process.  An action at law or equity against the Plan or Trustees (or any committee or person designated by the Trustees) with respect to a claim for benefits must be filed before the earlier of: (1) the 91st day after the claim is denied, or is deemed to be denied, by the Trustees or the person or committee designated by the Trustees; or (2) the expiration of any other applicable limitations period.

**Section 8.05     Benefit Payments Generally**

(a)     (1)     A Participant who is eligible to receive benefits from the Plan and who makes application in accordance with the rules of the Plan Document, shall be entitled upon retirement to receive the benefits provided for under the provisions of the Plan

Document. Benefit payments shall be payable commencing with the first day of the month following the month in which the Participant has fulfilled all of the conditions for entitlement to benefits, including the filing of an application in accordance with the requirements of Section 8.01; such first day of such month is what is meant by the "Effective Date of Pension" whenever such term is used in the Plan Document (as the context so requires, the "Effective Date of Pension" also shall apply to the commencement of Disability Benefits). If a Participant duly elects an Effective Date of Pension, which precedes the date notice is provided under Section 6.02(b), the Participant shall receive a payment of benefits retroactive to Effective Date of Pension in the form of a lump sum, with simple interest at rate determined by the Board of Trustees. Monthly payments made subsequent to the lump sum payment shall be in the amount that would have been paid to the Participant had payments actually commenced on the Participant's Effective Date of Pension. A Participant will not be deemed to have satisfied the conditions for entitlement to benefits if he has failed to complete and return all necessary forms to the Plan within the time prescribed by the Trustees. Further, no payment of benefits may commence if the notice under Section 6.02(b) was provided more than 90 days before such date, unless the delay is due solely to an administrative delay (or for such other reasons as the Internal Revenue Service may establish from time-to-time). For purposes of this Section 8.05, a Participant's age on the first day of a month is considered to be the same as his age on the 15th day of that month.

(2)  Unless the Participant elects otherwise, the payment of benefits will begin not later than the 60th day after the later of the close of the Calendar Year in which:

(A)  the Participant attains Normal Retirement Age, or

(B)  the Participant terminates all employment with an Employer.

Subject to Section 8.12, below, a Participant may elect in writing filed with the Trustees to receive his pension beginning at a later date, and a Participant's failure to file an application to commence benefits shall be deemed an election to postpone payments to a date no later than the date determined under Section 8.12.

(3)  For Effective Dates of Pension that are on or after June 1, 2003, subject to Section 8.06 below, a Participant who retires within the meaning of Section 5.01 after his attainment of Normal Retirement Age shall have his benefit actuarially adjusted in accordance with this Section 8.05(a)(3) upon the commencement of payment of his benefits. The actuarial adjustment shall be 1% for each month after the later of the date specified in Section 8.05(a)(2) above or the month he retires until the month in which the Participant reaches age 70, and 1½% for each month thereafter.

(4)  Except as otherwise provided in the Plan Document, pension payments to the Pensioner shall end with the payment for the calendar month in which the death of the Pensioner occurs.

(5)  Notwithstanding any other provision of the Plan Document, the Trustees may, in their sole discretion, recoup, by offset, actuarial adjustment or other reasonable arrangement, any amounts that are paid from the Plan to a Participant, Pensioner or

Beneficiary, in excess of the correct amount due, as permitted by Treas. Reg. §1.401(a)-13(c)(2)(iii).

(b)    Lump-Sum Distribution

    (1)    <u>Automatic Cash-Out</u>. Effective March 1, 2005, and notwithstanding any provision to the contrary, if, at the time a monthly benefit becomes payable to a Participant or Beneficiary, the Actuarial Equivalent of such Participant's or Beneficiary's pension benefit under the Plan does not exceed $1,000, the benefit will be paid in the form of a single lump-sum in an amount equal to the Actuarial Equivalent present value of the benefit under the Plan. Such payment shall be in lieu of the monthly benefit otherwise payable under the Plan.

    (2)    <u>Optional Cash-Out</u>. (i) Effective March 1, 2005, if, at the time a monthly benefit becomes payable to a Participant or Beneficiary, the Actuarial Equivalent of such Participant's or Beneficiary's pension benefit under the Plan exceeds $1,000 but does not exceed $10,000, the Participant or Beneficiary may elect to have the benefit paid to the Participant or Beneficiary in the form of a single lump-sum in an amount equal to the Actuarial Equivalent present value of the benefit under the Plan, subject to the restrictions imposed upon plans in endangered or critical status (as such terms are defined in ERISA and the Code). Such payment shall be in lieu of the monthly benefit otherwise payable under the Plan.

    (ii) Effective March 1, 2008, except as otherwise provided in the Rehabilitation Plan and Schedules, the Plan will not pay any optional lump sum benefit (cash outs) to Participants (or the Beneficiaries of Participants) who retire on or after that date, due to the certification of the Plan's critical status for the 2008 Plan Year (initial critical year).

**Section 8.06    Suspension of Benefits**

A Participant receiving an Industry-Related Disability Benefit who is under age 55, and a Participant receiving a Full-Disability Benefit who is under Normal Retirement Age, will be subject to the continued eligibility and termination provisions of Article 16 before application of the provisions found in this Section 8.06. In all other respects, the provisions of this Section 8.06 will apply to a Participant receiving monthly Disability Benefits in the same manner as any other Pensioner who is receiving monthly benefits from the Plan.

(a)    Before Normal Retirement Age in General

    (1)    Except as provided in Section 8.06(b), a Pensioner who entered Disqualifying Employment before July 1, 2003 shall have his monthly benefit suspended for each month prior to Normal Retirement Age in which the Pensioner is employed in Disqualifying Employment and for an additional three (3) months after the Pensioner ceases working in Disqualifying Employment.

    Except as provided in Section 8.06(b), a Pensioner who enters Disqualifying Employment on or after July 1, 2003 shall have his monthly benefit suspended for

the greater of (a) the number of months prior to Normal Retirement Age in which the Pensioner is employed in Disqualifying Employment, or (b) three (3) months.

(2)     If the Pensioner has either (1) failed to notify the Fund Office within twenty-one (21) days of returning to employment that may be Disqualifying Employment in accordance with the notification requirements of subsection (e), or (2) willfully misrepresented to the Fund Office with respect to Disqualifying Employment, the monthly benefit shall be suspended for an additional period of three (3) months. This three (3) month suspension rule shall not apply to Pensioners who enter Disqualifying Employment on or after July 1, 2003.

(3)     In addition to any period of suspension provided in Section 8.06(a)(1), the monthly benefit shall be suspended for six (6) consecutive months for every calendar quarter in which the Pensioner was engaged in Disqualifying Employment of the type described in Section 8.06(d)(1)(E).

(4)     Notwithstanding the foregoing, the provisions of this subsection (a) shall not result in the suspension of the benefit for any month after the Pensioner has attained Normal Retirement Age.

(b)     Before Normal Retirement Age for Certain Types of Disqualifying Employment

(1)     Effective August 1, 1999, if a Pensioner who has attained age 62 works in Disqualifying Employment before he attains Normal Retirement Age and such work is either (i) covered by a Collective Bargaining Agreement between the Union and the Pensioner's Employer, or (ii) performed for a Related Organization or a joint apprenticeship training committee that is affiliated with the Union, his monthly benefit will be suspended under Section 8.06(a) only for any month in which he performs, or is paid for, more than 40 hours of such work.

(2)     Effective January 1, 2001, if a Pensioner who has not yet attained age 62 works in Disqualifying Employment and such work is performed for a joint apprenticeship training committee that is affiliated with the Union, his monthly benefit will be suspended under Section 8.06(a) only for any month in which he performs, or is paid for, more than 40 hours of such work.

(3)     Effective September 1, 2001, if a Pensioner who has not yet attained Normal Retirement Age works in Disqualifying Employment and such work is performed for the SMWIA, his monthly benefit will be suspended under Section 8.06(a) only for any month in which he performs, or is paid for, more than 40 hours of such work.

(4)     Effective August 1, 2003, if a Pensioner who has not yet attained Normal Retirement Age works in Disqualifying Employment and such work is performed for the Pension Fund, his monthly benefit will be suspended under Section 8.06(a) only for any month in which he performs, or is paid for, more than 40 hours.

(5)     Effective January 1, 2001, if a Pensioner who has not yet attained Normal Retirement Age works in Disqualifying Employment and such work is performed as

81

a picketer for the Union or as worker for the Union on elections for officials within the Union, his monthly benefit will be suspended under Section 8.06(a) only for any month in which he performs more than 40 hours of such work.

(6) Notwithstanding the foregoing, the rules described in paragraphs (1), (2), and (3) above shall not apply to any Pensioner whose benefit has already been suspended pursuant to Section 8.06(a)(3), unless his benefit has resumed in accordance with Section 8.06(g)(3), and the suspension rules under Section 8.06(a) shall continue to apply to work performed by the Pensioner in Disqualifying Employment that is not described in (1), (2) or (3) above, until such time as the Pensioner attains Normal Retirement Age.

(7) Effective January 1, 2011, if a Pensioner performs work described in 1.35 (d), such work will not be treated as work in Disqualifying Employment if it is performed on or after January 1, 2011 but before January 1, 2013.

(8) Effective September 1, 2011, if a Pensioner performs work described in Section 1.35 (e), such work will not be treated as work in Disqualifying Employment if it is performed on or after September 1, 2011 but before January 1, 2021.

(c) After Normal Retirement Age

Effective March 1, 2000, if a Pensioner has attained Normal Retirement Age, his monthly benefit shall be suspended for any month in which he worked or was paid for more than 40 hours in Disqualifying Employment as defined below.

Before March 1, 2000, if a Pensioner has attained Normal Retirement Age, his monthly benefit shall be suspended for any month in which he worked or was paid for 40 hours or more in Disqualifying Employment as defined below.

(d) Definition of Disqualifying Employment

(1) When used in Section 8.06(a) and 8.06(b), the term "Disqualifying Employment" means:

(A) employment with any Contributing Employer;

(B) employment with any employer in the same or related business as any Contributing Employer;

(C) self-employment in the same or related business as a Contributing Employer;

(D) employment or self-employment in any business which is under the jurisdiction of the Union; or

(E) employment in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer.

(2)    When used in Section 8.06(c), the term "Disqualifying Employment" means employment or self-employment that is (A) in an industry covered by the Plan when the Participant's pension payments began, (B) in the geographic area covered by the Plan when the Participant's pension began, and (C) in any trade or craft in which the Participant worked at any time under the Plan.

(3)    When used elsewhere in this Section 8.06, the term "Disqualifying Employment" shall have the meaning given such term in paragraph (1) or (2) above, as the context so requires.

(4)    Effective June 1, 2012, the term "Disqualifying Employment" shall not include work performed before January 1, 2021 for an organization that is exempt from federal income taxation under Section 501(c)(3) of the Code if the Participant receives no compensation for such work (other than the payment or reimbursement of reasonable expenses incurred as a result of performing such work); provided, however, that the Participant supplies such documentation or other information as the Trustees deem necessary to substantiate (i) that the Participant did not receive any compensation for such work (other than the payment or reimbursement of reasonable expenses that were incurred as a result of performing such work), and (ii) the organization's tax-exempt status.

(e)    Notices

(1)    Upon commencement of pension payments, the Trustees shall notify the Pensioner of the Plan Document rules governing suspension of benefits, including identity of the industries and area covered by the Plan.  If benefits have been suspended and payment resumed, new notification shall, upon resumption, be given to the Participant, if there has been any material change in the suspension rules or the identity of the industries or area covered by the Plan.

(2)    A Pensioner shall notify the Fund Office in writing within 21 days after starting any work of a type that is or may be Disqualifying Employment under the provisions of the Plan Document and without regard to the number of hours of such work.  If a Pensioner has worked in Disqualifying Employment in any month and has failed to give timely notice to the Fund Office of such employment, the Trustees shall presume that he worked for more than 40 hours in such month and any subsequent month before the Participant gives notice that he has ceased Disqualifying Employment.  The Participant shall have the right to overcome such presumption by establishing to the satisfaction of the Trustees that his work was not in fact an appropriate basis, under the Plan Document, for suspension of benefits.

If a Pensioner has worked in Disqualifying Employment for any number of hours for a contractor at a building or construction site and he has failed to give timely notice to the Fund Office of such employment, the Trustees shall presume that he has engaged in such work for as long as the contractor has been and remains actively engaged at that site.  The Participant shall have the right to overcome such presumption by establishing to the satisfaction of the Trustees that his work was not in fact an appropriate basis, under the Plan Document, for suspension of benefits.

(3)    A Pensioner whose pension has been suspended shall notify the Fund Office when Disqualifying Employment has ended.

(4)    A Participant may ask the Fund Office whether a particular employment will be disqualifying.  The Fund Office shall provide the Participant with its determination in a timely manner.

(5)    The Plan shall inform a Participant of any suspension of his benefits by notice given by personal delivery or first-class mail during the first calendar month in which his benefits are withheld.  Such notice shall include a description of the specific reasons for the suspension, copy of the relevant provisions of the Plan Document, reference to the applicable regulation of the U.S. Department of Labor, and a statement of the procedure for securing a review of the suspension.  In addition, the notice shall describe the procedure for the Participant to notify the Plan when his Disqualifying Employment ends.

(f)    Review
A Participant shall be entitled to a review of a determination suspending his benefits by written request filed with the Trustees within 180 days of the notice of suspension.

(g)    Resumption of Benefit Payments

(1)    Benefits will resume beginning with the first month after the last month for which benefits were suspended, with payments beginning no later than the third month after the last calendar month for which the Pensioner's benefit was suspended, provided the Participant has complied with the notification requirements of paragraph (e)(2) and (3) above.  Notwithstanding the foregoing, effective January 1, 2003, an Employee or Participant who returns to Covered Employment after working in Disqualifying Employment shall not have his benefits suspended pursuant to Section 8.06(a)(2) or 8.06(a)(3) provided he (1) terminates any Disqualifying Employment under Section 8.06(d)(1)(B)-(E); (2) returns to Covered Employment between January 1, 2002 and December 31, 2004; and (3) thereafter earns at least twelve (12) months of Future Service Credit.

(2)    Overpayments attributable to payments made for any month or months for which the Participant had worked in Disqualifying Employment shall be deducted from pension payments otherwise paid or payable subsequent to the period of suspension.  A deduction from a monthly benefit for a month in which the Participant had worked in Disqualifying Employment (within the meaning of Section 8.06(d)(2)) after he attained Normal Retirement Age shall not exceed 25 percent of the pension amount (before deduction), except for the first pension payment made upon resumption after a suspension.  The foregoing 25 percent limitation shall not apply to deductions for overpayments attributable to payments made for any month or months for which the Participant had worked in Disqualifying Employment (within the meaning of Section 8.06(d)(1)) before he attained Normal Retirement Age; provided, that the deduction does not affect the Participant's entitlement to the actuarial equivalent of his Normal Retirement Benefit after attainment of Normal Retirement Age (taking into account the payments made before his attainment of Normal Retirement Age).  If a Pensioner dies before recoupment of overpayments

84

has been completed, deductions shall be made from the benefits payable to his Beneficiary, subject to the 25 percent limitation on the rate of deduction with respect to work in Disqualifying Employment (as defined in 8.06(d)(2)) after the Participant attained Normal Retirement Age.

(3)     In the event that a monthly benefit is suspended pursuant to Section 8.06(a)(3), the six-month suspension periods provided for therein shall be waived if the Pensioner returns to Covered Employment and earns a number of months of Pension Credit, equal to the number of months during which he was formerly engaged for at least one (1) hour in Disqualifying Employment of the type described in Section 8.06(d)(1)(E). If such equal time is not achieved, the suspension shall be decreased on a pro rata basis determined by dividing the number of months of Pension Credit subsequently worked in Covered Employment by the number of months during which the individual previously worked at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer. Such percentage shall not be greater than 100%.

A Participant or Employee's right to waiver of the suspension periods provided for in the preceding paragraph shall be limited to his first return to Covered Employment after being employed for at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and the employer. If the Participant or Employee then leaves Covered Employment again and is again employed at least one (1) hour in the Sheet Metal Industry in a position not covered by a collective bargaining agreement between the Union and an employer, a subsequent return to Covered Employment shall not qualify for the remedial provisions set forth in the preceding paragraph

(h)     Amount of Benefit on Resumption of Payment

The monthly amount of pension when resumed after suspension shall be redetermined in accordance with paragraphs (1) through (5) if applicable.

(1)     Except as provided in paragraph (3) or (5) below, upon resumption of benefits after a suspension of benefits before Normal Retirement Age, the monthly amount of the original benefit shall be recomputed based on the Pensioner's age at the time benefits are resumed reduced by the number of months for which he had previously received benefits.

(2)     A Pensioner who returns to Covered Employment shall be entitled to have his original benefit, as adjusted in accordance with paragraph (1) above, increased by the amount of benefit that he accrued during his period of reemployment; provided, however, that in the event that the Pensioner incurs a One-Year Break in Service prior to his return to Covered Employment, no benefit shall accrue until the Pensioner has completed a Year of Service following his return to Covered Employment. As soon as practicable following each January 1, the Pensioner's benefit shall be redetermined, taking into account his additional Contribution Hours earned since the later of the preceding January 1 or his Effective Date of Pension, and such redetermined amount shall be payable each month of the ensuing year, retroactive to January 1 of such year. If a Pensioner works or is paid for

85

Disqualifying Employment, as defined in Section 8.06(d), during a year, then the additional benefit described in the preceding sentence shall be reduced (but not below zero) by the Actuarial Equivalent of the total distributions made to the Pensioner by the close of the Plan Year. If the Pensioner has not attained Normal Retirement Age, the additional benefit shall be reduced in accordance with Section 5.05(b), 5.06(c), or 5.07(b) to reflect his actual age when benefits are resumed.

(3)    A Pensioner who returns to Covered Employment and earns at least 5 years of Future Service Credit shall be entitled to a complete recomputation of his benefit amount in accordance with Section 5.15 as though he had not previously received any benefits.

(4)    A Joint and Survivor Annuity in effect immediately prior to suspension of benefits shall remain effective if the Pensioner's death occurs while his benefits are in suspension. Notwithstanding the foregoing, if a Pensioner has returned to Covered Employment and his Effective Date of Pension was before Normal Retirement Age, and if the Pensioner's death occurs while his benefits are in suspension, and if the Pensioner is not married to the same spouse on his date of death as he was on his Effective Date of Pension, then the additional benefits that the Pensioner accrued following his return to Covered Employment shall be paid pursuant to the terms of Section 6.03 if the Pensioner was married as of the date of his death, or pursuant to the terms of Section 7.01 if the Pensioner was not married as of the date of his death. Any additional benefits that are payable as described in the preceding sentence shall not be taken into account in determining the benefit payable under the 60-Month Certain feature or the 120 Certain Payments Option, as applicable. If a Pensioner has returned to Covered Employment, and his Effective Date of Pension was on or after Normal Retirement Age, he shall not be entitled to a new election as to the form of his pension payments under Article 6 when his benefits are resumed unless he is entitled to a complete recomputation of his benefits in accordance with Section 5.15. If a Pensioner has returned to Covered Employment and his Effective Date of Pension was before Normal Retirement Age, he shall be entitled to a new election as to the Joint and Survivor Annuity (or, in the case of an unmarried Participant, as to the Lifetime Pension), but only with respect to such additional benefits the Pensioner accrued following his return to Covered Employment, unless he is entitled to a complete recomputation of his benefit in accordance with Section 5.15, in which case he shall be entitled to a new election as to the form of his pension payments under Article 6.

(5)    Subject to paragraph (3) above, a Pensioner who had elected a Level Income Option prior to suspension of benefits who recommences benefits before the date his pension amount would have decreased under the original level Income Option election, shall have his original benefit recomputed, after offset of the Actuarial Equivalent of the benefits received before suspension, under a Level Income Option based on his age at the time benefits recommence and the original estimated Social Security Amount.

If the Pensioner recommences benefits after the date his pension amount would have decreased under the original Level Income Option election, then his original benefit is recomputed based on the Normal Retirement Benefit accrued at his Effective Date

of Pension, adjusted to reflect any early retirement reduction based on his age when benefits recommence, and offset by the Actuarial Equivalent of the benefits received before suspension. Any reduction for a Joint and Survivor Annuity originally elected shall be applied to the recomputed benefit.

**Section 8.07    Vested Status (Nonforfeitability)**

(a)    ERISA and the Code require that Participants acquire a nonforfeitable interest in their Accrued Benefit and Normal Retirement Benefit in accordance with certain prescribed standards.

(b)    "Vested Status" is attained when a Participant acquires a nonforfeitable right to his Normal Retirement Benefit or a nonforfeitable right to 100 percent of his Accrued Benefit in accordance with subsection (c) below.

(c)    A Participant shall attain Vested Status as follows:

    (1)    Notwithstanding subsection (c)(2) or (c)(3) below, a Participant's right to his Normal Retirement Benefit shall become nonforfeitable upon attainment of Normal Retirement Age.

    (2)    If a Participant has one or more Hours of Work in Covered Employment or Continuous Non-Covered Employment on or after January 1, 1997, he shall acquire a non-forfeitable right to 100 percent (100%) of his Accrued Benefit upon completion of five (5) Years of Service.

    (3)    Effective for Plan Years beginning on or after January 1, 1989, except as provided in subsection (c)(2) above:

        (A)    If a Participant's participation in the Plan is covered by a Collective Bargaining Agreement, he shall acquire a non-forfeitable right to 100 percent (100%) of his Accrued Benefit upon completion of ten (10) Years of Service.

        (B)    If a Participant's participation in the Plan is not covered by a Collective Bargaining Agreement, he shall acquire a non-forfeitable right to 100 percent (100%) of his Accrued Benefit upon completion of five (5) Years of Service; provided, that such Participant has one or more Hours of Work in Covered Employment or Continuous Non-Covered Employment on or after January 1, 1989.

    (4)    Effective September 1, 1999, each employee of Baker-Smith Sheet Metal, Inc. ("Baker-Smith"), who was covered under the terms of the Sheet Metal Workers' National Pension Fund's Standard Form of Participation Agreement for Employers that have Agreed to Contribute on Behalf of their Non-Bargaining Unit Employees, dated March 21, 1990 and effective March 1, 1990, between the Sheet Metal Workers' National Pension Fund and Baker-Smith (the "Special Class Participation Agreement"), shall have a nonforfeitable right to that portion of his or her Accrued Benefit which is based on Pension Credit earned through September 1, 1999, as a

result of service that was covered under the Special Class Participation Agreement; provided, that such Employee was a Participant as of September 1, 1999 and was not covered by Baker-Smith's Owner-Member Registration Statement as in effect prior to January 1, 2002.

    (5)    The preceding provisions are the sole rules for attaining Vested Status, and a Participant who has not attained Vested Status in accordance with the preceding provisions shall not attain Vested Status by satisfying the eligibility rules for a Standard Early Retirement Pension or Disability Benefits.

(d)    All of a Participant's Years of Service with one or more Contributing Employers shall be counted in determining the Employee's Vested Status under this Section 8.07 except:

    (1)    Years of Service during a period for which a Contributing Employer did not maintain this Plan or a predecessor plan; and

    (2)    Years of Service which are disregarded under Section 4.13 (relating to Breaks in Service).

(e)    ERISA and the Code provide certain limitations on any Plan Document amendment that may change the Plan's vesting schedule. In accordance with these limitations, if the Plan's vesting schedule is amended or the Plan Document is amended in such a way that directly or indirectly affects the computation of a Participant's nonforfeitable percentage in his Accrued Benefit, or if the Plan Document is deemed amended by an automatic change to or from the Minimum Vesting Schedule in Section 13.05 (relating to a "Top Heavy Plan"), each Participant with at least three (3) Years of Service may elect within a reasonable period after adoption of the amendment, deemed amendment or change, to have his nonforfeitable interest in his Accrued Benefit determined under the Plan Document without regard to such amendment, deemed amendment or change. If this Plan becomes a Top Heavy Plan and then ceases to be a Top Heavy Plan, each Participant with not less than three years of service must be permitted to elect, within a reasonable time after the schedule in (b) above reverts to the vesting schedule otherwise applicable, to have his nonforfeitable percentage computed under Section 13.05(b).

The period during which the election may be made shall commence with the date the amendment, deemed amendment or change is adopted or deemed to be made and shall end on the latest of:

    (1)    60 days after the amendment is adopted;

    (2)    60 days after the amendment becomes effective; or

    (3)    60 days after the Employee is issued written notice of the amendment by his Employer or the Plan.

(f)    No amendment to the Plan Document (including a change in the actuarial basis for determining optional or early retirement benefits) shall be effective to the extent that it has the effect of decreasing a Participant's Accrued Benefit. Notwithstanding the preceding sentence, a Participant's Accrued Benefit may be reduced to the extent permitted under

Section 412(c)(8) of the Code or otherwise pursuant to Treasury Regulations.  For purposes of this subsection (f), a Plan Document amendment that has the effect of (1) eliminating or reducing an early retirement benefit or a retirement-type subsidy or (2) eliminating an optional form of benefit (as determined under applicable Treasury Regulations), with respect to benefits attributable to service before the amendment shall be treated as reducing Accrued Benefits.  In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a Participant who satisfies (either before or after the amendment) the pre-amendment conditions for the subsidy.  In general, a retirement-type subsidy is a subsidy that continues after retirement, but does not include a qualified disability benefit (within the meaning of Section 411(a)(9) of the Code), a medical benefit, a social security supplement, or a death benefit (including life insurance).  Further, if the vesting schedule of the Plan is amended, in the case of an Employee who is a Participant as of the later of the date such amendment is adopted or the date it becomes effective, the nonforfeitable percentage (determined as of that date) of such Employee's Accrued Benefit will not be less than the percentage computed under the Plan without regard to such amendment.

**Section 8.08      Incompetence or Incapacity of a Pensioner**

In the event it is determined that any Pensioner is unable to care for his affairs because of mental or physical incapacity, the Trustees may pay the benefits due such Pensioner to his legal guardian, committee, or legal representative; or, in the absence of them, to any relative by blood or connection by marriage who is deemed by the Trustees to be equitably entitled thereto.  Payment by the Trustees to such legal representative or relative of the Pensioner shall operate to discharge the Trustees from any liability to such Pensioner or to anyone representing him or his interest.

**Section 8.09      Non-Assignment of Benefits**

It is hereby expressly provided that no Participant, Pensioner or Beneficiary shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge or anticipate any retirement payments or portions thereof and any such assignment, alienation, transfer, sale, hypothecation, mortgage, encumbrance, pledge or anticipation shall be void and of no effect whatsoever unless such action is in compliance with Treasury Regulation Section 1.401(a)-13(c)(1) or any successor regulation that allows payment of a benefit or a portion of it to a third party if the Participant's or Pensioner's authorization of such payment is revocable at any time and if the third party acknowledges to the Plan Administrator (within the meaning of the Code) that it has no enforcement right in or to a benefit payment or portion thereof and provided that the Trustees, in their discretion (which discretion shall be exercised in a non-discriminatory manner) allow such action.

So that such retirement payments or portions thereof shall not in any way be subject to any legal process, execution, attachment or garnishment or be used for the payment of any claim against any Participant, Pensioner or Beneficiary, or be subject to the jurisdiction of any bankruptcy court or insolvency proceedings by operation of law or otherwise, the Trustees shall have the right to terminate or postpone any pension payments to a Pensioner.

Notwithstanding the foregoing or any other provision of the Plan Document to the contrary:  (a) benefits shall be paid in accordance with the applicable requirements of any "qualified domestic relations order" as defined by Section 206(d)(3) of ERISA; and (b) the non-alienation restrictions set forth in this section shall not apply to any offset of a Participant's or Pensioner's benefit provided under the Plan against an amount that the Participant or Pensioner is ordered or required to pay to the

89

Plan if the order or requirement to pay arises under a judgment, order, decree, or settlement agreement in connection with the Plan or ERISA, as described in section 401(a)(13)(C) of the Code.

Any qualified domestic relations order that refers to the division of "benefits," "pension," "pension benefits" or similar formulations shall be construed to apply to Disability Benefits.

**Section 8.10    No Right to Trust Assets**

Except as specifically provided in this Plan Document, no person other than the Trustees of the Fund shall have any right, title or interest in any of the income, or property of any character received or held by or for the account of the Fund, and no person shall have any right to benefits provided by the Fund nor shall any employee be entitled to any payment or other equity in the assets of the Fund except as expressly provided herein. All contributions made to the Fund shall be held in trust for the exclusive benefit of Participants who qualify for pensions under the Plan Document and their Beneficiaries.

No employee, group of employees, Local or Employer, ceasing to maintain his or its status as a Participant, Local or Contributing Employer shall have any right to any of the assets of the Fund nor may any contributions to the Fund on behalf of a Participant be transferred to any other pension fund, local union, or Employer (except as provided for in Articles 10 and 11 of the Plan Document or pursuant to a transaction described in Section 8.14), or be paid to any employee except in the form of pension benefits as provided for in the Plan Document.

**Section 8.11    Limitations on Benefits**

This Section, which was amended effective January 1, 2008, implements the requirements of Section 415 of the Code, which limits the annual benefits that may be paid to a Participant from a defined benefit pension plan. The terms of Section 415 of the Code and the Treasury Regulations promulgated thereunder (as amended from time to time) will govern and are incorporated by reference herein, in the event of any conflicts with the terms of this Section 8.11.

(a)    In addition to other limitations set forth in the Plan Document, and notwithstanding any other provision of the Plan Document, the Annual Benefit otherwise payable to a Participant at any time shall not exceed the maximum permissible amount set forth in subsection (d) below. If the benefit the Participant would otherwise accrue in a Plan Year would produce an Annual Benefit in excess of the maximum permissible amount, the rate of accrual will be reduced so that the Annual Benefit will equal the maximum permissible amount under subsection (d) below. The rules for determining the maximum Annual Benefit payable to a Participant for limitation years prior to January 1, 2002 are set forth in Appendix A.

(b)    In determining the maximum permissible amount of Annual Benefits payable under the Plan, if a Participant has Pension Credit attributable to work performed for more than one Employer, his Annual Benefit payable under the Plan, and the limitations thereon, shall be determined separately with respect to each Employer. The Annual Benefit payable under

90

the Plan attributable to a particular Employer shall be equal to the total Annual Benefit payable under the Plan multiplied by the ratio of Pension Credit attributable to such Employer to total Pension Credit.

(c)     If the Annual Benefit payable to a Participant is not more than $1,000 multiplied by the Participant's number of Years of Service or parts thereof (not in excess of 10 years) with the Employer, and the Employer has not maintained a defined contribution plan, a welfare benefit plan, or an individual medical account in which such Participant participated, then the limitation in subsection (a) above shall not apply.

(d)     Maximum Permissible Benefit

   (1)     The maximum permissible benefit shall be $160,000 (as adjusted in accordance with (2) below).

   (2)     As of each January, the dollar limitation specified in paragraph (1), above, will be automatically adjusted by multiplying such limit by the cost-of-living adjustment prescribed by the Secretary of Treasury pursuant to Section 415(d) of the Code in such a manner as the Secretary shall prescribe.  The new limitation will apply to Plan Years in which the date of adjustment occurs and to Plan Years thereafter.

   (3)     If the Participant has less than 10 Years of Participation with the Employer, the dollar limitation specified in paragraph (1), above, is reduced by one-tenth for each Year of Participation (or part thereof) less than 10.

   (4)     If the Annual Benefit of a Participant commences prior to age 62, the dollar limitation specified in paragraph (1) above (after reduction in (3), above, if necessary), shall be the actuarial equivalent of an Annual Benefit beginning at age 62, reduced for each month by which benefits commence before the month in which the Participant attains age 62.  To determine actuarial equivalence for purposes of this subsection, the interest rate assumption is the greater of the rate for determining an Actuarially Equivalent lump-sum distribution under Section 8.05(b) or 5 percent and the mortality table is the applicable mortality table (as defined in Section 1.01A).  Any decrease in the dollar limitation determined in accordance with this paragraph (4) shall not reflect the mortality decrement to the extent that benefits will not be forfeited upon the death of the Participant.

   (5)     If the Annual Benefit of a Participant commences after age 65, the dollar limitation specified in paragraph (1), above, (after reduction in (3), above, if necessary) shall be adjusted so that it is the actuarial equivalent of an Annual Benefit of such dollar limitation beginning at age 65.  To determine actuarial equivalence, under this subsection, the interest rate assumption used is the lesser of the rate for determining an Actuarially Equivalent lump-sum distribution under Section 8.05(b) or 5 percent and the mortality table is the applicable mortality table (as defined in Section 1.01A).

(e)     This subsection (e) shall apply to any Participant who is covered, or has ever been covered, by another plan maintained by an Employer.  If a Participant is, or has ever been, covered under more than one defined benefit plan maintained by an Employer, the sum of the

Participant's Annual Benefits from all such plans of that Employer may not exceed the maximum permissible amount under subsection (d). For this purpose, all qualified defined benefit plans (without regard to whether a plan has been terminated) maintained by an Employer will be treated as one defined benefit plan, except that multiemployer plans (as defined in Section 414(f) of the Code), such as the Plan, shall not be aggregated with other multiemployer plans.

(f)    Special Definitions

For purposes of this Section 8.11, the following special definitions shall apply even to the extent that a different definition is provided in Article 1:

(1)    "Annual Benefit" shall mean: A retirement benefit from the Plan, which is payable annually in the form of a straight life annuity. Except as provided below, a benefit payable in a form other than a straight life annuity must be adjusted to an actuarially equivalent straight life annuity before applying the limitations of this Section 8.11. The actuarial equivalent straight life annuity shall be computed using whichever of the following produces the greater annual amount: (A) the interest rate and the mortality table (or other tabular factor) specified in the Plan Document for adjusting benefits in the same form; and (B) a 5 percent interest rate and the applicable mortality table (as defined in Section 1.01A of the Plan Document). The Annual Benefit does not include any assets transferred from a qualified plan that was not maintained by an Employer. No actuarial adjustment to the benefit is required for (i) the value of a qualified joint and survivor annuity, (ii) the value of benefits that are not directly related to retirement benefits (such as the qualified disability benefit, pre-retirement death benefits, and post-retirement medical benefits), and (iii) the value of post-retirement cost-of-living increases made in accordance with Section 415(d) of the Code and Treasury Regulation Section 1.415(b)-1(c)(5).

For purposes of adjusting the retirement benefit to a straight life annuity in the case of a benefit that is subject to Code Section 417(e)(3), effective for distributions in Plan Years beginning in 2004 and 2005, the actuarial equivalent of such other form of benefit is determined as the greater of: (A) the benefit computed using the Plan interest rate and Plan mortality table (or tabular factor) specified in the Plan Document for actuarial equivalence for the particular form of benefit payable; and (B) the benefit computed using a 5 ½ percent interest rate and the applicable mortality table (as defined in Section 1.01A of the Plan Document). Effective for distributions in Plan Years beginning after 2005, the actuarial equivalent of such other form of benefit is determined as the greatest of: (i) the benefit computed using the Plan interest rate and mortality table (or other tabular factor) specified in the Plan Document for actuarial equivalence for the particular form of benefit payable; (ii) the benefit computed using a 5 ½ percent interest rate and the applicable mortality table; and (iii) the benefit computed using the interest rate used to determine the amount of a lump-sum distribution (as specified in Section 1.01A of the Plan Document) and the applicable mortality table (as defined in Section 1.01A of the Plan Document), divided by 1.05.

(2)    "Employer" shall mean: A Contributing Employer and all members of a controlled group of corporations (as defined in Section 414(b) of the Code, as modified by

Section 415(h) of the Code), all commonly controlled trades and businesses (as defined in Section 414(c) of the Code, as modified by Section 415(h) of the Code), or affiliated service groups (as defined in Section 414(m) of the Code) of which the Contributing Employer is a part, and any other entity required to be aggregated with the Contributing Employer pursuant to Section 414(o) of the Code.

(3)    "Year of Participation" shall mean:  The Participant shall be credited with a Year of Participation (computed to fractional parts of a year) for each Calendar Year in which (1) he is credited with at least one month of Future Service Credit under Article 4, and (2) the Participant is included as a Participant under the Article 3 of the Plan Document) for at least one day of the Calendar Year.  If these two conditions are met, the portion of a Year of Participation credited to the Participant shall equal the amount of Future Service Credit credited to the Participant for such Calendar Year.  A Participant who is permanently and totally disabled within the meaning of Section 415(c)(3)(C)(i) of the Code for a Calendar Year shall receive a Year of Participation with respect to that Calendar Year.  In addition, for a Participant to receive a Year of Participation (or part thereof) for a Calendar Year, the Plan must be established no later than the last day of such Calendar Year.  In no event will more than one Year of Participation be credited for any 12-month period.

(g)    Miscellaneous

For purposes of applying the requirements of Section 415 of the Code, the limitation year under the Plan shall be the Plan Year.  All other qualified plans maintained by an Employer must use the same limitation year as this Plan.

(h)    Limitation Years after December 31, 2007

Effective for limitation years beginning after December 31, 2007, the following rules shall apply for purposes of applying the limitations of this Section:

(1)    In no event shall the annual amount of benefits accrued or payable from the Plan in a limitation year beginning on or after January 1, 2008 exceed the annual limit determined in accordance with Code Section 415.  If the benefit otherwise accrued or payable in a limitation year would exceed the maximum permissible benefit, the benefit shall be limited (or the rate of accrual reduced) to a benefit that does not exceed the maximum permissible benefit.

(2)    The application of the provisions of this subsection shall not cause the maximum permissible benefit that is accrued or payable for any Participant to be less than the Participant's accrued benefit as of December 31, 2007 under the provisions of the Plan Document that were both adopted and in effect before April 5, 2007, to the extent permitted by law.

(3)    For the purpose of this subsection, in aggregating the benefits payable from this Plan with any plan that is not a multiemployer plan maintained by any Employer, only the benefits payable from this Plan that are provided by such Employer shall be treated as benefits provided under a plan maintained by the Employer, to the maximum extent permitted by law.  In the event that the benefits accrued in any

93

Plan Year by a Participant exceed the limits under Code Section 415 as a result of the mandatory aggregation of this Plan with the benefits under another plan maintained by an Employer, the benefits of such other plan shall be reduced to the extent necessary to comply with Code Section 415.

(4)     The automatic annual adjustment of the defined benefit dollar limitation under Section 415(d) of the Code, as provided in Section (d)(2) above, shall apply to Participants who have had a separation from Covered Employment.

(5)     The maximum permissible benefit adjustments under subsections (d)(4), for benefits commencing prior to age 62, and (d)(5), for benefits commencing after age 65, shall be based on a 5 percent interest assumption and the applicable mortality table (as defined in Section 1.01A).

## Section 8.12     Required Minimum Distributions

(a)     General Applicability

Subject to the requirements of Article 6, the requirements of this Section 8.12 shall apply to any distribution of a Participant's interest and shall override over any distribution options and rules under the Plan Document which are inconsistent with the requirements of this Section. Except as otherwise provided below, the provisions of Section 8.12 shall apply to Calendar Years beginning on or after January 1, 1985.

Notwithstanding any provision in this Section 8.12 to the contrary, except that the required beginning date of distributions shall be as specified in Section 8.12(b), distributions required under this Section 8.12 shall be determined and made in accordance with the rules of Section 401(a)(9) of the Code and the regulations thereunder (whether proposed or final), including the minimum distribution incidental benefit requirements of Proposed Treasury Regulation Section 1.401(a)(9)–2.

(b)     Required Beginning Date of Distributions

Regardless of whether a Participant has applied for a distribution or has elected to receive his pension beginning on a later date, the entire interest of a Participant must be distributed or begin to be distributed not later than the Participant's Required Beginning Date.  For purposes of this Section 8.12, a Participant's Required Beginning Date shall be the first day of April of the Calendar Year following the Calendar Year in which the Participant attains age seventy and one-half (70-1/2).

(c)     Limitations on Period of Distribution

(1)     As of the first Distribution Calendar Year (as defined in paragraph (2) below), distributions may only be made over one of the following periods (or a combination thereof), unless made in the form of a lump-sum:

(A)     the life of the Participant;

(B)     the life of the Participant and a Designated Beneficiary;

94

(C)     a period certain not extending beyond the life expectancy of the Participant; or

(D)     a period certain not extending beyond the joint and last survivor expectancy of the Participant and a Designated Beneficiary.

(2)     For purposes of this Section 8.12 the following special definitions shall apply:

(A)     The term "Distribution Calendar Year" shall mean a Calendar Year for which a minimum distribution is required. For distributions beginning before the Participant's death, the first Distribution Calendar Year is the Calendar Year immediately preceding the Calendar Year which contains the Participant's Required Beginning Date. For distributions beginning after the Participant's death, the first Distribution Calendar Year is the Calendar Year in which distributions are required to begin pursuant to subsection (d) below.

(B)     The term "Designated Beneficiary" shall mean the individual who is designated as the Beneficiary under the Plan in accordance with Section 401(a)(9) of the Code and the regulations thereunder.

(C)     The terms "Life Expectancy" shall mean the life expectancy (or joint and last survivor expectancy) calculated using the attained age of the Participant (or Designated Beneficiary) as of the Participant's (or Designated Beneficiary's) birthday in the applicable Calendar Year. For this purpose, the "applicable Calendar Year" shall be the first Distribution Calendar Year, or if annuity payments commence before the Required Beginning Date, the "applicable Calendar Year" shall be the year such payments commence. Life expectancy and joint and last survivor expectancy shall be computed by use of the expected return multiples in Tables V and VI of Treasury Regulation Section 1.72-9.

(d)     Determination of Amount Required to be Distributed Each Year

(1)     For purposes of meeting the requirements of Section 401(a)(9) of the Code and the regulations thereunder, when the Participant's interest under the Plan is paid in the form of an annuity distribution, the following requirements shall apply:

(A)     the distribution must be paid in periodic payments at intervals of no more than one year in length;

(B)     the period of distribution must be over a life (or lives) or over a period certain not longer than a life expectancy (or joint life and last survivor expectancy) described in Section 401(a)(9)(a)(ii) or Section 401(a)(9)(B)(iii) of the Code, whichever is applicable;

(C)     the life expectancy (or joint life and last survivor expectancy) for purposes of determining the period certain shall be determined without recalculation of life expectancy;

(D) once payments have begun over a period certain, the period certain may not be lengthened, even if the period certain is shorter than the maximum permitted;

(E) payments must either be non-increasing or increase only as follows:

 (i) with any percentage increase in a specified and generally cost-of-living index;

 (ii) to the extent of the reduction to the amount of the Participant's payments to provide for a survivor benefit upon death, but only if the Beneficiary whose life was being used to determine the distribution period described in subsection (b) above dies and the payments continue otherwise in accordance with that subsection over the life of the Participant (e.g., a pop-up);

 (iii) because of an increase in benefits under the Plan.

(F) If the distribution is the form of a life annuity (or a life annuity with a period certain not exceeding 20 years), the amount which must be distributed on or before the Participant's Required Beginning Date (or, in the case of distributions after the Participant's death, the date distributions are required to begin pursuant to subsection (e) below) shall be the payment which is required for one payment interval. The second payment need not be made until the end of the next payment interval even if that payment interval ends in the next Calendar Year. Payment intervals are the periods for which payments are received, (e.g., monthly or annually).

(2) If the form of distribution is an annuity made in accordance with this subsection, any additional benefits accruing to the Participant after his Required Beginning Date shall be distributed as a separate and identifiable component of the annuity beginning with the first payment interval ending in the Calendar Year in which such amount accrues.

(3) If any part of a Participant's interest is distributed in a form other than as an annuity, it shall be distributed in a manner that satisfies the requirements of the Section 401(a)(9) of the Code and the regulations thereunder.

(4) For purposes of determining the minimum required distribution that shall be made to a Participant who has not filed an application for benefits, it shall be assumed that the benefit is to be paid in the form of the Joint and Survivor Annuity, and that the Participant is 3 years older than his or her spouse. A Participant who files an application for benefits under Section 8.01 after benefits commence under this subsection will have his or her benefit effective as of the first day of the month following the date of the Trustees' receipt of his application adjusted to the extent required by the Participant's benefit election.

(e) Death Distribution Provisions

(1)     Distributions beginning before Participant's death

If a Participant dies after distribution of his interest has begun, the remaining portion of such interest will continue to be distributed at least as rapidly as under the method of distribution being used prior to the Participant's death.

(2)     Distributions beginning after Participant's death

If a Participant dies before distribution of his interest begins, distribution of the Participant's entire interest shall be completed by December 31 of the Calendar Year containing the fifth (5th) anniversary of the Participant's death, except to the extent that an election is made to receive distributions in accordance with (A) or (B) below:

(A)     if any portion of the Participant's interest is payable to a Designated Beneficiary, distributions may be made over the life or over a period certain not greater than the life expectancy of the Designated Beneficiary commencing on or before December 31st of the Calendar Year immediately following the Calendar Year in which the Participant died;

(B)     if the Designated Beneficiary is the Participant's surviving spouse, the date distributions are required to begin in accordance with (A) above shall not be earlier than the later of (i) December 31 of the Calendar Year immediately following the Calendar Year in which the Participant died and (ii) December 31 of the Calendar Year in which the Participant would have attained age seventy and one-half (70-1/2).

If the Participant has not made an election pursuant to this subsection (2) by the time of his death, the Participant's Designated Beneficiary must elect the method of distribution no later than the earlier of (i) December 31 of the Calendar Year in which distributions would be required to begin under this subsection, or (ii) December 31 of the Calendar Year which contains the fifth (5th) anniversary of the date of death of the Participant.  If the Participant has no Designated Beneficiary, or if the Designated Beneficiary does not elect a method of distribution, distribution of the Participant's entire interest must be completed by December 31 of the Calendar Year containing the fifth (5th) anniversary of the Participant's death.

(3)     For purposes of (2) above, if the surviving spouse dies after the Participant, but before payments to such spouse begin, the provisions of (2) above, with the exception of paragraph (B), shall be applied as if the surviving spouse were the Participant.

(4)     For purposes of this Section 8.12(e), any amount paid to a child of the Participant will be treated as if it had been paid to the Participant's surviving spouse if the amount becomes payable to the surviving spouse when the child reaches the age of majority.

(5)    Also for purposes of this Section 8.12(e), distribution of a Participant's interest is considered to begin on the Participant's Required Beginning Date (or if (3) above is applicable, the date distribution is required to begin to the Participant's surviving spouse pursuant to (2) above. If a distribution in the form of an annuity described in Section 8.12(e) above irrevocably commences to the Participant before the Required Beginning Date, the date distribution is considered to begin is the date distribution actually commences.

**Section 8.13    Eligible Rollover Distributions**

(a)    Election

Notwithstanding any provision of the Plan Document to the contrary that would otherwise limit a Distributee's election under this Section, a Distributee may elect, at the time and in the manner prescribed by the Trustees, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a direct rollover.

(b)    Special Definitions

For purposes of this Section 8.13, the following definitions shall apply:

(1)    "Eligible Rollover Distribution" shall mean any distribution of all or any portion of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include (1) any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated Beneficiary, or for a specified period of ten years or more; (2) any distribution to the extent such distribution is required under Section 401(a)(9) of the Code; and (3) distributions that are made to correct a failed nondiscrimination test or because legal limitations on certain contributions were exceeded.

(2)    "Eligible Retirement Plan" shall mean an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, a tax sheltered annuity contract described in Section 403(b) of the Code, a deferred compensation plan described in Section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from the Plan, or a qualified trust described in Section 401(a) of the Code that accepts the Distributee's Eligible Rollover Distribution. With respect to any portion of an Eligible Rollover Distribution that is not includible in gross income, however, an Eligible Retirement Plan includes only an individual retirement account or annuity described in section 408(a) or 408(b) of the Internal Revenue Code or a defined contribution plan described in section 401(a) or 403(b) of the Internal Revenue Code that separately accounts for such Eligible Rollover Distribution, including accounting separately for the portion not includible

in gross income. Effective January 1, 2008, the definition of Eligible Rollover Distribution also includes a Roth IRA to the extent described in Section 402(c)(8) of the Code. The definition of Eligible Retirement Plan shall also apply in the case of a distribution to an Employee's or former Employee's surviving spouse, or to a spouse or former spouse who is the Alternate Payee under a Qualified Domestic Relations Order, as defined in Section 414(p) of the Code.  Also, effective January 1, 2010, a non-spousal Beneficiary may elect a direct rollover into an inherited IRA.

(3)     "Distributee" shall include an Employee or former Employee.  In addition, the Employee's or former Employee's surviving spouse and the Employee's or former Employee's spouse or former spouse who is the Alternate Payee under a Qualified Domestic Relations Order, as defined in Section 414(p) of the Code, are Distributees with regard to the interest of the spouse or former spouse.

(4)     "Direct Rollover" shall mean payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

**Section 8.14      Mergers or Transfers of Assets or Liabilities**

In the case of any merger or consolidation with, or transfer of assets or liabilities to, any other plan each Participant shall (if the plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (as if this Plan had then terminated).

**Section 8.15      Restrictions for Highly Compensated Employees**

Notwithstanding any provision to the contrary, the following restrictions shall apply for Plan Years beginning on or after January 1, 1994.

(a)     Restriction of Benefits upon Plan Termination.  In the event that the Plan is terminated, the benefit of any Highly Compensated Employee (and any Former Highly Compensated Employee) shall be limited to a benefit that is nondiscriminatory under Section 401(a)(4) of the Code.

(b)     Restrictions on distributions.  Except as provided in (c) below, in any Plan Year, the payment of benefits to or on behalf of a Restricted Employee shall not exceed an amount equal to the payments that would be made to or on behalf of the Restricted Employee in that Plan Year under:  (i) a straight life annuity that is the Actuarial Equivalent of the Accrued Benefit and other benefits to which the Restricted Employee is entitled under the Plan (other than a social security supplement); and (ii) a social security supplement, if any, that the Restricted Employee is entitled to receive.

(c)     The restrictions of (b) above shall not apply if any one of the following requirements is satisfied:

(1)     After taking into account payment to or on behalf of the Restricted Employee of all benefits payable to or on behalf of that Restricted Employee under the Plan, the

99

value of the Plan's assets must equal or exceed 110 percent of the value of the Plan's current liabilities, as defined in Section 412(l)(7) of the Code;

(2)     The value of the benefits payable to or on behalf of the Restricted Employee must be less than one percent (1%) of the value of the Plan's current liabilities before distribution; or

(3)     The value of the benefits payable to or on behalf of the restricted employee must not exceed the amount described in Section 411(a)(11)(A) of the Code.

For purposes of the foregoing, the Plan may use any reasonable and consistent method for determining the value of the Plan's current liabilities and the value of the Plan's assets.

(d)     The following definitions shall apply for purposes of this Section 8.15.

(1)     The term "Highly Compensated Employee" shall have the same meaning given such term in Section 414(q) of the Code.

(2)     The term "Former Highly Compensated Employee" shall mean a former Employee who is treated as a Highly Compensated Employee under Section 414(q) of the Code.

(3)     The term "Restricted Employee" generally means any Highly Compensated Employee or Former Highly Compensated Employee. However, a Highly Compensated Employee or Former Highly Compensated Employee will not be treated as a Restricted Employee in the current Plan Year if the Highly Compensated Employee or Former Highly Compensated Employee is not one of the 25 nonexcludable employees (as such term is defined in Treasury Regulation Section 1.401(a)(4)-12) and former Employees with the largest amount of compensation in the current or any prior Plan Year.

(e)     This Section shall be construed in a manner consistent with Treasury Regulation Section 1.401(a)(4)-5(b).


## ARTICLE 9   NPF COLA BENEFIT


**Section 9.01     Rehabilitation Plan Reductions**

The NPF COLA Benefit was an annual increase (payable as a 13th check), which took effect after retirement and supplemented the monthly pension benefits provided by the Plan to eligible Participants who separated from Covered Employment on or after January 1, 1991 and their Beneficiaries. Except to the extent an amount was payable under the NPF COLA Benefit to such an eligible Participant (or his or her Beneficiary) on the 2002 Allocation Date (i.e., October 31, 2002), the annual supplemental increase under the NPF COLA Benefit constituted a benefit increase that would not be eligible for a guarantee under Section 4022A of ERISA on the first day of the Plan's initial year of Critical Status, which was January 1, 2008. This is because any annual supplemental increase that did not first become payable, on or before the 2002 Allocation Date, would have taken effect less than

60 months before January 1, 2008. Consequently, the NPF COLA Benefit was one of the adjustable benefits that was reduced pursuant to the Rehabilitation Plan when the Plan was in Critical Status. Beginning with the 2008 Plan Year, the Plan ceased making any payments under the NPF COLA Benefit (including scheduled increases in the future), which had not taken effect before 2003 (i.e., that was not payable on the 2002 Allocation Date). This had the effect of rolling back the annual supplemental increases payable under the NPF COLA Benefit for some and eliminating them altogether for others. Those reductions were, and remain, permanent.

**Section 9.02     No NPF COLA Benefit payable unless a 13th check was payable for 2002 Allocation Date**

No payment is made under NPF COLA Benefit after January 1, 2008 unless the annual supplemental increase payable under the NPF COLA Benefit had been in effect 60 months before that date. This means that an annual supplemental increase (i.e., 13th check) under the NPF COLA Benefit must have been payable on the Participant's Allocation Date for 2002 (October 31, 2002). Any Participant who had not retired before December 1, 2001, and, therefore, did not receive an annual supplemental increase under the NPF COLA Benefit for the 2002 Allocation Date, will not receive any payment under the NPF COLA Benefit. A Participant who was retired and received an annual supplemental increase under the NPF COLA Benefit for the 2002 Allocation Date will continue to receive a payment under the NPF COLA Benefit, but it will not exceed the amount of the 13th check that was paid for the 2002 Allocation Date (i.e., it remains fixed at that amount). This also applies to the Participant's Beneficiary (and alternate payees).

**Section 9.03     Calculation of NPF COLA Benefit Payable before 2003**

Sections 9.01 through 9.05 of Appendix A describe, among things, how the NPF COLA Benefit was calculated for the 2002 Allocation Date and earlier Allocation Dates.

**Sections 9.04     Former Ad Hoc COLA**

Section 9.06 of Appendix A describes a former Plan Document provision, which enabled the Trustees to amend the Plan Document from time to time to provide an Ad Hoc COLA payment with respect to Participants who separated from Covered Employment before January 1, 1991. No amendments providing for an Ad Hoc COLA payment were made for any Plan Year after 2001.

## ARTICLE 10    RECIPROCITY – PRO RATA PENSIONS

**Section 10.01    Purpose**

Pro Rata Pensions are provided under this Plan for Employees who would otherwise lack sufficient credit to be eligible for any pension because their years of employment were divided between pension plans or, if eligible for a pension, whose pension would be less because of such division of employment.

101

**Section 10.02    Identification of the Home Fund**

(a)      For the purposes of this Article 10, the Fund shall recognize as the "Home Fund" that pension fund which has executed the International Reciprocal Agreement for Sheet Metal Workers' Pension Funds and which was established in part by the Local Union which first represented an Employee for the purpose of collective bargaining.

(b)      The designation of a Home Fund may be changed:

(1)      by an Employee if he transfers to another Local Union which provides a Related Plan by giving notice both to his former Home Fund and to his new Home Fund; or

(2)      by any other Employee if he has earned at least one pension credit in the jurisdiction of a Local Union which participates in a Related Plan by giving notice to his former and new Home Funds.

**Section 10.03    Related Pensions**

The Trustees recognize as a Related Plan or Plans, one or more other plans of pension funds which have executed the International Reciprocal Agreement for Sheet Metal Workers' Pension Funds ("Reciprocal Agreement") including the adoption of Exhibit A of such Reciprocal Agreement.

**Section 10.04    Related Pension Credits**

Related Pension Credits earned under a Related Plan shall be determined in accordance with the rules and regulations of the Related Plan.  Such Related Pension Credit, including pension credit earned before the effective date of this Plan, to the extent creditable under a Related Plan, shall be recognized as Related Pension Credits.  The Trustees of the Related Plan shall certify to this Plan the amount of such Related Pension Credits which have been earned and credited under the Related Plan.

**Section 10.05    Combined Pension Credit**

The total of any Employee's Pension Credit under this Plan and Related Pension Credit together comprises the employee's Combined Pension Credit.  Not more than one year of Combined Pension Credit shall be counted in any Plan Year.

Nothing in this Article shall be construed to grant duplicate pension credit under two or more Related Plans for the same period of covered employment.  Therefore, no Related Pension Credits shall be credited to an Employee in the case of pension credits earned simultaneously for covered employment in a local union jurisdiction for which contributions are made to both another pension fund and the Plan.  In this case, such service shall not be considered to be Related Pension Credits as defined herein.

**Section 10.06    Eligibility**

An Employee shall be eligible for a Pro Rata Pension under this Plan if he satisfies all of the following requirements:

102

(a)    He would be eligible for any type of pension under this Plan (other than a Pro Rata Pension) if his Combined Pension Credit were treated as Pension Credit under this Plan.

(b)    In addition to other requirements necessary to be eligible under (a), he has, under this Plan, at least one year of Pension Credit based on hours of employment for which contributions were payable to this Fund.

(c)    He is found to be eligible for a Pro Rata Pension from this Plan and at least one Related Plan.

**Section 10.07    Breaks in Service**

In applying the rules of this Plan with respect to cancellation of service credit, any period in which an employee has earned Related Pension Credit shall not be counted in determining whether there has been a period of no covered employment sufficient to constitute a break in service.

**Section 10.08    Election of Pro Rata Pension**

In order to receive a Pro Rata Pension from this Plan an Employee must irrevocably elect to receive his benefit in this form rather than any other form of benefit under the Plan.

**Section 10.09    Pro Rata Pension Amount**

The amount of the Pro Rata Pension payable by each plan signatory to the Reciprocal Agreement and under which an Employee qualifies for a pension shall be based on years of pension credit and benefit levels earned under each such plan.

**Section 10.10    Payment of Pro Rata Pensions**

The payment of a Pro Rata Pension shall be subject to all of the conditions contained in this Plan applicable to all other types of pensions, including, but not limited to, retirement as herein defined and timely application.  Pro Rata Pension payments subject to this Article shall be limited to monthly pension payments to a Pensioner or to monthly pension payments to the survivor of a Pensioner.

**Section 10.11    Applicability to Pension Benefits Only**

This Article applies to pension benefits only.  It shall not apply to death benefits and any other form of ancillary benefit.

**Section 10.12    Limited Transfer of Contributions**

No contributions shall be transferred between funds that are signatory only to Exhibit A of the Reciprocal Agreement except as set forth herein (other than in connection with a transaction described in Section 8.14 (e.g., transfer of assets or liabilities)).  If an Employee whose Home Fund has adopted Exhibit A of the Reciprocal Agreement only, or both Exhibit A and Exhibit B, works in the jurisdiction of a fund signatory only to Exhibit A and earns less than one year of pension credit in said fund, then all contributions made on his behalf to said fund may be transferred to his Home Fund within a reasonable period of time after he has returned to covered employment (or been available therefore) in

103

the jurisdiction of his Home Fund. Such transfer of contributions shall only be made upon such conditions as the Trustees deem appropriate or under such conditions as may be found in the Reciprocal Agreement to the extent not inconsistent with this Plan or applicable law.

## ARTICLE 11 TRANSFER OF CONTRIBUTIONS BETWEEN PENSION PLANS

### Section 11.01    Purpose

A pension is provided under this Plan for employees who would otherwise lack sufficient pension credit to be eligible for any pension because their years of employment were divided between Pension Plans or, if eligible for a pension, whose pension would be less because of such division of employment. For these reasons, it is appropriate in some circumstances to permit the transfer of contributions between certain pension plans covering Employees.

Effective September 1, 2009, the Fund may enter into any other reciprocity arrangement or agreements that it deems appropriate, which may supersede all or a portion of the provisions in this Article 11. In the event Article 11 is superseded in whole or in part, the terms of any new reciprocity arrangement or agreement will be attached as Appendix D to the Plan, to the extent applicable, and any such provisions will be incorporated by reference in this Article 11.

### Section 11.02    Identification of the Home Fund and Home Local Union

(a)    For the purposes of this Article 11, the Fund shall recognize as the "Home Fund" that fund which has executed the International Reciprocal Agreement for Sheet Metal Workers' Pension Funds and which has adopted Exhibit B of the Reciprocal Agreement, and which was established in part by the Local Union in which an Employee holds membership or which first represented the Employee for the purposes of collective bargaining ("Home Local Union").

(b)    The designation of a Home Fund may be changed:

(1)    by an Employee if he transfers to another Local Union which provides a Cooperating Pension Fund by giving notice both to his former Home Fund and to his new Home Fund; or

(2)    by any other Employee if he has earned at least one pension credit in the jurisdiction of a Local Union which provides a Cooperating Pension Fund by giving notice to his former and new Home Funds.

(c)    Upon request of an Employee designating a new Home Fund, a lump sum transfer from the former Home Fund to the new Home Fund may be made, provided the terms and conditions of such a transfer are agreed to by the Trustees of both such funds. Nothing contained herein will limit the applicability of reciprocal pension credits under Article 10 or the Reciprocal Agreement.

### Section 11.03    Cooperating Pension Funds

By resolution duly adopted, the Trustees recognize all other pension funds which have executed the Reciprocal Agreement and which have adopted Exhibit B of such Reciprocal Agreement as a Cooperating Pension Fund.

**Section 11.04    Transfer of Contributions**

Each Cooperating Pension Fund shall collect and forward contributions to a traveling Employee's Home Fund, at least quarterly, in accordance with the following:

(a)    All contributions required to be paid into this Fund on behalf of any traveling Employee working within its territorial jurisdiction unless it is determined that the credit given by the Home Fund of said Employee does not reflect the difference, if any, by which the contribution rate of this Fund is greater than the contribution in the Home Fund. If such a determination is made, this Fund shall forward to the Home Fund an amount based on the lesser of the contribution rate of this Fund or the Home Fund.

(b)    Contributions shall only be forwarded to the Employee's Home Fund if the transfer is authorized by the Employee in writing on a form provided for that purpose.

(c)    The Cooperating Fund shall at the same time provide to the Home Fund the traveling Employee's employment records.    In making such transfers of contributions, the Cooperating Fund will act solely as the agent of the Home Fund and the Employee will continue to remain subject to the rules of eligibility of such Home Fund.

(d)    Additional conditions for the purposes of this section:

(1)    In the event an Employee's Home Local Union's collective bargaining agreement requires contributions only to the Home Fund, and the Employee works under the collective bargaining agreement of another local union jurisdiction that provides contributions to a local pension fund and this Plan, then the local pension fund shall transfer to the Employee's Home Fund the lesser of the contribution rate in effect in the Home Fund or the local pension fund. In the event that the local pension fund of the jurisdiction in which he is working has a higher contribution rate than his Home Fund, then the difference shall be transferred to this Pension Fund.

(2)    In the event an Employee's Home Local Union's collective bargaining agreement requires contributions to the Home Fund and this Pension Fund, and the member works under a collective bargaining agreement in another local union jurisdiction which provides contributions to both a local pension plan and this Pension Fund, then the local pension plan shall transfer to the Home Fund the lesser of the contribution rate in effect in the Home Local Pension Plan or the local pension plan. In the event the contribution rate in effect in the Home Local Pension Plan is less than the contribution rate of the local pension fund of the jurisdiction in which he is working, then the difference shall be transferred to this Pension Fund.

**Section 11.05    Eligibility for Benefits and Service Credit**

105

Upon transfer of contributions by a Cooperating Pension Fund, an employee shall receive credit in his Home Fund for any time worked under a collective bargaining agreement requiring contributions to the Cooperating Pension Fund as if such time were worked in the jurisdiction of the Home Fund. For the purpose of computing a break in service, time worked for which contributions were due a Cooperating Pension Fund shall be considered to be time worked for credit under the Home Fund, provided that contributions for such time worked are transferred.

**Section 11.06    Credit for Contributions**

In determining the benefits payable under the Home Fund, credit shall be given for contributions forwarded to said fund by any Cooperating Pension Funds as well as those contributions received by the Home Fund directly.

**Section 11.07    Payment of Pension**

The payment of the pension shall be subject to the provisions of the Home Fund's Plan rules and regulations.

**ARTICLE 12    TERMINATION OF EMPLOYER AND EMPLOYEE PARTICIPATION**

**Section 12.01    General Scope**

This Article sets forth the basis for terminating an Employer's participation in the Plan and the effect of such termination on the Participants who are employed by such Employer. In no event shall the termination of any Employer under this Article 12 result in an impermissible reduction or forfeiture of Accrued Benefits under Section 411 of the Code or 204 of ERISA and the regulations thereunder. Furthermore, notwithstanding any provision to the contrary, nothing in this Article 12 shall be construed to limit or modify the Employer's liability for its failure to make contributions to the Plan prior to an Employer's termination or prior to the termination of coverage under the Plan of one or more classes of Employees, or to limit or modify any liability of the Employer under Title IV, Subtitle E, Part 1 of ERISA.

**Section 12.02    Termination and Modification of Contribution Obligations**

(a)    Introduction

The financing of benefits provided by the Plan is based on the continued contributions of Employers, as required by the Collective Bargaining Agreements or other similar agreements, as well as the Plan Document and Trust Document. Therefore, the failure of an Employer to make required contributions to the Plan, as well as certain other events, may jeopardize the actuarial soundness of the Plan.

(b)    Termination of Status as a Contributing Employer

The Trustees may, in their sole discretion, terminate an Employer's status as a Contributing Employer in the event that:

106

(1)   a Contributing Employer ceases to make contributions to the Fund at any time after its Contribution Date in violation of its Collective Bargaining Agreement, other agreement and/or the terms of the Plan Document and Trust Document;

(2)   the number of Employees employed by the Contributing Employer at any time shall be less than 50 percent of the number of Employees employed by the Contributing Employer on its Contribution Date;

(3)   the Contributing Employer enters into a Collective Bargaining Agreement or other agreement requiring contributions to the Fund, and then fails to renew such agreement, or enters into a Collective Bargaining Agreement or other agreement which does not require the continuation of contributions to the Fund, or requires contributions at a reduced Contribution Rate; or

(4)   the Contributing Employer fails to contribute at such minimum Contribution Rate as the Trustees may impose in order to preserve the actuarial soundness of the Fund and to adequately fund benefits provided under the Plan.

(5)   the Contributing Employer fails to make any increase in contributions as the Trustees may require in order to preserve the actuarial soundness of the Fund and to fund adequately benefits provided under the Plan.

(c)   Effect of Termination

(1)   In the event that an Employer's status as a Contributing Employer is terminated, then:

(A)   notwithstanding any provision to the contrary in any Collective Bargaining Agreement or other similar agreement to which the Employer is a party, the Employer shall cease to maintain the Plan and shall cease to have any obligation to contribute under the Plan for work performed after the date of the Employer's termination as a Contributing Employer;

(B)   any person employed by such former Employer shall cease to be a Covered Employee and shall cease to accrue any Pension Credit under Article 4 of the Plan Document with respect to work performed for the former Employer after the former Employer's termination date; and

(C)   all Hours of Work and Contribution Hours with the former Employer after the former Employer's termination date shall be disregarded.

Notwithstanding any provision to the contrary, a Participant's Accrued Benefit shall not be any less than it was on the date immediately preceding the date on which the former Employer was terminated as a Contributing Employer.

(2)   In the event it is determined by a court of competent jurisdiction, or other forum of competent jurisdiction, such as the American Arbitration Association, that an Employer's obligation to contribute under the plan has not ceased, then:

(A)  the Employer's status as Contributing Employer shall be retroactively reinstated (as of the termination date or such later date specified by the court, federal agency or other forum of competent jurisdiction);

(B)  any Pension Credit that would otherwise have been credited to a Participant pursuant to Article 4 of the Plan Document had the Employer not been terminated shall be retroactively credited to the Participant as of the reinstatement date;

(C)  any Hours of Work and Contribution Hours that were disregarded pursuant to subsection (c)(1) above shall be retroactively credited to a Participant (as of the reinstatement date) in accordance with the terms of the Plan Document, except to the extent that Years of Service may be disregarded pursuant to Section 411(a)(4)(G)(i)(II) of the Code; and

(D)  the Employer shall make any contributions it was obligated to make during its termination period, plus interest (determined by using the rate prescribed under Section 6621 of the Code).

(d)  Termination of Coverage of One or More Classes of Employees

(1)  The Trustees may, in their sole discretion, terminate the coverage under the Plan of one or more classes of Employees, in lieu of terminating the Employer's status as a Contributing Employer, upon the occurrence of any event described in subsection (b) above.

(2)  In the event that the coverage under the Plan of one or more classes of Employees is terminated, then the Employer's obligation to contribute under the Plan for such class or classes of Employees shall cease with respect to work performed by such class or classes of Employees after their termination of coverage under the Plan, but the Employer shall remain obligated to contribute under the Plan for such other class or classes of Employees who continue to be covered under the Plan.  Any person included in such terminated class or classes of Employees shall cease to be a Covered Employee, and any work performed for an Employer by such an employee after coverage under the Plan has been terminated shall be treated as work performed in Non-Covered Employment.  Therefore, no Pension Credit shall be granted under Article 4 of the Plan Document for any work performed by a class of employees whose coverage under the Plan has been terminated.  Any Hours of Work in Continuous Non-Covered Employment shall be taken into account in accordance with the terms of the Plan Document, except that Years of Service may be disregarded for vesting purposes pursuant to Section 411(a)(4)(G)(i)(II) of the Code.

(3)  Notwithstanding any provision to the contrary, a Participant's Accrued Benefit shall not be any less than it was on the date immediately preceding the date on which his coverage under the Plan was terminated.

(4)  If it is determined by a court of competent jurisdiction, or other appropriate forum that the employer's obligation to contribute on behalf of a terminated class of

108

Employees has not ceased, the coverage under the Plan of such class of Employees shall be retroactively restored, along with any Pension Credit that would have been credited to a Participant had his coverage under the Plan not been terminated, and the Employer shall be obligated to make retroactive contributions on behalf of the class of Employees for any work performed during the termination period, plus interest (determined by using the rate prescribed under Section 6621 of the Code).

**Section 12.03    Termination Due to Noncompliance with the Code, ERISA or Participation Rules**

(a)    In the event that a Contributing Employer fails to comply with any requirements of the Code, ERISA, or participation rules established by the Trustees, and the Employer fails to correct such non-compliance to the full satisfaction of the Trustees, the Trustees may, in their sole discretion, terminate the coverage under the Plan of one or more classes of Employees, if the non-compliance only relates to such class or classes of Employees.

(b)    If the Employer's status as a Contributing Employer is terminated due to non-compliance, the Employer shall cease to maintain the Plan and shall cease to have any obligation to contribute under the Plan for work performed after the date of the Employer's termination as a Contributing Employer, and the provisions of Section 12.02(c) shall apply to the Employer and the Participants employed by such Employer.

(c)    If the coverage under the Plan of one or more classes of Employees is terminated pursuant to this Section 12.03, the Employer's obligation to contribute under the Plan for such class or classes of Employees shall cease with respect to work performed by such class or classes of Employees after their termination of coverage under the Plan, but the Employer shall remain obligated to contribute under the Plan for such other class or classes of Employees who continue to be covered under the Plan.  In such event, the provisions of Sections 12.02(d)(2), (3) and (4) shall apply to the Employer and any person included in the class of Employees whose coverage under the Plan has been terminated pursuant to this Section 12.03.

**Section 12.04    Withdrawal of Employer**

Notwithstanding any other provision to the contrary, an Employer's status as a Contributing Employer shall automatically terminate whenever the Employer has a complete withdrawal (within the meaning of Section 4203 of ERISA), whether or not such complete withdrawal results from the Employer's termination as a Contributing Employer pursuant to this Article 12.  When an Employer has a complete or partial withdrawal, the Employer shall be liable to the Plan for the amount of withdrawal liability determined under Title IV, Subtitle E, Part 1 of ERISA, subject to the terms and conditions set forth in the document that is approved by the Trustees and that specifies the procedure for determining such withdrawal liability, which document is incorporated by reference herein and forms a part of the Plan.

# ARTICLE 13 TOP-HEAVY PROVISIONS

## Section 13.01    General Considerations

If the Plan is or becomes a Top-Heavy Plan, as defined in section 13.03, in any Plan Year beginning after December 31, 1983, the provisions of Sections 13.04 and 13.05 will supersede any conflicting provisions in this Plan Document.

## Section 13.02    Definitions and Special Rules Applicable to this Article 13

All definitions and special rules and the construction in this Article 13 shall be construed and applied in conjunction with Section 416 of the Code.

(a)    "Key-Employee" shall mean any Participant or former Participant (including any deceased Participant) who, at any time during the Plan Year that includes the determination date was:

   (1)    an officer of an Employer having annual compensation greater than $130,000 (as adjusted under Section 416(i)(1) of the Code for Plan Years beginning after December 31, 2002);

   (2)    a 5-percent owner of an Employer; or

   (3)    a 1-percent owner of an Employer having an annual compensation of more than $150,000.

For purposes of subsection (a)(1) and (a)(3), annual compensation means compensation within the meaning of Section 415(c)(3) of the Code.

For purposes of subsection (a)(1), no more than 50 Employees (or, if lesser, the greater of 10 percent or 3 of the Employees) shall be treated as officers.

For the purposes of subsections (a)(2) and (a)(3), the terms "five-percent owner" and "one percent owner" respectively, mean any person who owns (or is considered as owning within the meaning of Section 318 of the Code) more than five percent, or one percent, of the outstanding stock of the Employer corporation, or stock possessing more than five percent, or one percent, of the total combined voting power of all stock of the Employer corporation. If the Employer is not a corporation, the terms "five percent owner" and "one percent owner" respectively, mean any person who owns an interest more than five percent, or more than one percent, in the Employer.

The determination of who is a Key Employee will be made in accordance with Section 416(i)(1) and the applicable regulations and other guidance of general applicability issued thereunder.

(b)    "Determination Date" shall mean the last day of the preceding Plan Year, or with respect to a new Participant, the last day of the first Plan Year in which he was a Participant.

(c)    "Aggregation Group" shall mean:

(1)    in the case of required aggregation, a group of plans consisting of each plan of an Employer (as determined in accordance with the provisions of Sections 414(b), 414(c), 414(m) and 415(h) of the Code) in which a Key Employee is a participant, and will include any other plan of such Employer which enables the Plan to meet the requirements of Section 401(a)(4) and 410 of the Code;

(2)    in the case of permissive aggregation, an Employer may treat any plan not required to be included in an Aggregation Group as being a part of such group if such group would continue to meet the requirements of Sections 401(a)(4) and 410 of the Code with such plan being taken into account.

(d)    "Valuation Date" shall mean, for purposes of computing the Top-Heavy Ratio, January 1 of each Plan Year.

(e)    "Top-Heavy Ratio" shall mean:

(1)    If an Employer maintains one or more defined benefit pension plans and the Employer has not maintained any defined contribution plans (including any Simplified Employee Pension Plan) which during the one-year period ending on the Determination Date(s) has or has had account balances, the Top-Heavy Ratio for this Plan alone or for any Aggregation Group is a fraction, the numerator of which is the sum of the present values of accrued benefits of all Key Employees as of the Determination Date(s) (including any part of any accrued benefit distributed in the one-year period ending on the Determination Date(s)), and the denominator of which is the sum of all accrued benefits (including any part of any accrued benefit distributed in the one-year period ending on the Determination Date(s)). Notwithstanding the foregoing, the phrase "five-year period" shall be substituted for the phrase "one-year period" in the preceding sentence for any distribution made for a reason other than separation from service, death, or disability.

(2)    If an Employer maintains one or more defined benefit plans and it maintains or has maintained one or more defined contribution plans (including any Simplified Employee Pension Plan) which during the one-year period ending on the Determination Date(s) has or has had any account balances, the Top-Heavy Ratio for any Aggregation Group is a fraction, the numerator of which is the sum of the present value of accrued benefits under the aggregated defined benefit plan or plans for all Key Employees, determined in accordance with (1) above, and the sum of account balances under the aggregated defined contribution plan or plans for all Key Employees as of the Determination Date(s), and the denominator of which is the sum of the present values of accrued benefits under the aggregated defined benefit plan or plans, determined in accordance with (1) above, for all Participants and the sum of the account balances under the aggregated defined contribution plan or plans for all Participants as of the Determination Date(s). The account balances under a defined contribution plan in both numerator and denominator of the Top-Heavy Ratio are adjusted for any distribution of an account balance made in the one-year period ending on the Determination Date(s), except that in the case of a distribution made for a reason other than severance from employment, death, or disability, this provision shall be applied by substituting the phrase "five-year period" for the phrase "one-year period."

(3)    For purposes of (1) and (2) above, the value of account balances and the present value of accrued benefits will be determined as of the most recent Valuation Date that falls within, or ends with, the 12 month period ending on the Determination Date, except as provided in Section 416 of the Code, for the first and second plan years of a defined benefit plan.  The account balances and accrued benefits of a Participant (1) who is not a Key Employee but who was a Key Employee in a prior year, or (2) who has not performed any service for any Employer maintaining the Plan at any time during the one-year period ending on the Determination Date will be disregarded.  The calculation of the Top-Heavy Ratio, and the extent to which distributions, rollovers, and transfers are taken into account will be made in accordance with Section 416 of the Code.  When aggregating plans, the value of account balances and accrued benefits will be calculated with reference to the Determination Date(s) that fall within the same calendar year.

**Section 13.03    Identification of Top-Heavy Plan**

For any Plan Year beginning after December 31, 1983, this Plan is a "Top-Heavy Plan" if any of the following conditions exist:

(a)    If the Top-Heavy Ratio for this Plan exceeds 60 percent and this Plan is not part of any required Aggregation Group or permissive Aggregation Group;

(b)    If this Plan is part of a required Aggregation Group (but which is not part of a permissive Aggregation Group) and the Top-Heavy Ratio for the Aggregation Group exceeds 60 percent; or

(c)    If this Plan is part of a required Aggregation Group and part of a permissive Aggregation Group and the Top-Heavy Ratio for the permissive Aggregation Group exceeds 60 percent.

**Section 13.04    Provisions of this Plan, if Top-Heavy**

Notwithstanding any other provision of the Plan Document, for any Plan Year in which this Plan is determined to be a Top-Heavy Plan:

(a)    Each Participant who is not a Key Employee and who has completed 870 Hours of Service shall accrue a benefit expressed as a life annuity commencing at Normal Retirement Age of not less than 2% of his highest average Compensation for the period of consecutive years not exceeding five for which the Participant had the highest compensation.

(b)    No additional benefit accruals shall be provided pursuant to (a) to the extent that the total accruals on behalf of the Participant attributable to Employer contributions will provide a benefit expressed as a life annuity commencing at Normal Retirement Age that equals or exceeds 20% of the Participant's highest average Compensation for the period of consecutive years not exceeding five for which the Participant had the highest Compensation.

112

(c)     For purposes of determining the period of consecutive years not exceeding five for which the Participant had the highest Compensation, a year shall not be taken into account if such year ends in a Plan Year beginning before January 1, 1984 or such year begins after the close of the last year in which the Plan was a Top-Heavy Plan.

(d)     The provisions of (a) above shall not apply to any Participant to the extent that the Participant is covered by any other plan or plans of an Employer under which the minimum allocation or benefit requirements applicable to this Top-Heavy Plan will be met in the other plan or plans.

**Section 13.05     Minimum Vesting Schedule for the Top-Heavy Plan**

(a)     For any Plan Year in which this Plan is a Top-Heavy Plan, the minimum vesting schedule set forth in (b) below shall apply to all benefits within the meaning of Section 411(a)(7) of the Code.  No reduction in vested benefits may occur in the event the Plan ceases to be a Top-Heavy Plan in a subsequent Plan Year.  Notwithstanding the foregoing, this Section does not apply to the accrued benefits of any Participant who does not have an Hour of Service after the Plan initially becomes a Top-Heavy Plan.  Such Participant's accrued benefits will be determined without regard to this Section.

(b)     For any Plan Year in which this Plan is a Top-Heavy Plan, the nonforfeitable interest of each Participant in employer-derived, accrued benefits shall be determined on the basis of the following:

| Years of Service | Percentage Vesting |
|---|---|
| 0-2 | 0% |
| 2-3 | 20% |
| 3-4 | 40% |
| 4-5 | 60% |
| 5-6 | 80% |
| 6 or more | 100% |

If this Plan becomes a Top-Heavy Plan and then ceases to be a Top-Heavy Plan, each Participant with not less than five years of service, must be permitted to elect, within a reasonable time after the above schedule reverts to the vesting schedule otherwise applicable, to have his nonforfeitable percentage computed under the above schedule.

**Section 13.06     Basis of Application of Top-Heavy Rules**

Each Employer shall be considered to maintain the Plan for the purposes of this Article.  The determination of Top-Heavy status under this Article shall be applied on an Employer-by-Employer basis.

**ARTICLE 14  AMENDMENT, TERMINATION AND GENERAL PROVISIONS**

**Section 14.01     Amendment**

113

The Plan Document may be amended at any time by the Trustees, consistent with the provisions of the Trust Document. However, no amendment shall be effective if it is deemed to decrease the accrued benefit (within the meaning of ERISA) of any Participant, except:

(a)     as necessary to establish or maintain the qualification of the Plan or the Trust Fund under the Code and to maintain compliance of the Plan with the requirements of ERISA to the extent permitted by the Internal Revenue Service, or

(b)     if the amendment meets the requirements of Section 302(c)(8) of ERISA and Section 412(c)(8) of the Code, and the Secretary of Labor has been notified of such amendment and has either approved it or, within 90 days after the date on which such notice was filed, the Secretary fails to disapprove; or

(c)     to the extent permitted under Section 305 of ERISA or any other applicable Section of ERISA or the Code.

## Section 14.02    Non-Reversion

In no event shall any of the corpus or assets of the Fund revert to the Employers or be subject to any claims of any kind or nature by the Employers, except for the return of erroneous contributions within the time limits prescribed by law and to the extent such return is approved by the Trustees. Nothing in this provision shall be construed to create an obligation on the part of the Fund, or right on the part of the Employer, to the return of erroneous contributions.

## Section 14.03    Limitation of Liability

The Plan has been established on the basis of an actuarial calculation which has established, to the extent possible, that the contributions will, if continued, be sufficient to maintain the Plan on a permanent basis, fulfilling the funding requirements of ERISA. Except for liabilities which may result from provisions of ERISA and the Code, nothing in this Plan shall be construed to impose any obligation beyond the obligation of the Employer to make contributions as stipulated in its Collective Bargaining Agreement with the Union.

There shall be no liability upon the Trustees individually, or collectively, or upon the Union to provide the benefits established by this Plan, if the Fund lacks the assets to make such payments.

## Section 14.04    Administrative Interpretations

The Trustees may adopt such administrative interpretations of this Plan as they consider necessary to carry out the intent and purpose of the Plan, and provide for effective administration thereof.

## Section 14.05    Termination

(a)     Right to Terminate – The Trustees are empowered to discontinue or terminate this Plan in whole or in part. The rights of all affected Participants to benefits accrued to the date of

termination, partial termination, or discontinuance, to the extent funded as of such date shall be nonforfeitable.

(b)    Allocation – In the event of termination, the assets then remaining in the Plan after providing for any administrative expenses, shall be allocated among the Pensioners, Beneficiaries, and Participants in accordance with the provisions of ERISA and related regulations.

## ARTICLE 15 HEALTH BENEFITS FOR PENSIONERS AND BENEFICIARIES

### Section 15.01    Retiree Health Benefits

The Plan offers certain limited retiree health benefits.  These retiree health benefits are ancillary benefits and do not in any way constitute a part of any Participant's Accrued Benefit and can be terminated or modified at any time.  Retiree health benefits are subordinate to the Plan's retirement benefits, and at no time shall the amount of contributions by Contributing Employers for health benefits plus any death benefit protection exceed 25% of the aggregate contributions made after such date other than contributions to fund Past Service Credit.  The retiree health benefits payable on or before December 31, 2009, including eligibility for such benefits, are determined under the terms of the Plan Document as then in effect.  Effective January 1, 2010, the retiree health benefits payable after December 31, 2009, including eligibility for such benefits, shall be determined in accordance with the provisions below.

(a)    Benefit

Provided that an Eligible Provider charges a Payee for Medicare supplemental coverage or Medicare health plan coverage (unless such charge was not required before January 1, 2010), the Plan shall pay a monthly benefit on behalf of each eligible Payee toward the cost of Medicare supplemental coverage or Medicare health plan coverage (or other retiree health coverage approved by the Trustees) actually obtained by the Payee through an Eligible Provider.  The amount of the monthly benefit shall be the lesser of $31 or the total monthly premium actually payable to the Eligible Provider for Medicare supplemental coverage or Medicare health plan coverage (unless such charge was not required before January 1, 2010) or such other retiree health coverage approved by the Trustees.  This amount may be changed or terminated at any time.  The payment of the monthly benefit shall be made directly to the Eligible Provider and not to the eligible Payee.  For purposes of this Article:

(1)    "Medicare supplemental coverage" means (A) coverage under a Medicare supplemental policy, as that term is defined in 42 USC §1395ss(g), or (B) coverage under a welfare benefit plan subject to the provisions of Title I of ERISA which the Trustees, in their sole discretion, have determined is sufficiently similar in nature to coverage under a Medicare supplemental policy, as so defined, and not otherwise foreclosed under the provisions of this subsection (a).

(2)    "Medicare health plan" means a Medicare health plan as described in the glossary on the website "Medicare.gov," including a Medicare Advantage Prescription Drug (MA-PD) Plan.

(3)    For any period before March 1, 2013, an "Eligible Provider" is limited to the Sheet Metal Workers' Health Plan and any multiemployer health plan that is maintained under a collective bargaining agreement between the Union and the employer, which offers Medicare supplemental coverage or Medicare health plan coverage to the Payee and has provided to the Plan any certification, acknowledgement or information as the Plan may require.  On and after March 1, 2013, an Eligible Provider is any plan or program, which has been approved by the Trustees and is listed in Appendix F.

(4)    "Payee" means a Pensioner whose last employment in the Sheet Metal Industry was under a collective bargaining agreement or other agreement between an employer and the Union and the Pensioner's spouse.

(b)    Limitations

The Plan's liability is expressly limited to providing the foregoing retiree medical benefit.  The Plan specifically does not offer or provide Medicare supplemental insurance, Medicare health plan coverage or any other type of medical insurance or any other coverage for actual treatment or care.  In no event, will a benefit under this Article be payable on more than two persons.  In addition, in the event that this benefit is overpaid, for any reason, it may be recouped from any future benefit payments, including pension payments.  Retiree medical benefits may be terminated or modified at any time.

(c)    Eligibility

(1)    For a Payee who becomes eligible to receive the retiree medical benefit provided in this Article, the Payee's eligibility shall commence on the first day of the first month on which all of the following conditions have been satisfied:

(A)    The Payee is eligible for Medicare Parts A and B;

(B)    The Pensioner has been, from the later of his Effective Date of Pension or January 1, 2002 until May 30, 2013, a member in good standing with the Union, or if the Participant died prior to his retirement before June 1, 2013, he was a member in good standing as of his date of death.  Effective June 1, 2013, the Pensioner must maintain membership in good standing as a "retired/disabled member" as provided in the SMWIA's constitution, and in no event will a "limited member" be considered a member in good standing on or after June 1, 2013 for eligibility purposes under this Article.  In the event the Participant dies prior to retirement after May 30, 2013, the Participant must have been a member in good standing of his Local Union as of his date of death and must have paid dues through his date of death at such rate as the Participant's Local Union may have established; however, in no event should this dues amount have been less than the amount of the per capita dues the SMWIA established under the SMWIA's constitution.

(C)    The Pensioner worked 3,500 Hours of Work in Covered Employment during the five (5) consecutive Calendar Years immediately preceding the Calendar Year of his Effective Date of Pension in a job classification that has a

116

Contribution Rate under a Collective Bargaining Agreement or other agreement, which is equal to or greater than the Contribution Rates listed below, or effective June 1, 2013, the Pensioner worked 3,500 Hours of Work in Covered Employment within the five (5) consecutive Calendar Years immediately preceding the date he or she was found disabled by the U.S. Social Security Administration (or Railroad Retirement Board), if the if the Pensioner is receiving a Full Disability Benefit:

| Effective Date | Construction Work | Non-Construction Work |
|---|---|---|
| January 1, 2002 | $0.72 | $0.36 |
| September 1, 2004 | $1.00 | $0.50 |
| September 1, 2005 | $1.10 | $0.55 |
| September 1, 2006 | $1.21 | $0.61 |
| September 1, 2007 | $1.34 | $0.67 |
| September 1, 2008 | $1.48 | $0.74 |
| September 1, 2009 | $1.63 | $0.82 |
| September 1, 2010 | $1.80 | $0.90 |
| September 1, 2011 | $1.85 | $0.95 |
| September 1, 2012 | $1.90 | $1.00 |
| September 1, 2013 | $1.95 | $1.05 |
| September 1, 2014 | $2.00 | $1.10 |
| September 1, 2015 | $2.05 | $1.15 |
| September 1, 2016 | $2.10 | $1.20 |
| September 1, 2017 | $2.15 | $1.25 |

(NOTE: The Contribution Rates listed above may be changed at any time).

(D)     The Participant has **not** performed at least one hour of employment on or after September 1, 1988, in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer. This provision can be obviated if he terminates the non-covered employment and earns a number of months of Pension Credit, as determined under Article 4, equal to the number of months during which he was previously employed for at least one (1) hour in the non-covered employment. A Participant's or Employee's opportunity to reestablish eligibility for this retiree medical benefit will be limited to his first return to Covered Employment; and

(E)     The Payee has made application for the retiree medical benefit on a form provided by the Fund and has presented satisfactory evidence that the foregoing conditions are satisfied.

(F)     For purposes of this Article, the Effective Date of Pension means the Effective Date of Pension under the Plan, or, if earlier, the date on which a Pensioner began to receive pension benefits under another multiemployer defined benefit pension plan that is, on the date the Participant retired under that plan, a party to the International Reciprocal Agreement for Sheet Metal Workers' Pension Funds or the Sheet Metal Workers' International

Association Master Reciprocal Agreement, or (ii) effective September 1, 2012, the date that the Pensioner was found to be disabled by the U.S. Social Security Administration (or Railroad Retirement Board), if the Pensioner is receiving a Full Disability Benefit.

(2)    A Payee's eligibility for retiree medical benefits ceases on the day on which one or more of the preceding conditions (or such other conditions as the Plan may impose) are no longer met.

(d)    Additional Provisions for Terminating Eligibility - Any Payee's eligibility for retiree medical benefits under this Article ceases:

(1)    if the Pensioner fails to remain a Union member in good standing from the later of his Effective Date of Pension or January 1, 2002 until the Pensioner's date of death; or

(2)    (i) if the Contribution Rate for the job classification in which the Pensioner last worked before his Effective Date of Pension fails to reach the required minimum Contribution Rate as shown in subsection (c)(1)(C) above (or such other rates as the Plan prescribes), but the Payee's retiree medical benefits will not terminate until January 1 of the subsequent Calendar Year;

(ii) however, subsection (i) above will not apply to a Pensioner whose most recent employment was in Non-Construction Work and the failure to pay the required Contribution Rate is the result of the last Contributing Employer ceasing affiliation with the Union or going out of business. Nothing in this provision limits the force and effect of subsections (c)(1)(D) or (d)(4); or

(3)    if the Pensioner ceases to qualify for a pension or the Pensioner's spouse is not entitled to a monthly pension benefit from the Plan after the Pensioner's death; or

(4)    if, after the Pensioner's Effective Date of Pension, he performs at least one hour of employment on or after September 1, 1988, in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer. This provision can be obviated if he terminates the non-covered employment and earns a number of months of Pension Credit, as determined under Article 4, equal to the number of months during which he was previously employed for at least one (1) hour in the non-covered employment.

(5)    In the event that any Payee is terminated, withdraws or otherwise loses eligibility for benefits under this Article, he/she may not reenroll or again receive this benefit, absent Board of Trustees approval. In the event that the Trustees approve reenrollment, they may condition it, and continued participation, on any terms deemed appropriate.

(e)    Transition Rule for Spousal Eligibility – Effective January 1, 2002, notwithstanding any provision of this Article to the contrary, in the event that a Payee is eligible for, and receiving (except for death), retiree health coverage under Article before his or her spouse, the initial eligibility rules in effect at the time of the earlier application will be applied.

118

**Section 15.02      Contributions to Code Section 401(h) Account**

The contributions required to support the retiree health benefits in this Article shall be determined by multiplying the number of individuals who are receiving the retiree health benefit by the amount of the subsidy, dividing that number by the average monthly income received by the Fund as determined no less than bi-annually, and rounding up to the next highest whole percentage number. Upon the Fund's receipt of the contributions, such contributions shall be allocated to a separate account.

**Section 15.03      Separate Account**

All amounts determined under Section 15.02 and the earnings thereon shall be maintained in a separate account.  The assets in the separate account may not be used for or diverted to any purpose other than to provide the benefits in this Article.  Similarly, no assets accumulated to provide retirement benefits may be used for or diverted to provide the retiree health benefits.  Any reserves accumulated in the separate account may be invested to the extent permitted in the Trust Document. The separate account shall be maintained in accordance with Code Section 401(h).

**Section 15.04      Termination**

In the event of termination of the retiree health benefits provided under this Article, the following rules will apply:

(a)      No Payee whose Effective Date of Pension is subsequent to the termination date will receive or be entitled to any retiree health benefits.

(b)      The assets accumulated in the separate account established to maintain the retiree health benefits under this Article, if any, shall be used to continue benefits to Payees who were eligible for them before the termination date so long as any assets remain.  However, if after the satisfaction of all benefits provided herein there remain any assets, such remainder shall be distributed in accordance with the requirements of Code Section 401(h).

**Section 15.05      Forfeitures**

In the event any individual's interest in the retiree health benefits is forfeited prior to the termination of the Plan, an amount equal to the amount of the forfeiture will be applied as soon as possible to reduce Employer contributions to fund the retiree health benefits under this Article.

## ARTICLE 16    DISABILITY BENEFITS

**Section 16.01      General**

This Article 16 subsumes and replaces sections 5.07 through 5.12 of the Plan Document in effect before November 1, 2004, and also governs a Participant's continued eligibility to receive Disability Benefits that were awarded under any prior edition of the Plan Document.  The provisions of this Article 16 are subject to, and may be superseded by, the Rehabilitation Plan and Schedules.

**Section 16.02    Types of Disability Benefits Payable**

(a)    The only type of Disability Benefit that may be applied for after November 30, 2007 is the Full Disability Benefit described herein.  Except as provided in Section 16.08, the monthly amount of a Full Disability Benefit that becomes effective under Section 16.05 on or after January 1, 2008 is equal to the monthly amount of the form of early retirement pension that the Participant would have been eligible to receive if he had attained age 55 and retired on the effective date of his Full Disability Benefit.  Any Disability Benefit that became effective before January 1, 2008 will continue to be paid as such, subject to the terms and conditions of this Article 16, as well as any future amendments.

(b)    The monthly amount of a Full Disability Benefit that became effective on or after January 1, 1994 but before January 1, 2008 (or is treated as such under Section 16.08), is equal to the monthly amount of the Normal Retirement Pension that the Participant would have been eligible to receive if he had attained Normal Retirement Age on the effective date of his Full Disability Benefit.

(c)    An "Industry-Related Disability Benefit," as further described in this Article 16, encompasses the benefit known under the terms of the Plan Document in effect before November 1, 2004 as an "Industry-Related Disability Pension" benefit. No applications for an Industry-Related Disability Benefit will be accepted after November 30, 2007. Participants applying for a Disability Benefit after November 30, 2007 must satisfy the eligibility criteria for a Full Disability under Section 16.03 below.  The monthly amount of the Industry-Related Disability Benefit is 10% greater than the monthly amount of the Standard Early Retirement Pension that the Participant would have been eligible to receive on the effective date of his Industry-Related Disability Benefit, except that it will be assumed the Participant had attained age 55 if his actual age on such date was under 55, or, if applicable, 10% greater than the monthly amount of the Special Early Retirement Pension that he would have been eligible to receive on the effective date of his Industry-Related Disability Benefit.  Notwithstanding the foregoing, the monthly amount of a Participant's Industry-Related Disability Benefit will never exceed the monthly amount that he would have received as a Full Disability Benefit if he had satisfied the eligibility requirements for a Full Disability Benefit on the effective date of his Industry-Related Disability Benefit.

(d)    A Disability Benefit that is based on a disability onset date before January 1, 1994 will be treated as an "Industry-Related Disability Benefit" for purposes of this Article 16, except as otherwise provided.  Under the terms of the Plan Document in effect before November 1, 2004, a Disability Benefit that was based on a disability onset date before January 1, 1994 was known as a "Disability Pension."

**Section 16.03    Eligibility for a Full Disability Benefit**

(a)    A Participant who applies for a Disability Benefit after November 30, 2007 will be eligible for a Full Disability Benefit that commences after December 31, 2007 if he satisfies all of the following criteria:

(1)    The U.S. Social Security Administration has found him to be disabled for the purposes of, and he is eligible to receive, Social Security Disability Insurance benefits, as verified by proof of approval for Social Security Disability Insurance

benefits from the U.S. Social Security Administration.  In addition, for disabilities that occur on or after January 1, 2007, a finding of full disability under the federal Railroad Retirement Act will suffice for all purposes under this Article 16 the same as a finding by the U.S. Social Security Administration;

(2)    He has not attained age 55;

(3)    He has at least 10 years of Pension Credit, including at least five (5) years of Future Service Credit;

(4)    He worked in Covered Employment for at least 435 hours in the 24-month period that immediately preceded the date that he was found to be disabled by the U.S. Social Security Administration; and

(5)    He has not at any time after September 1, 1988 performed any employment in the Sheet Metal Industry that was not covered by a collective bargaining agreement between the Union and the employer.

(b)    In the event that a Participant would be ineligible for a Full Disability Benefit pursuant to Section 16.03(a)(5), his ineligibility may be obviated if he terminates the non-covered employment described in Section 16.03(a)(5), returns to Covered Employment, and earns a number of months of Pension Credit, as determined under Article 4, equal to the number of months during which he was previously employed for at least one (1) hour in the non-covered employment described in 16.03(a)(5).   A Participant's or Employee's opportunity to reestablish eligibility for a Full Disability Benefit under this paragraph will be limited to his first return to Covered Employment.

(c)    If a completed application for a Full-Disability Benefit (including all required documentation and information) was received by the Fund before December 1, 2007, his eligibility will be governed by the terms of the Plan Document in effect at the time the application was submitted to the Fund.

**Section 16.04    Eligibility for an Industry-Related Disability Benefit**

(a)    A Participant will be eligible to commence receiving an Industry-Related Disability Benefit if a completed application for an Industry-Related Disability Benefit (including all required documentation and information) was received by the Fund on or before November 30, 2007, and the Trustees determine, in their sole and absolute discretion, that the Participant became totally and permanently unable to perform work in the Sheet Metal Industry, after January 1, 1994 but before December 1, 2007, as a result of a physical or mental health impairment, and at a time when:

(1)    He has not attained Normal Retirement Age;

(2)    He has at least 10 years of Pension Credit, including, for applications received on or after January 1, 2004, at least five (5) years of Future Service Credit;

(3)    He has worked in Covered Employment for at least 435 hours in the 24-month period that immediately preceded the date that the Trustees determine he became

121

totally and permanently unable to perform work in the Sheet Metal Industry as a result of a physical or mental health impairment; and

(4)     He has not at any time after September 1, 1988 performed any employment in the Sheet Metal Industry that was not covered by a collective bargaining agreement between the Union and the employer.

(b)     In the event that a Participant was ineligible for an Industry-Related Disability Benefit pursuant to Section 16.04(a)(4), his ineligibility may be obviated if, he terminated the non-covered employment of the type described in Section 16.04(a)(4) and then returned to Covered Employment and earned a number of months of Pension Credit before December 1, 2007, which is equal to the number of months during which he was previously employed for at least one (1) hour in the non-covered employment of the type described in Section 16.04(a)(4).   A Participant's or Employee's opportunity to reinstate eligibility for an Industry-Related Disability Benefit pursuant to this paragraph will be limited to his first return to Covered Employment.

(c)     Recipients of Disability Benefits who had a disability onset date before January 1, 1994 will be deemed to be receiving Industry-Related Disability Benefits for purposes of this Article 16, including Section 16.06 (governing the termination of  Disability Benefits), except that the amount of any such recipient's Disability Benefit is the same as the amount of a Full Disability Benefit, and the initial eligibility and effective date rules are found under the terms of the Plan Document in effect at the time the Participant separated from Covered Employment.  The Participant's ongoing eligibility for his Disability Benefit is governed by this Article 16.

(d) A Participant applying for, or receiving, an Industry-Related Disability Benefit may be required to submit to such health examinations and/or tests as requested by the Trustees.

(e) No new Industry-Related Disability Benefits will be awarded after December 31, 2007, except that the effective date of an Industry-Related Disability Benefit may be after December 31, 2007 by reason of the six-month waiting period in Section 16.05(b) below.

**Section 16.05    Effective Dates of Disability Benefits**

(a)     <u>Full Disability Benefit</u>.  Subject to all other applicable Plan Document terms, for any Participant who meets the requirements for a Full Disability Benefit, his Full Disability Benefit will be effective on the later of:  (i) the first day of the seventh (7th) month after the date upon which the U.S. Social Security Administration finds him disabled as provided under Section 16.03(a)(1); (ii) the first day of the seventh (7th) month after the last month in which the Participant worked in Covered Employment; or (iii) the first day of the month after a fully completed application for a Full Disability Benefit is received.

(b)     <u>Industry-Related Disability Benefit</u>.  Subject to all other applicable Plan Document terms, for any Participant who meets the requirements for an Industry-Related Disability Benefit, his Industry-Related Disability Benefit will be effective on the later of:  (i) the first day of the seventh (7th) month after the date upon which the Participant became totally and permanently unable to perform work in the Sheet Metal Industry, after January 1, 1994 but before December 1, 2007, as a result of a physical or mental health impairment, as

122

determined by the Trustees under Section 16.04(a); (ii) the first day of the seventh (7th) month after the last month in which the Participant worked in Covered Employment; or (iii) the first day of the month after a fully completed application for an Industry-Related Disability Benefit is received.

## Section 16.06   Termination of Disability Benefits

Continued receipt of Disability Benefits is subject to all the provisions below and all other applicable provisions of the Plan Document.

(a) As a condition of the ongoing receipt of Disability Benefits, a Disability Benefit recipient is required to provide, upon request, such proof as the Trustees determine to be necessary for purposes of verifying that the Participant has not recovered from the disability upon which his initial eligibility for Disability Benefits was based.

(b) A Full Disability Benefit recipient who is under Normal Retirement Age will be deemed no longer disabled for any purpose under the Plan Document, and his Disability Benefit will terminate under the following circumstances:

    (1) The Participant is deemed to have recovered from his disability pursuant to subsection (f)(1)(A) below.

    (2) The Full Disability Benefit recipient performs any work of any kind whatsoever, regardless of compensation, for an employer engaged in the Sheet Metal Industry and that employer is not signatory to a collective bargaining agreement between the Union and the employer. For this purpose, an employer may be the Full Disability Benefit recipient himself. Termination under this subsection will be effective the first day of the month in which the prohibited employment occurs; or

    (3) The Full Disability Benefit recipient performs any work whatsoever in Disqualifying Employment (as defined in Section 8.06(d)(1)).

(c) An Industry-Related Disability Benefit recipient who is under age 55 will be deemed no longer disabled for any purpose under the Plan, and his Disability Benefits will terminate under the following circumstances:

    (1) The Participant is deemed to have recovered from his disability pursuant to subsection (f)(1)(B) below.

    (2) The Industry-Related Disability Benefit recipient performs any work of any kind whatsoever, regardless of compensation, for an employer engaged in the Sheet Metal Industry and that employer is not signatory to a collective bargaining agreement between the Union and the employer. For this purpose, an employer may be the Industry-Related Disability Benefit recipient himself. Termination under this subsection will be effective the first day of the month in which the prohibited employment occurs; or

123

(3)    The Industry-Related Disability Benefit recipient performs any work in Disqualifying Employment (as defined in Section 8.06(d)(1)) that would result in a suspension of benefits under Section 8.06, if he were age 55 or over.

(d)    (1)    Effective for Plan Years beginning on or after January 1, 2005, an Industry Related Disability Benefit recipient who earns more than $35,000 from any employment whatsoever during a Plan Year in which he is under age 55 will be deemed no longer disabled for any purpose under the terms of the Plan Document, and his Industry-Related Benefit will terminate on December 31 of that Plan Year.

(2)    Effective for each Plan Year commencing on or after January 1, 2014, the annual $35,000 earnings limitation in paragraph (1) is adjusted to $40,000, in order to reflect cumulative percentage increases in the Consumer Price Index for Urban Wage Earners and Clerical Workers (CPI-W) (as reported by the Bureau of Labor Statistics in the United States Department of Labor) for each consecutive 12-month period beginning with the 3rd quarter of 2004 and ending with the 3rd quarter of 2013. That adjusted earnings limitation ($40,000) will be further increased for each Plan Year beginning on or after January 1, 2015 but before January 1, 2021, by the amount of any increase in the CPI-W (as reported by the Bureau of Labor Statistics in the United States Department of Labor) for the 12-month period ending with the 3rd quarter of the preceding year (e.g., for the 2015 Plan Year, the adjusted $40,000 earnings limitation will be increased by the amount of any percentage increase in the CPI-W from the 3rd quarter of 2013 through the 3rd quarter of 2014). The last such increase would be for the Plan Year commencing on January 1, 2020, and would reflect any change in the CPI-W from the 3rd quarter of 2018 through the 3rd quarter of 2019 (as reported by the Bureau of Labor Statistics in the United States Department of Labor ). The $35,000 earning limitation in paragraph (1) remains unaffected for Plan Years beginning before January 1, 2014, and nothing herein affects any Participant who was deemed no longer disabled and whose Industry-Related Disability Benefit was terminated because the Participant exceeded the $35,000 earnings limitation in paragraph (1) during any Plan Year commencing before January 1, 2014.

(e)    Notwithstanding subsection (d) above, a Disability Benefit recipient who is in pay status as of January 1, 2003, and who has a disability onset date before January 1, 1994, will be deemed no longer disabled for any purposes under the terms of the Plan Document if he earns more than $35,000 in any Plan Year. In that case, his Disability Benefit will terminate the later of December 31st of the year in which the earnings limitation is exceeded or December 31, 2003, unless he has attained Normal Retirement Age as of such date.

(f)    Recovery from Disability.

(1)    A Disability Benefit recipient who has not attained Normal Retirement Age will be deemed to have recovered from his disability and his Disability Benefit will terminate if:

(A) the Participant is receiving a Full Disability Benefit with a disability onset date after December 31, 1993, and he ceases to be eligible to receive Social Security Disability Insurance benefits; or

(B) the Participant is receiving an Industry-Related Disability Benefit, and the Trustees determine, in their sole and absolute discretion, that the Participant has ceased to be totally and permanently unable to work in the Sheet Metal Industry as a result of a physical or mental health impairment.

(2) The termination of Disability Benefits under subsection (f)(1)(A) above will take effect as of the first day of the month following the month in which the Participant first ceases to be eligible for Social Security Disability Insurance benefits. The termination of Disability Benefits under subsection (f)(1)(B) above will take effect as of the first day of the month following the month that the Participant first ceased to be totally and permanently unable to work in the Sheet Metal Industry as a result of a physical or mental health impairment, as determined by the Trustees.

(g) A Disability Benefit recipient who has attained Normal Retirement Age and who ceases to be disabled for any reason after such date will continue to receive his Disability Benefits as if it were a Normal Retirement Pension, but with no adjustment in the amount or form of his Disability Benefit. However, the continued receipt of Disability Benefits by any recipient who is age 55 or over, including a Disability Benefit recipient who has attained Normal Retirement Age, will be subject to the suspension of benefits rules in Section 8.06, as well as all other applicable terms and conditions specified in the Plan Document.

## Section 16.07    Effect of Termination of Disability Benefits on Future Benefits

If a Participant's Disability Benefit is terminated pursuant to Section 16.06, any pension to which he may be entitled under Article 5 will not be affected by the prior receipt of any Disability Benefits that the Participant was eligible to receive. However, in accordance with Section 8.05(a)(5), if a Participant received Disability Benefits after the time he ceased to be eligible to receive those benefits, the amount of those payments received after the loss of his eligibility will be recouped from the benefits subsequently payable to the Participant or his Beneficiary, unless the Participant has already repaid the Plan.

## Section 16.08    Conversion from an Industry-Related Disability Benefit to Full Disability Benefit and Full Disability Applications Received Before December 1, 2007

(a) A recipient of an Industry-Related Disability Benefit may elect, before January 1, 2010, to convert to a Full Disability Benefit if, and only if, he meets the requirements of (1) and (2) below on or before November 30, 2007, and the requirements of (3) below before January 1, 2010:

(1) the Industry-Related Disability Benefit recipient meets the eligibility requirements of Section 16.03(a) and his proof of approval for Social Security Disability Insurance (or Railroad Retirement Disability Insurance) benefits from the U.S. Social Security Administration (or Railroad Retirement Board) specifies a date of disability that coincides with the date on which the Participant became totally and

125

permanently unable to perform work in the Sheet Metal Industry as a result of a physical or mental health impairment, as determined by the Trustees;

(2)    he worked in Covered Employment for at least 435 hours in the 24-month period that immediately preceded the date that he was found to be disabled by the U.S. Social Security Administration (or Railroad Retirement Board); and

(3)    proof of approval for Social Security Disability Insurance (or Railroad Retirement Disability Insurance) benefits from the U.S. Social Security Administration (or Railroad Retirement Board) is provided to the Fund Office prior to the conversion.

(b)    Conversion before January 1, 2010 from an Industry-Related Disability Benefit to a Full Disability Benefit will be effective as follows:

(1)    For Participants who were found disabled before January 1, 2000 by the U.S. Social Security Administration (or Railroad Retirement Board), the conversion from an Industry-Related Disability Benefit to a Full Disability Benefit will take effect as of the month following the month in which proof of approval for Social Security Disability Insurance benefits from the U.S. Social Security Administration is received by the Fund Office.

(2)    For Participants who were found disabled by the U.S. Social Security Administration after December 31, 1999 and who have submitted proof of approval for Social Security Disability Insurance (or Railroad Retirement Disability Insurance) benefits from the U.S. Social Security Administration (or Railroad Retirement Board) to the Fund Office before January 1, 2005, the conversion from an Industry-Related Disability Benefit to a Full Disability Benefit will be retroactive to the effective date of the Industry-Related Disability Benefit.

(3)    For Participants whose proof of approval for Social Security Disability Insurance (or Railroad Insurance Disability) benefits from the U.S. Social Security Administration (or Railroad Retirement Board) is received by the Fund Office after December 31, 2004 but before January 1, 2010, the conversion from an Industry-Related Disability Benefit to a Full Disability Benefit will be effective on the later of: (i) the month following the month in which the Fund receives such proof of approval; or (ii) the effective date on which the Social Security Disability Insurance (or Railroad Retirement Insurance) benefits commence.

(c)    If a completed Full Disability Benefit (including all required documentation and information) was received by the Fund on or before November 30, 2007 but becomes effective under Section 16.05 after that date, the Full Disability Benefit will be treated as if it became effective before January 1, 2008 for purposes of Section 16.02(b) above.

## Table of Contents for Appendices

APPENDIX A.        Plan Provisions That Are No Longer Generally Applicable

APPENDIX B.        Plans That Have Merged With the Fund

APPENDIX C.        Funding Improvement Plan(s)/Schedule(s) and Rehabilitation Plan(s)/Schedule(s) For the Sheet Metal Workers' National Pension Fund

APPENDIX D.        Sheet Metal Workers' International Association Master Reciprocal Agreement

APPENDIX E.        Work for Certain Employers Not Treated as Covered Employment

APPENDIX F.        List of Eligible Providers/Programs Under Article 15

APPENDIX G.        Determining the Applicable Percentage for Plan Years Beginning On and After January 1, 2014.

APPENDIX PR:        Special Provisions Related to Puerto Rico Participants