**EXHIBIT F**



# SHEET METAL WORKERS' NATIONAL PENSION FUND

8403 ARLINGTON BOULEVARD, SUITE 300
FAIRFAX, VIRGINIA 22031-4601
TELEPHONE 703-739-7000

CERTIFIED MAIL

September 19, 2014

Robinson, Brog, Leinwand, Greene,
Genovese, & Gluck P.C.
Attn: Michael E. Green
875 Third Avenue
New York, NY 10022-0123

RE: Daniel E. Dymond
    Appeal Request – SSN XXX-XX-8664
    NPF Application # 044494

Dear Mr. Green:

This letter is to inform you that the Appeals Committee of the Sheet Metal Workers' National Pension Fund denied your appeal on behalf of Mr. Daniel E. Dymond at its meeting on held on September 16, 2014. The Committee determined that Mr. Dymond's employment with FAD Consulting Corporation meets the Plan's definition of Disqualifying Employment, and therefore deemed him not retired in accordance with Plan Section 5.01. Consequently, Mr. Dymond's 55/30 Pension should not have commenced and was subject to termination. The Committee also determined that, Mr. Dymond no longer qualifies for a 55/30 Pension in accordance with Plan Section 5.06(d) as Mr. Dymond's employment with FAD Consulting was found to be work in the Sheet Metal Industry, which was not covered by a Union collective bargaining agreement.

In making its determinations, the Committee reviewed U.S. Social Security Administration earnings data that indicated that Mr. Dymond was employed with FAD Consulting Corporation since 2001. The Committee also reviewed correspondence in the record wherein Mr. Dymond clearly states in a handwritten note to the Fund that "I had an independent company that assisted companies through verbal conversations on the methods used to do sheetmetal work....This was strictly a consulting company that gave others a fix for problems that are encountered in our industry." It was also noted that FAD Consulting Corporation is not signed to a collective bargaining agreement with the Union. The statements you offer concerning a fishing business and that your client's work was unrelated to the sheet metal industry is not supported by your client's submission.

The Committee based its determinations on the following Plan provisions:

Section 5.01 of the Plan states:

*This Article sets forth the eligibility conditions and benefit calculations for pension benefits. It also sets forth the calculation of amounts that form the basis of disability benefits, subject to the conditions of Article 16. The accumulation and retention of service credits for eligibility are found principally in Article 4. The benefit amounts are subject to reduction because of the Husband-and-Wife Pension or election of optional forms of benefit (Article 6).*

*A Participant's eligibility to receive benefits is conditioned upon his retirement, as determined below, and his submission of an application for benefits in accordance with Article 8. All benefits, including those set forth in Sections 5.02 through 5.06 and Article 16, are subject to the limitations set forth in Section 8.11 (relating to limitations imposed by Section 415 of the Code on maximum annual benefits), as well as the limitations, terms and conditions set forth in Article 12 of the Plan. A Participant is "retired" within the meaning of the Plan, if he has ceased working in Covered Employment, as well as in any Disqualifying Employment, and such cessation of work is intended to be permanent. A Participant also will be treated as "retired" within the meaning of the Plan, if he only performs work that would result in the suspension of benefits as Disqualifying Employment but for the provisions of Sections 8.06(b) or 8.06(c), and he otherwise satisfies the conditions of the Plan concerning post-retirement employment.*

Section 1.35 of the Plan states that:

*The term "Sheet Metal Industry" shall mean any and all types of work covered by collective bargaining agreements to which the Union and/or any Local are a party; or under the trade jurisdiction of the Union, as that trade jurisdiction is described in the SMWIA's constitution; or in a related building trade; or any other work to which a sheet metal worker has been assigned, referred, or can perform because of his skills and training as a sheet metal worker.*

The Committee noted that Section 1.35 states that the term "Sheet Metal Industry" shall mean any and all types of work *"under the trade jurisdiction of the Union, as that trade jurisdiction is described in the SMWIA's constitution"*. The Committee reviewed Article 1 Sections 5(a) and 5(m) of the SMWIA Constitution which provides the following provisions:

*SEC. 5(a). This Association has established and claims full jurisdiction over the estimating, project management, manufacture, fabrication, assembling, handling, erection, hanging, application, adjusting, alteration, repairing, dismantling, reconditioning, commissioning, testing, servicing and maintenance of all HVACR and sheet metal work, all working drawings or sketches (including those taken from original architectural and engineering drawings and sketches) used in fabrication and erection; said jurisdiction to include all flat, formed in brake or press, corrugated or ribbed sheets and all rolled, drawn, pressed,*

*extruded, stamped or spun tubing, shapes and forms of plain or protected steel, iron, tin, copper, brass, bronze, aluminum, zinc, lead, German silver, Monel metal, stainless or chrome steel or any and all other alloy metals, ferrous and non-ferrous, together with all necessary or specified reinforcements, brackets, hangers, straps, plates, tees, angles, channels, furring, supports, anchors, rods, chains, clips, frames, ornaments, trimmings, grilles, registers, castings, hardware and equipment, mechanical or otherwise, regardless of gauge, weight or material when necessary or specified for use in direct connection with or incidental to the manufacture, fabrication, assembling, handling, erection, hanging, application, adjusting, alteration, repairing, dismantling, reconditioning, testing and maintenance of all sheet metal work; said jurisdiction to also include the fastening of any and all materials and equipment specified in this jurisdictional claim, whether same be applied to wood, steel, stone, brick, concrete or other types of structure, base or materials, with full jurisdiction over the making of all connections, attachments, seams and joints, whether nailed, screwed, bolted, riveted, cemented, poured, wiped, soldered, brazed, welded or otherwise fastened and attached, and all drilling and tapping in connection with or incidental thereto.*

*SEC. 5(m). Any and all types of sheet metal work, HVACR (heating, ventilating, air conditioning and refrigeration) design, building information modeling (BIM), fabrication, installation, service, and operation in connection with or incidental to direct, indirect or other types of heating, ventilating, air conditioning, refrigeration, and cooling systems, regardless of materials used, building environmental systems, including risers, under floor systems, stacks, ducts, fittings, retrofitting, dampers, louvers, casings, recess boxes, outlets, radiator enclosures, exhausts, ventilators, frames, grilles, registers, diffusers, cabinets, plenums, fans and motors, air washers, filters, air brushes, housings, air conditioning chambers, all setting, hanging and start up of air conditioning units, unit heaters, or air-vapor systems and condensing units, evaporator coils, heat pumps, direct digital controls, building environmental sensor systems, air handling and air treating systems, all testing, adjusting and balancing, commissioning and retrocommissioning of all building environmental systems, including air, hydronic, electrical and sound regardless of material used including all equipment and/ or reinforcements and support systems in connection therewith including all smog control, filtration and cleaning of au systems and equipment, air pollution and recovery systems and component parts thereof, including setting of same by any method; any and all work in connection with and/or incidental to the manufacture, fabrication, handling, erection, installation, maintenance and repair of solar energy systems, including but not limited to residential, commercial, institutional and industrial installation; all installation and removal of lagging, all lagging over insulation and all duct lining; testing, adjusting and balancing and the commissioning of all air-handling, commissioning, retro commissioning, and balancing of all au, hydronic, electrical and sound equipment and duct systems; and any and all other sheet metal work and equipment, mechanical, service, or otherwise, in connection with or incidental to the proper installation, servicing and operation of said systems, and all duct and mechanical connections to and from same.*

Section 8.06(d)(1) of the Plan states:

(1) *When used in Section 8.06(a) and 8.06(b), the term "Disqualifying Employment" mean:*

    (A)    *employment with any Contributing Employer;*

    (B)    *employment with any employer in the same or related business as any Contributing Employer;*

    (C)    *self-employment in the same or related business as a Contributing Employer;*

    (D)    *employment or self-employment in any business which is under the jurisdiction of the Union; or*

    (E)    *employment in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer*

The Committee further noted that Section 5.01 of the Plan states that "*A Participant is "retired" within the meaning of the Plan, if he has ceased working in Covered Employment, as well as in any Disqualifying Employment, and such cessation of work is intended to be permanent.*", and that under Sections 8.06 (d) (1) (B) and 8.06 (d) (1) (E), the term Disqualifying Employment means "*employment with any employer in the same or related business as a Contributing Employer*" and "*employment in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer*" respectively.

The Committee also reviewed Plan Section 5.06(d) (55/30 – Effect of Non-Covered Employment) noting that it states that "*if a Participant or Employee, or former Participant or Employee, at any time after his Contribution Date performed or performs at least one (1) hour of employment on or after September 1, 1988 in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer, the Participant will not be eligible to retire pursuant to the provisions of this Section 5.06.*"

After reviewing the record, and consideration of the arguments made in your appeal the Committee determined that Mr. Dymond's employment with FAD Consulting Corporation was in Disqualifying Employment as defined in Sections 8.06(d) (1) (B) and 8.06(d) (1) (E) of the Plan because it is employment with an employer in the same or related business as a Contributing Employer (i.e., Sheet Metal Contractors, CJ HVAC Consulting LLC, S S M Industries, Inc.), and the work was employment in the Sheet Metal that is not covered by a collective bargaining agreement between the Union and the employer. In light of these

findings, the Committee determined that at the time Mr. Dymond made application for benefits in February of 2003 he:

- was not retired in accordance with Plan Section 5.01
- even had he not been engaged in Disqualifying Employment he did not qualify a 55/30 Pension in accordance with Plan Section 5.06(d) due to his work in non-signatory employment, and would have been subject to early retirement delays as provided under Plan Section 5.05.

The Committee considered your averment that Mr. Dymond's activities/association with FAD was solely to facilitate the payment of the purchase price for his interest in Blue Diamond. The Committee found this unpersuasive. The SALES PURCHASE AGREEMENT makes no recitation to this effect. In fact, it states

> The parties acknowledge that BDSM intends to enter into a certain consulting agreement (the "Consulting Agreement") with an entity to be formed called F.A.D. Consulting Corp. ("Consultant") under which Consultant will agree to make the services of Seller and other employees of Consultant available to BDSM in consideration for certain consulting payments.

By its terms, your client would provide consulting services to a sheet metal contractor and Contributing Employer and hence working in the "same or related business" as a Contributing Employer. As to the alleged tax advantages, the payment is subject to social security and other taxes, rather than what might be expected, capital gains treatment.

The Committee also concluded that Mr. Dymond must reimburse the Fund for all pension payments he received through April 2014 totaling $437,510 in pension and COLA benefits and $806 for 401h subsidy payments made towards the cost of his supplemental insurance with SMW+. Mr. Dymond remains eligible for a pension provided he is deemed retired in accordance with Plan Section 5.01 when he makes application for benefits; however, the Fund will recover the overpayments by withholding 100% of his pension payments at that time.

Please be advised that the Committee carefully considered your request and was aware of Mr. Dymond's circumstances; however, the Trustees administer the Plan according to its terms.

Finally, please be advised that the decision of the Appeals Committee is final and binding. No further appeals are available. You may bring an action under Section 502(a) of ERISA to challenge the determination of your appeal. Further, you are entitled to receive, upon written request and free of charge, reasonable access to, and copies of all documents, records, and other information relevant to your claim for benefits. Please note, however, that the time within which you bring a suit may have passed or will pass in the near future. An action at law or equity against the Plan or Trustees with respect to a claim for benefits must be filed before the earlier of: (1) the 91st day after the claim is denied by the Appeals Committee; or (2) the expiration of any other applicable limitations period.

I regret a more favorable response is not possible. If you have any further questions please contact me at 1-800-231-4622 (ext. 768).

Thank you,

Alex Dyer
Legal Division

cc: Daniel E. Dymond
    Local Union # 028