**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

DANIEL E. DYMOND,

Plaintiff,

               - against -

JOSEPH SELLERS, JR., RON PALMERICK,
JOHN BOSKE, BRUCE STOCKWELL,
BRUCE WORD, PHIL MEYERS, RICH
McCLEES and THOMAS SZYMCZAK,
and/or their successors, in their capacity as
present and former Trustees of the SHEET
METAL WORKERS' NATIONAL PENSION
FUND, and the SHEET METAL WORKERS'
NATIONAL PENSION FUND,

Defendants.

-----------------------------------------------------------X

Case Number: 2:15-cv-01938-ADS-ARL

**DEFENDANTS' AMENDED ANSWER
TO COMPLAINT, DEFENSES, AND
COUNTERCLAIM**

       DEFENDANTS, Joseph Sellers, Jr. ("Trustee Sellers"), Ron Palmerick ("Trustee Palmerick"), John Boske, Bruce Stockwell ("Trustee Stockwell"), Bruce Word , Phil Meyers ("Trustee Meyers"), Rich McClees ("Trustee McClees") and Thomas Szymczak ("Trustee Szymczak"), and/or their successors, in their capacity as present and former Trustees of the Sheet Metal Workers' National Pension Fund ("Board of Trustees" or "Trustees") and the Sheet Metal Workers' National Pension Fund ("NPF" or "Fund") (collectively, "Defendants"), by their counsel, hereby amend and resubmit, with Plaintiff's consent, their answer and response to the sequentially numbered Paragraphs of the Complaint filed by Plaintiff Daniel Dymond ("Daniel Dymond" or "Plaintiff"), and counterclaim, as follows:

## I.     PARTIES

      1.     Defendants, upon information and belief, admit the allegations in Paragraph 1 of the Complaint.

2.    Paragraph 2 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants admit that the NPF is a defined benefit plan and a multiemployer plan within the meaning of Sections 3(35) and 3(37)(A) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"),  29 U.S.C. §§ 1002(35) and 1002(37)(A), respectively; admit that the NPF provides pension and ancillary benefits and covers employees in the unionized segment of the sheet metal industry across the United States of America, including the Eastern District of New York; and deny the remaining allegations in Paragraph 2 of the Complaint.  In further response, Defendants state that the NPF is administered by the Board of Trustees, which is comprised of four (4) labor Trustees and four (4) management Trustees.  Defendants also state that, in accordance with the NPF's Plan Document and Trust Document, the Board of Trustees has duly delegated to a committee comprised of one (1) labor Trustee and one (1) management Trustee ("Appeals Committee"), the sole and absolute discretion to apply and interpret the Plan Document and determine, among other things, the entitlement to or amount of a pension from the NPF.

3.    Paragraph 3 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants admit that Trustee Sellers is a labor Trustee on the Board of Trustees of the NPF; incorporate by reference the last two sentences in Defendants' response to Paragraph 2 of the Complaint; and deny the remaining allegations in Paragraph 3.  In further response, Defendants state that Trustee Sellers is not, and was not, a member of the Appeals Committee, which had the sole discretionary authority to decide Plaintiff's appeal.

4.    Paragraph 4 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants admit that Trustee Palmerick is a management Trustee on the Board of Trustees; incorporate by reference the last two sentences in Defendants' response to Paragraph 2 of the Complaint; and deny the remaining allegations in Paragraph 4.  In further response,

Defendants state that Trustee Palmerick is a member of the Appeals Committee, and was a member of the Appeals Committee at the time it decided Plaintiff's appeal.

5.      Paragraph 5 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants admit that John Boske was a labor Trustee on the Board of Trustees; incorporate by reference the last two sentences in Defendants' response to Paragraph 2 of the Complaint; and deny the remaining allegations in Paragraph 5.  In further response, Defendants state that John Boske was a member of the Appeals Committee at the time it decided Plaintiff's appeal.  Michael Coleman ("Trustee Coleman") replaced John Boske on the Board of Trustees, effective August 1, 2015, and Trustee Coleman also replaced John Boske on the Appeals Committee.

6.      Paragraph 6 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants admit that Trustee Stockwell is presently a management Trustee on the Board of Trustees; incorporate by reference the last two sentences in Defendants' response to Paragraph 2 of the Complaint; and deny the remaining allegations in Paragraph 6 of the Complaint. In further response, Defendants state that Trustee Stockwell is not, and was not, a member of the Appeals Committee, which had the sole discretionary authority to decide Plaintiff's appeal.

7.      Paragraph 7 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants admit that Bruce Word was a labor Trustee on the Board of Trustees; incorporate by reference the last two sentences in Defendants' response to Paragraph 2 of the Complaint; and deny the remaining allegations in Paragraph 7 of the Complaint. In further response, Defendants state that Patrick Landgraf ("Trustee") replaced Bruce Word on the Board of Trustees, effective August 1, 2015, and Bruce Word was not, and Trustee Landgraf is not, a member of the Appeals Committee, which had the sole discretionary authority to decide Plaintiff's appeal.

28169341.2

8.      Paragraph 8 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants admit that Trustee Meyers is presently a management Trustee on the Board of Trustees; incorporate by reference the last two sentences in Defendants' response to Paragraph 2 of the Complaint; and deny the remaining allegations in Paragraph 8 of the Complaint.  In further response, Defendants state that Trustee Meyers is not, and was not, a member of the Appeals Committee, which had the sole discretionary authority to decide Plaintiff's appeal.

9.      Paragraph 9 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants admit that Trustee McClees is presently a labor Trustee on the Board of Trustees; incorporate by reference the last two sentences in Defendants' response to Paragraph 2 of the Complaint; and deny the remaining allegations in Paragraph 9 of the Complaint.  In further response, Defendants state that Trustee McClees is not, and was not, a member of the Appeals Committee, which had the sole discretionary authority to decide Plaintiff's appeal.

10.      Paragraph 10 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants admit that Trustee Szymczak is presently a management Trustee on the Board of Trustees; incorporate by reference the last two sentences in Defendants' response to Paragraph 2 of the Complaint; and deny the remaining allegations in Paragraph 10 of the Complaint.  In further response, Defendants state that Trustee Szymczak is not, and was not, a member of the Appeals Committee, which had the sole discretionary authority to decide Plaintiff's appeal.

## II.    JURISDICTION AND VENUE

11.      Paragraph 11 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 11 of the

28169341.2

Complaint except admit that Plaintiff purports to allege that he brings this action pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B); Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2); and Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3); admit that Plaintiff purports to allege jurisdiction is founded upon 28 U.S.C. § 1131 and provisions of ERISA, 29 U.S.C. § 1001, et seq., and without limitation subsection 1132(e) and (f); and admit that Plaintiff also purports to allege that this Court has jurisdiction pursuant to 29 U.S.C. § 1332. In further response, Defendants deny any implication that any of the Defendants violated ERISA.

12.    Paragraph 12 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 12 of the Complaint, except admit that Plaintiffs purport to allege that venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) and 29 U.S.C. § 1132(e)(2).

## III.    FACTS

### A. The Sheet Metal Workers' National Pension Fund

13.    Paragraph 13 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 13 of the Complaint, except admit that the NPF is an employee pension benefit plan within the meaning of Section 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A); state that the NPF is a defined benefit plan within the meaning of Section 3(35) of ERISA, 29 U.S.C. § 1002(35); admit that the NPF is a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A); admit that the NPF is administered from its headquarters in Fairfax, Virginia (not in Alexandria, Virginia); and admit that the NPF provides pension and ancillary benefits to eligible Participants, including eligible Participants in the Eastern District of New York.

28169341.2

14.     Defendants admit that the NPF provides pension and ancillary benefits to eligible Participants and Beneficiaries in accordance with the NPF's Plan Document; Defendants state that the NPF's Plan Document speaks for itself; and Defendants deny any allegations in Paragraph 14 that are inconsistent with the terms of such Plan Document.

15.     Defendants deny the allegations in Paragraph 15 of the Complaint, including those in footnote 1, except admit that the NPF's Plan Document was amended and restated in or about September 16, 2014; state that a true and correct copy of the Sheet Metal Workers' National Pension Fund Plan Document (2014 Amended & Restated Edition), which incorporates all amendments through September 16, 2014 (the "Plan Document" or 'Plan"), is attached as Exhibit A to the Complaint, without Appendices; and Defendants state that the Plan Document speaks for itself.

16.     In response to the allegations in Paragraph 16 of the Complaint, Defendants state that Section 2.01 of the Plan Document speaks for itself, and Defendants deny any allegations in Paragraph 16 of the Complaint that are inconsistent with Section 2.01 of the Plan Document.

17.     In response to the allegations in Paragraph 17 of the Complaint, Defendants understand Plaintiff to be characterizing terms described in a prior version or versions of the Plan Document and/or Appendix A of the Plan Document.  Defendants state that any prior version of the Plan Document speaks for itself; state that Appendix A of the Plan Document speaks for itself; and Defendants deny any allegations in Paragraph 17 of the Complaint that are inconsistent with Appendix A of the Plan Document or any prior version of the Plan Document.

**B.  Fund's Rules Regarding "Retirement" and Providing for a 55/30 Early Retirement Pension**

18.     In response to the allegations in Paragraph 18 of the Complaint, Defendants state that

Section 5.01 of the Plan Document speaks for itself and denies any allegations in Paragraph 18 of the Complaint that are inconsistent with the Section 5.01 of the Plan Document.  In further response, Defendants acknowledge that a Participant's eligibility to receive benefits from the NPF is conditioned upon, among other things, his or her retirement, and acknowledges that a Participant will not be treated as "retired" within the meaning of the Plan Document unless he or she has ceased working in Covered Employment, as well as in any Disqualifying Employment (and such cessation is intended to be permanent).

19.     In response to the allegations in Paragraph 19 of the Complaint, Defendants admit that the term "Covered Employment" is defined in Section 1.14 of the Plan Document; Defendants state that such provision speaks for itself; and Defendants deny any allegations in Paragraph 19 of the Complaint that are inconsistent with Section 1.14 of the Plan Document.

20.     In response to the allegations in Paragraph 20 of the Complaint, Defendants admit that Article 1 of the Plan Document contains various definitions, which definitions speak for themselves; Defendants admit that the Plan Document does not explicitly define the term "work"; and Defendants deny the remaining allegations in Paragraph 20 of the Complaint.

21.     Defendants deny the allegations in Paragraph 21 of the Complaint, except admit that the NPF provides different types of Early Retirement Pensions; Defendants state that the different types of Early Retirement Pensions are contained in the Plan Document; Defendants state further that the different types of Early Retirement Pensions require, among other things, a Participant to have attained age 55 and earned a certain amount of credited service; and Defendants state that the different types of Early Retirement Pensions speak for themselves.

22.     Defendants admit that a "55/30 Pension" is one type of Early Retirement Pension provided under the Plan Document; note that Section 5.09(a)(1) of the Plan Document contains eligibility criteria

for a "55/30 Pension"; state that Section 5.09(a)(1) of the Plan Document speaks for itself; and Defendants deny any allegations in Paragraph 22 of the Complaint that are inconsistent with Section 5.09(a)(1) of the Plan Document.

23.    In response to the allegations in Paragraph 23 of the Complaint, Defendants state that Section 5.09(d)(1) of the Plan Document speaks for itself and deny any allegations in Paragraph 23 of the Complaint that are inconsistent with that provision.

24.    In response to the allegations in Paragraph 24 of the Complaint, Defendants state that Section 5.09(d)(2) of the Plan Document speaks for itself and deny any allegations in Paragraph 24 of the Complaint that are inconsistent with that provision.

25.    In response to the allegations in the first sentence of Paragraph 25 of the Complaint, Defendants state that Section 5.09(d)(2) of the Plan Document speaks for itself and deny any allegations in the first sentence of Paragraph 25 of the Complaint that are inconsistent with Section 5.09(d)(2) of the Plan Document.  Defendants deny the allegations in the second and third sentences of Paragraph 25 of the Complaint.  In further response, Defendants state that the waiver provision in Section 5.09(d)(2) does not, and was not intended to, apply when a Participant continues to perform both work in Covered Employment and the type of work described in Section 5.09(d)(1) of the Plan Document (i.e., the work described in Section 5.09(d)(1) must cease and be replaced by work in Covered Employment rather than being worked simultaneously with work in Covered Employment).

## C. Fund's Rules Regarding Overpayments, Recoupment and Offsets

26.    Defendants deny the allegations in Paragraph 26 of the Complaint; state that the Plan Document speaks for itself; and state that the overpayments made to Daniel Dymond did not result from any clerical error but instead resulted from misrepresentations Plaintiff made regarding his employment in

8

the Sheet Metal Industry and in Disqualifying Employment (i.e., his employment with FAD Consulting Corp. ("FAD Consulting")).  In further response, Defendants note that the Plan Document contains a number of provisions pertaining to the recoupment of overpayments, including but not limited to Section 8.05(a)(5).

27.    Defendants deny the allegations in the first sentence of Paragraph 27 of the Complaint, and note that the offset provision in Section 8.05(a)(5) of the Plan Document applies to the recoupment of any payment by the NPF in excess of the correct amount, regardless of the reason for the overpayment (e.g., clerical error, Participant misrepresentation, etc.).  In response to the remaining allegations in Paragraph 27, Defendants state that the Plan Document, U.S. Treasury Regulations, and "denial letters" referenced in Paragraph 27 speak for themselves; deny any allegations in Paragraph 27 that are inconsistent with the provisions of the Plan Document, U.S. Treasury Regulations, or "denial letters" that are cited, or referred to, by the Plaintiff in Paragraph 27; deny the allegations in the fourth sentence of Paragraph 27, and Defendants state that the last full sentence in Paragraph 27 contains conclusions of law to which no response is required, and deny any allegations in that sentence to which a response is required.  In further response, Defendants state that the recoupment of overpayments by offset or actuarial adjustment (or a combination of both) is a reasonable arrangement; and Defendants note that, on or about April 11, 2003, Daniel Dymond agreed to the offset arrangement in his signed Retirement Declaration and Acknowledgement (Exhibit C to Plaintiff's Complaint) when he acknowledged and declared the following:

> If I am overpaid
>
> Finally, I acknowledge that it is possible that my monthly benefit may be overpaid.  In that event, I will be required to reimburse the Fund and the Fund may offset an amount necessary to recover the overpayment from future monthly payments.

Doc. 1-3 at page 2.

28.    In response to the allegations in Paragraph 28 of the Complaint, Defendants state that the

Plan Document, including Section 8.06(d), speaks for itself, and deny any allegations in Paragraph 28 that are inconsistent with the Plan Document, including Section 8.06(d).

29.    In response to the allegations in Paragraph 29 of the Complaint, Defendants state that the Plan Document, including Section 8.06(g), speaks for itself, and deny any allegations in Paragraph 29 of the Complaint that are inconsistent with the Plan Document, including Section 8.06(g).  In further response, Defendants note that Section 8.06(g)(2) of the Plan Document provides, in relevant part, that the 25 percent limitation does not apply to deductions for overpayments attributable to work in Disqualifying Employment before the Participant attained Normal Retirement Age; and Defendants state that Daniel Dymond had not attained Normal Retirement Age (age 65) during the term of his employment with FAD Consulting, which was reported to be from 2001 through 2008 in an Itemized Statement of Earnings from the U.S. Social Security Administration ("SSA").

**D.  Review Process**

30.    In response to the allegations in Paragraph 30 of the Complaint, Defendants state that the Plan Document, including Section 8.03, speaks for itself; and deny any allegations that are inconsistent with the Plan Document, except Defendants admit that the Plan Document gives the Trustees the sole discretionary power and authority to, among other things, determine the application and interpretation of the Plan Document and the entitlement to or amount of any pension.  In further response, Defendants note that the Trustees have delegated the aforementioned discretionary power and authority to an Appeals Committee comprised of one (1) labor Trustee and one (1) management Trustee.  Defendants state that as a result of such delegation, the Appeals Committee has, under the terms of the Plan Document, the sole discretionary power and authority to, among other things, determine the application and interpretation of the Plan Document and the entitlement to or amount of any pension, and the Appeals Committee's determinations are final and binding on all persons.

31.    In response to the allegations in Paragraph 31 of the Complaint, Defendants state that the

Plan Document, including Section 8.04, speaks for itself and deny any allegations in Paragraph 31 that are inconsistent with the Plan Document, including Section 8.04.  In further response, Defendants reiterate that the decisions of the Appeals Committee are final and binding.

**E.  Plaintiff's Work History**

32      Paragraph 32 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants admit Plaintiff was a participant in the Fund within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), state that such provision speaks for itself, and deny any allegations that are inconsistent.

33.      Defendants admit, upon information and belief, the allegations in Paragraph 33 of the Complaint.

34.      Defendants admit, upon information and belief, the allegations in Paragraph 34 of the Complaint.

35.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint and therefore deny those allegations, except Defendants admit that as of March 2003, Plaintiff had in excess of 32 years of Future Service Credit, and the Fund's records show that Plaintiff's Local Union was SMW Local 55, which later became SMW Local No 28.

36.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Complaint and therefore deny those allegations, except Defendants admit, upon information and belief, that Plaintiff was at all relevant times a stockholder of Blue Diamond Sheet Metal ("Blue Diamond"); and Defendants admit that Blue Diamond was at all relevant times a Contributing Employer.

37.      Defendants deny the allegations in Paragraph 37 of the Complaint, except admit that Plaintiff continued to be an active Participant in the Fund after he became a stockholder in Blue Diamond and ceased to be an active Participant in the Fund in or about March 2003.  In further response,

Defendants note that the Fund is a defined benefit pension plan, rather than an individual account plan, and the contributions made to the NPF are used to fund the actuarial accrued liability of all Participants and are not made "on behalf of" any one Participant.  Defendants state further that Plaintiff was not "retired" for purposes of the Plan Document at the time he ceased actively participating in the Fund because he continued to be employed by FAD Consulting.

38.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Complaint and therefore deny those allegations, except Defendants admit that in or about 1990, Blue Diamond applied for Special Class participation.

39.     Defendants deny the allegations in Paragraph 39 of the Complaint.  In further response, Defendants note that the Fund does not permit, and never has permitted, Participant contributions to the Fund (the NPF's pension benefits are funded by Employer contributions rather than Participant contributions).

40.     Defendants deny the allegations in Paragraph 40 of the Complaint, except admit that Blue Diamond was a Contributing Employer and made contributions to the Fund for Daniel Dymond's Hours of Work in Covered Employment, which resulted in additional credited service for Daniel Dymond, including Pension Credit.

41.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint and therefore deny those allegations, except that Defendants admit Daniel Dymond entered into a Share Purchase Agreement dated as of January 1, 2001 with Robert Lawless, Douglas Robert Belz, Stephen Dimegio, and James Dvorak, which document is attached as Exhibit E to the Complaint (Doc. 1-5) and  speaks for itself; Defendants admit, upon information and belief, that Plaintiff continued to be employed by Blue Diamond from 2001-2003; and Defendants state that an SSA earning report showed that Plaintiff also was employed by FAD Consulting during the same period and showed that FAD Consulting paid Plaintiff wages of at least $170,000 in 2001, $170,000 in

28169341.2

2002, and $60,000 in 2003.

42.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Complaint and therefore deny those allegations, except admit that Section 2 of the Share Purchase Agreement specifies the purchase price for Plaintiff's 20 shares of the common stock of Blue Diamond and the payment terms (including the duration of payments).  See Doc. 1-5 at pages 8, 9, and 10.

43.     Defendants deny the allegations in Paragraph 43 of the Complaint, except admit, upon information and belief, that Plaintiff entered into both a Consulting Agreement and an Agreement Not to Compete, which speak for themselves.  In further response, Defendants note that the Agreement Not to Compete (but not the Consulting Agreement) was attached to the letter that Plaintiff's attorney filed in support of Daniel Dymond's appeal, which was filed with the Court as Exhibit E to the Complaint.  See Doc.1-5.  Defendants note further that the Agreement Not to Compete did not completely preclude Plaintiff or FAD Consulting from competing with Blue Diamond, but rather required Blue Diamond's written consent before engaging or providing sheet metal design, contracting or engineering services within a 50-mile radius of Blue Diamond's principal office.  See Doc 1-5 at page 17.  Further, the allegation that Daniel Dymond had no intention of staying in the Sheet Metal Industry in any capacity is belied by the fact that Plaintiff continued working for Blue Diamond for two (2) years after the sale of his shares (see Paragraph 41 of the Complaint) and the SSA earning report showed that Plaintiff also was employed with FAD Consulting during the same period.

44.     Defendants deny the allegations in Paragraph 44 of the Complaint.  In further response, Defendants state that section 2 of the Share Purchase Agreement described the purchase price, and specified the payment terms, but contained no mention of additional payments by the individual purchasers to FAD Consulting.  See Doc 1-5 at pages 8 and 9.  Further, Defendants note that Section 8 of the Share Purchase Agreement did include an acknowledgment by the parties that Blue Diamond intended

13

to enter into a Consulting Agreement with an entity to be formed called F.A.D. Consulting Corp. (referred to therein as the "Consultant"); however, it described FAD Consulting's purpose quite differently than in Paragraph 44 of the Complaint: "… Consultant will agree to make the services of [Daniel Dymond] and other employees of Consultant available to [Blue Diamond] in consideration for certain consulting payments." Doc. 1-5 at page 12.

45.     Defendants deny the allegations in Paragraph 45 of the Complaint. In further response, Defendants incorporate by reference their response to Paragraph 44 of the Complaint, and note that the allegations in Paragraph 45 are not only contradicted by the description of FAD Consulting in the Share Purchase Agreement but also are contradicted by the Daniel Dymond's handwritten statements to the Fund regarding FAD Consulting:

> I had an independent company that assisted companies through verbal conversations on methods used to do sheetmetal [sic] work… . This was strictly a consulting company that gave others a fix for problems that are encountered in our industry.

See Doc. 1-6 at page 2. Daniel Dymond also represented that FAD Consulting was not a union affiliated company.

46.     Defendants deny the allegations in Paragraph 46 of the Complaint, except admit that Blue Diamond continued to report that Daniel Dymond was working in Covered Employment for Blue Diamond (and continued to remit contributions based on that reported work) until the date that Daniel Dymond had certified was his last date of employment in the Sheet Metal Industry (March 24, 2003). See Doc. 1-3 at page 2.

47.     Defendants deny the allegations in Paragraph 47 of the Complaint, except admit, upon information and belief, that Daniel Dymond previously worked in Covered Employment for other Contributing Employers and then worked in Covered Employment for Blue Diamond until the date that Daniel Dymond had certified was his last date of employment in the Sheet Metal Industry (March 24, 2003).

14

28169341.2

48.     Defendants deny the allegations in Paragraph 48 of the Complaint, except admit that from 2001 -- 2003, Daniel Dymond simultaneously worked in Covered Employment for Blue Diamond and also in non-Covered Employment for FAD Consulting.  In further response, the Defendants state that Plaintiff's non-Covered Employment with FAD Consulting constituted employment in the Sheet Metal Industry, which was not covered by a collective bargaining agreement.

49.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 of the Complaint and therefore deny those allegations.

**F.  Dymond's Pension Application and Retirement**

50.     Defendants deny the allegations in Paragraph 50 of the Complaint, except admit that Daniel Dymond contacted the NPF regarding his eligibility to receive a 55/30 Pension and made certain representations to the NPF in connection therewith.

51.     Defendants lack knowledge or information sufficient to form a belief as the truth of the allegations in Paragraph 51 of the Complaint and therefore deny those allegations, except Defendants admit that in correspondence dated March 27, 2003, the Fund communicated with Daniel Dymond regarding his eligibility for a 55/30 Pension with an effective date of April 1, 2003; Defendants state that such correspondence speaks for itself; and Defendants deny any allegations in the Complaint, including Paragraph 51, that are inconsistent with such correspondence.  In further response, Defendants also state that all of the NPF's decisions, determinations, statements, and correspondence relating to Daniel Dymond's eligibility for NPF benefits, and all benefit payments that were made by the NPF or promised on the basis of the decisions and determinations, were predicated upon the representations that were made by or on behalf of Daniel Dymond.

52.     Defendants deny the allegations in Paragraph 52 of the Complaint.  In further response, Defendants state that the NPF asked Plaintiff to complete an "Authorization to Obtain Earnings Data From The Social Security Administration" in 2003, so that the Fund could verify that Plaintiff was

working in Covered Employment prior his induction in August 1966 by using earnings data from the SSA, which enabled the Fund to grant Plaintiff additional Pension Credit for his military time.

53.    Defendants deny the allegations in Paragraph 53 of the Complaint.  In further response, Defendants note that the determination of Daniel Dymond's eligibility and the calculation of his benefits were based on Plaintiff's material misrepresentations, including the representations he made in his Retirement Declaration and Acknowledgement that his last date of employment in the Sheet Metal Industry was 24 March 2003 and that he has not worked in any Disqualifying Employment after his effective date of pension.

54.    In response to the allegations in Paragraph 54 of the Complaint, Defendants state that the SSA Form, which is attached to Plaintiff's Complaint as Exhibit B, speaks for itself, and Defendants deny any allegations in the Complaint, including Paragraph 54, that are inconsistent with that SSA Form.

55.    Defendants deny the allegations in Paragraph 55 of the Complaint but admit that the earnings were requested for the period 1966 through 1971 for the express purpose of verifying employment that enabled the Fund to credit Mr. Diamond with additional Pension Credit during his military service.  In further response, Defendants state that they are entitled to rely on the material statements and representations that are made in a Participant's Retirement Declaration and Acknowledgement, and a Participant cannot absolve himself or herself of responsibility simply by asserting that the Fund should not have relied upon his or her erroneous statements and/or misrepresentations but instead should have doubted their veracity and independently confirmed that the application was correct before approving the Participant's pension in the first instance.  Further, Defendants note that there is a lag in SSA earnings information, so the NPF may not have been able to discover that Plaintiff was working for FAD Consulting in 2003 (and possibly 2002 and 2001).

56.    Defendants admit the allegations in Paragraph 56 of the Complaint, and state that the Retirement Declaration and Acknowledgment speaks for itself and contains additional

acknowledgements, declarations, certifications, representations, etc., including a certification that the last day he was employed in the Sheet Metal Industry was 24 March 2003 even though he was still employed with FAD Consulting in April 2003, which by Plaintiff's own admission, assisted companies "on the methods used to do sheetmetal [sic] work" and which was contractually obligated to make the services of Plaintiff available to Blue Diamond (a sheet metal company).

57.     Defendants deny the allegations in Paragraph 57 of the Complaint, except admit that the NPF approved Daniel Dymond's pension application, effective April 1, 2003, in reliance on the acknowledgments, declarations, representations, certifications, etc., that Plaintiff made in, among other things, his Retirement Declaration and Acknowledgment; and admit that his monthly pension amount was initially $3,042 with a 100% survivor benefit to his surviving spouse.

58.     Defendants deny the allegations in Paragraph 58 of the Complaint, except admit that in or about May 2003, the Fund used SSA earning data to verify that Daniel Dymond was engaged in Covered Employment upon his induction in August 1966, which resulted in the Fund granting additional Future Service Credit for Plaintiff's military time, and the Fund adjusted Plaintiff's monthly pension from $3,042 to $3,260, effective as of April 1, 2003.

59.     Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 59 of the Complaint and therefore deny those allegations.  In further response, Defendants note the allegations in Paragraph 59 of the Complaint are inconsistent with the Itemized Statement of Earnings the NPF received from the SSA; Daniel Dymond's explanation of his earnings from FAD Consulting; the description of FAD Consulting's contractual obligations with Blue Diamond in the Share Purchase Agreement; and, upon information and belief, FAD Consulting's governmental filings (e.g., Social Security taxes).

60.     Defendants deny the allegations in Paragraph 60 of the Complaint.

61.     Defendants lack information or knowledge sufficient to form a belief as to the truth of the

allegations in Paragraph 61 and therefore deny those allegations.

62.     Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 62 of the Complaint and therefore deny those allegations, except Defendants admit that in correspondence dated March 27, 2003, the Fund communicated with Daniel Dymond regarding his eligibility for a 55/30 Pension; Defendants state that such correspondence speaks for itself; and Defendants deny any allegations in the Complaint, including Paragraph 62, that are inconsistent with such correspondence.  In further response, Defendants note that the determination of Daniel Dymond's eligibility and the calculation of his benefits were based on Plaintiff's material misrepresentations, including the representations he made in his Retirement Declaration and Acknowledgement that his last date of employment in the Sheet Metal Industry was 24 March 2003 and that he has not worked in any Disqualifying Employment after his effective date of pension.

63.     In response to the allegations in the first sentence of Paragraph 63 of the Complaint, Defendants state that the letter referred to therein speaks for itself and Defendants deny any allegations that are inconsistent with that letter.  In response to the allegations in the second sentence, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff had nothing to hide and therefore deny that allegation, and Defendants admit that Plaintiff complied with the NPF's request.

64.     In response to the allegations in Paragraph 64 of the Complaint, Defendants state that the SSA earnings report speaks for itself and denies any allegations that are inconsistent with that report, except Defendants admit that the NPF received an Itemized Statement of Earnings from the SSA, which speaks for itself and reported that Daniel Dymond had earnings for the years 2001 through 2008 from an employer known as FAD Consulting.

65.     Defendants admit that the aforementioned Itemized Statement of Earnings from the SSA, which speaks for itself, does not include any earnings for 2009 through 2013, and Defendants deny any

allegations in Paragraph 65 of the Complaint that are inconsistent with that document.

66.     In response to the allegations in Paragraph 66 of the Complaint, Defendants admit that the Fund sent a letter dated February 12, 2014 to Daniel Dymond, which letter speaks for itself, and Defendants deny any allegations in Paragraph 66 of the Complaint that are inconsistent with that letter.

67.     Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 67 of the Complaint and therefore deny those allegations, except Defendants admit that Daniel Dymond sent handwritten responses to the NPF, which speak for themselves; and Defendants deny any remaining allegations in Paragraph 67 that are inconsistent with such handwritten responses.

68.     Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 68 of the Complaint and therefore deny those allegations; and Defendants note that the allegations in Paragraph 68 of the Complaint are contradicted by handwritten responses submitted to the NPF by Daniel Dymond.

69.     Defendants deny the allegations in Paragraph 69 of the Complaint.

70.     In response to the allegations in Paragraph 70 of the Complaint, Defendants state that the letter dated April 2, 2014 ("Exhibit D to the Complaint") speaks for itself, and deny any allegations in Paragraph 70 of the Complaint that are inconsistent that letter.

71.     In response to the allegations in Paragraph 71 of the Complaint, Defendants again state that Exhibit D to the Complaint speaks for itself and deny any allegations in Paragraph 71 of the Complaint that are inconsistent with that letter.

72.     In response to the allegations in Paragraph 72 of the Complaint, Defendants again state that Exhibit D to the Complaint speaks for itself and deny any allegations in Paragraph 72 of the Complaint that are inconsistent with that letter.

73.     In response to the allegations in Paragraph 73, Defendants again state that Exhibit D to the

28169341.2

Complaint speaks for itself and deny any allegations in Paragraph 73 that are inconsistent with that letter.

74.     In response the allegations in Paragraph 74, the Defendants admit that there is no specific communication in Plaintiff's pension file informing Plaintiff that his pension application remained "under review" or later could be "denied"; however, when, among other things, Plaintiff agreed to the overpayment provision in his Retirement Declaration and Acknowledgment (Exhibit C to Complaint), he was put on notice that his pension could come under review to determine the possibility of an overpayment; and if, and to the extent that, Plaintiff is referring to Exhibit D of the Complaint, which speaks for itself, Defendants deny any allegations in Paragraph 74 that are inconsistent with that letter.

75.     In response to the allegations in Paragraph 75 of the Complaint, Defendants reiterate that Exhibit D to the Complaint speaks for itself and deny any allegations in Paragraph 75 that are inconsistent with that letter.

76.     Defendants deny the allegations in Paragraph 76, except admit that Plaintiff's employment with FAD Consulting, which commenced in 2001, made Plaintiff ineligible to retire under a 55/30 Pension because his employment with FAD Consulting constituted employment in the Sheet Metal Industry that was not covered by a collective bargaining agreement between the Sheet Metal Workers' International Association ("SMWIA") or a local union chartered by the SMWIA (collectively, the "Union").

77.     In response to the allegations in Paragraph 77, Defendants reiterate that Exhibit D to the Complaint speaks for itself and deny any allegations in Paragraph 77 that are inconsistent with that letter.

78.     In response to the allegations in Paragraph 78, Defendants reiterate that Exhibit D to the Complaint speaks for itself and deny any allegations in Paragraph 78 that are inconsistent with that letter.

79.     To the extent the allegations in Paragraph 79 refer to Exhibit D to the Complaint, Defendants reiterate that Exhibit D to the Complaint speaks for itself and deny any allegations in Paragraph 79 that are inconsistent with that letter.  To the extent that Plaintiff refers to a different letter,

Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 79 and therefore deny those allegations.

80.     Defendants deny the allegations in Paragraph 80.

81.     Defendants lack information or knowledge sufficient to form a belief as to what "unsupported act of self-help" Plaintiff refers to in Paragraph 80, and therefore Defendants deny the allegation that the Fund has engaged in an "unsupported act of self-help"; and Defendants state, upon information and belief, that the payments made to Daniel Dymond in the form of a 100% Joint and Survivor Annuity from the NPF exceed the actuarial equivalent of Daniel Dymond's vested accrued benefit under ERISA, as well as the actuarial equivalent of his Normal Retirement Pension from the NPF, payable in the form of a 100% Joint and Survivor Annuity (or any other benefit option).  In further response, Defendants note that the full offset of Daniel Dymond's pension is a reasonable arrangement to recover the overpayments made to him, and Defendants reiterate that Daniel Dymond agreed to the offset arrangement in his signed Retirement Declaration and Acknowledgement.

82.     Defendants admit that the NPF seeks reimbursement for the payments received from the NPF through April 2014 by Plaintiff and his wife under the 100% Joint and Survivor Annuity (plus interest), and the Defendants deny the remaining allegations in Paragraph 82.

83.     Defendants deny the allegations in Paragraph 83; and Defendants state that Section 8.02(g) of the Plan Document speaks for itself; and Defendants repeat and incorporate by reference herein Defendants' response to the allegations in Paragraph 29.

84.     Defendants deny the allegations in Paragraph 84.

**G.  Pension Fund's Financial Troubles**

85.     Defendants deny the allegations in Paragraph 85, except admit that the NPF was in critical status from 2008 through 2013; admit the NPF emerged from critical status in 2014 and entered into endangered status; and admit that the NPF continues to be in endangered status because its funded ratio is

less than 80%.

86.     In response to the allegations in Paragraph 86, the Defendants state that the Fund's 2013 Notice of Critical Status speaks for itself and deny any allegations that are inconsistent with the Fund's 2013 Notice of Critical Status.

87.     Defendants deny the allegations in Paragraph 87.  In further response, Defendants note that the NPF had a rehabilitation plan when it was in critical status, which reduced adjustable benefits under certain circumstances; note that the NPF's rehabilitation period ended at the close of the 2013 Plan Year; and note the NPF emerged from critical status and has operated under a funding improvement plan since 2014, which does not reduce benefits that have already accrued.

88.     Defendants deny the allegations in Paragraph 88.

**H.  Plaintiff's Appeal Process**

89.     In response to the allegations in Paragraph 89, Defendants admit that following Plaintiff's receipt of the Fund's April 2, 2014 letter, which speaks for itself, Plaintiff's counsel filed an appeal on behalf of Plaintiff by letter dated July 8, 2014 ("Exhibit E to the Complaint"); Defendants state that Exhibit E to the Complaint speaks for itself; and Defendants deny any allegations that are inconsistent with that letter.

90.     In response to the allegations in Paragraph 90, Defendants state that the document referred to therein as the "appeal letter" (as well as any evidence provided with the "appeal letter") speaks for itself and denies any allegations in Paragraph 90 that are inconsistent the appeal letter (as well as any evidence provide with the "appeal letter").

91.     Plaintiffs deny the allegations in Paragraph 91.

92.     In response to the allegations in Paragraph 92, Defendants state that Plaintiff's appeal was decided by the Appeals Committee, which has the sole discretionary authority and power to, among other things, construe the terms of the Plan Document and make all determinations regarding the entitlement to

or amount of benefits under the Plan Document; admit that the Appeals Committee denied Plaintiff's

appeal; admit that the Appeals Committee's decision was communicated to Plaintiff by letter dated

September 19, 2014 ("Exhibit F to the Complaint"); and deny any allegations in Paragraph 92 that are

inconsistent with the letter.

93.      Defendants deny the allegations in Paragraph 93, except Defendants admit that the

Appeals Committee determined that Daniel Dymond's employment with FAD Consulting was in

Disqualifying Employment under the terms of the Plan Document because, among other things, his

employment with FAD Consulting was employment in the Sheet Metal Industry that was not covered by

a collective bargaining agreement with the Union; determined that because Daniel Dymond was

employed by FAD Consulting (i.e., in Disqualifying Employment) at the time he applied for pension

benefits in February 2003, he was not retired within the meaning of the Plan Document; determined that

Plaintiff would not have been eligible for a 55/30 Pension in any event because employment in the Sheet

Metal Industry that is not covered by a collective bargaining agreement with the Union (also referred to

informally as work in non-signatory employment) renders a Participant ineligible for a 55/30 Pension and

Daniel Dymond had been employed continuously with FAD Consulting since 2001, which the Appeals

Committee determined was employment in the Sheet Metal Industry that was not covered by a collective

bargaining agreement with the Union.  In further response, Defendants note that the Appeals Committee

also determined that because employment in the Sheet Metal Industry that is not covered by a collective

bargaining agreement with the Union results in early retirement delays, Daniel Dymond also would have

been subject to early retirement delays under other types of Early Retirement Pensions as a result of his

employment with FAD Consulting (from 2001 through February 2003).

94.      In response to the allegations in Paragraph 94, Defendants state that the denial letter,

which Plaintiff cites as Exhibit F to the Complaint, speaks for itself and deny any allegations that are

inconsistent with that letter ("Exhibit F to the Complaint").  In further response, Defendants admit that the

reference in Exhibit F to "Section 5.06(d)" was intended to be a reference to Section 5.09(d).

95.    In response to the allegations in Paragraph 95, Defendants state that the April 2, 2014 letter referenced therein speaks for itself and deny any allegations in Paragraph 95 that are inconsistent with that letter; Defendants also state that the appeal denial letter dated September 19, 2014 referenced therein also speaks for itself and deny any allegations in Paragraph 95 that are inconsistent with that letter; Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegation that "[t]he appeal denial letter dated September 19, 2014 was the first time Plaintiff was so advised," and therefore deny that allegation.

96.    Defendants deny the allegations in Paragraph 96 on the grounds that Plaintiff does not define the term "Pension Rules," and therefore Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 96.  In further response, Defendants state that if the term "Pension Rules" refers to a document, Defendants state that such document speaks for itself, and Defendants also deny any allegations that are inconsistent with such document.  Defendants also note that all of the Appeals Committee's findings and determinations were based on the same factual predicate and the same factual foundation as the decision of the Fund's ministerial staff, which Plaintiff appealed to the Appeals Committee, and the decision of the Appeals Committee, which is final and binding, provided additional bases for arriving at the same result as the decision of the Fund's administrative staff, which the Appeals Committee affirmed.

97.    Defendants deny the allegations in Paragraph 97 and state that the record and evidence of the Appeal Committee's decision speak for themselves, and Defendants deny any allegations in the Complaint that are inconsistent with such record and evidence.  Further, Defendants state that the Fund's staff  and the Appeals Committee are entitled to rely upon the veracity of any representations and statements made to the Fund, as well as the veracity of any filings or other representations made to the United States government or any agency of the

United States government, including the Internal Revenue Service and/or the SSA.

98.    Defendants state that the Appeals Committee decision speaks for itself and deny any allegations that are inconsistent with such decision.  In further response, Defendants state that the Plan Document and ERISA provide a basis for all of the actions taken by the Fund to recoup the overpayments received by Plaintiff and his wife and to prevent their unjust enrichment; and Defendants reiterate that Plaintiff agreed and to reimburse the Fund for any overpayments and that the Fund may offset an amount necessary to recover overpayments from future payments.

99.    Defendants state that the Appeals Committee decision speaks for itself and deny any allegations that are inconsistent with such decision.  In further response, Defendants refute the implication of, and deny, any wrongdoing, improper conduct or improper procedure and note that Plaintiff and his counsel were clearly advised in advance that the decisions of the Appeals Committee are final and binding, and that Plaintiff and his counsel were obligated to submit any and all evidence, including written comments, documents, and records, and other information in support of their claim; and Plaintiff and his counsel were explicitly advised that they would not have another opportunity to submit additional information after the Appeals Committee conducted its review.  See Doc. 1-4, page 4 of 4.

100.    Defendants state that the documentation and other information referenced by Plaintiff speak for themselves and deny any allegations that are inconsistent with such documents and other information.  In further response, Defendants refute the implication of, and deny, any wrongdoing, improper conduct or improper procedure and note that Plaintiff and his counsel were clearly advised in advance that the decisions of the Appeals Committee are final and binding, and that Plaintiff and his counsel were obligated to submit any and all evidence, including written comments, documents, and records, and other information in

support of their claim; and Plaintiff and his counsel were explicitly advised that they would not have another opportunity to submit additional information after the Appeals Committee conducted its review.  See Doc. 1-4, page 4 of 4.

101.    In response to the allegations in Paragraph 101, the Defendants state that the email dated December 30, 2014 from their counsel speaks for itself and deny any allegations in Paragraph 101 that are inconsistent with that email.

102.    Paragraph 102 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 102 and repeat and incorporate by reference their response to the allegations in Paragraph 100.  See Doc 1-4, page 4 of 4.

103.    Defendants admit, upon information and belief, the allegations in Paragraph 103.

104.    Defendants admit, upon information and belief, the allegations in Paragraph 104.

105.    Defendants deny the allegations in Paragraph 105.

106.    Defendants deny the allegations in Paragraph 106.  In further response, Defendants reiterate that Daniel Dymond agreed to the arrangement in his signed Retirement Declaration and Acknowledgment.  See Doc. 1-3 at page 2 of 2.

107.    Defendants deny the allegations in Paragraph 107 and note that Plaintiff never submitted an application for a Normal Retirement Pension.  In further response, Defendants state that the NPF is entitled to offset the full amount of any monthly Normal Retirement Pension benefit payable to Plaintiff (and/or his wife) in order to recover the overpayments, and also state, upon information and belief, that such offset will be insufficient to recover the full amount of the overpayments (with interest).

28169341.2

108.     Paragraph 108 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 108, and state, upon information and belief, that Plaintiff has received from the Fund an amount well in excess of the pension benefits he was entitled to receive from the Fund.

## COUNT I

## FAILURE TO PROVIDE BENEFITS UNDER ERISA

109.     Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 108 of the Complaint.

110.     Paragraph 110 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 110, and Defendants repeat and incorporate by reference the last sentence in Defendants' response to Paragraph 2 of the Complaint.  In further response, Defendants note that because the Trustees have delegated to the Appeals Committee the sole and absolute discretionary authority and power to make the determinations listed in (1) through (6) of Section 8.03 (a) of the Plan Document, the decision of the Appeals Committee (rather than the full Board of Trustees) is at issue in this case, and that decision was not arbitrary and capricious.

111.     Paragraph 111 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 111.

112.     Paragraph 112 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 112.  In further response, Defendants repeat and incorporate by reference the last sentence in Defendants' response to Paragraph 110 of the Complaint.

28169341.2

113.    Paragraph 113 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 113, and state, upon information and belief, that Plaintiff has received from the Fund an amount well in excess of the pension benefits he was entitled to receive from the Fund.

114.    Paragraph 114 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 114.

## COUNT II

## DECLARATORY JUDGMENT PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

115.    Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 114 of the Complaint.

116.    Paragraph 116 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 116.

117.    Paragraph 117 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 117, and deny Plaintiff is entitled to the relief sought in Paragraph 117 or any other relief.  In further response, Defendants again state, upon information and belief, that the payments made to Daniel Dymond in the form of a 100% Joint and Survivor Annuity from the NPF exceeded the actuarial equivalent of Daniel Dymond's vested accrued benefit under ERISA, as well as the actuarial equivalent of his Normal Retirement Pension from the NPF, payable in the form of a 100% Joint and Survivor Annuity (or any other benefit option).

## COUNT III

## WAIVER (29 U.S.C. § 1132(a)(3)

118.    Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 117 of the Complaint.

119.    Defendants deny that Daniel Dymond retired (for purposes of the Plan Document) in 2003; state that any inquiries made by Daniel Dymond speak for themselves; and deny any allegations in Paragraph 119 that are inconsistent with such inquires.

120.    In response to the allegations in Paragraph 120, Defendants state that any written communication or statement made by the NPF speaks for itself and deny any allegations in Paragraph 120 that are inconsistent with such written communication or statement.  In further response, Defendants state that any confirmation of Plaintiff's 55/30 Pension eligibility was premised upon the Fund's reliance on misleading information, false statements and/or misrepresentations of fact made to the Fund by Plaintiff.  In further response, Defendants state that the Fund was harmed by its reliance on misleading information, false statements, and/or misrepresentations of fact made to the Fund by Plaintiff regarding his employment with FAD Consulting, including but not limited to his failure to disclose such employment to the Fund.

121.    Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 121 and therefore deny those allegations.

122.    Defendants deny the allegations in Paragraph 122, except admit that certain documents were required to be submitted in order for Plaintiff's application to be considered complete.  In further response, Defendants state an SSA Form was not one of the documents required to be submitted with Plaintiff's pension application in order for it to be considered complete, but was necessary to complete in order to substantiate work in Covered Employment during the mid-1960s, so that the Fund could increase the amount of Plaintiff's benefit by taking into account a period of military service.

123.    Defendants deny the allegations in Paragraph 123.  In further response, Defendants state that Plaintiff withheld the information that the Fund needed to verify his eligibility by, among other things, misrepresenting that the last date Plaintiff worked in the Sheet Metal Industry was March 24, 2003 and that Plaintiff had not worked in Disqualifying Employment after his effective date of pension, and failing to notify the Fund of his employment with FAD Consulting.  Defendants state further that the Fund rightfully assumed that Plaintiff would have provided accurate information to it, so that it would have been able verify Plaintiff's eligibility to receive pension benefits or would have been able to obtain the necessary information through follow-up inquiries.

124.    Defendants deny the allegations in Paragraph 124 of the Complaint, and state that Plaintiff knew or should have known that the approval of his pension and his being deemed retired were predicated upon, among other things, the veracity of his representations and the assumption that Plaintiff would disclose his employment with FAD Consulting and make appropriate inquiries.

125.    Defendants deny the allegations in Paragraph 125, except admit that it requested a Social Security Earning release for the period in question in or about 2013, nor as it was entitled to do.  In further response, Defendants state that the Fund has always made it clear that a Participant's obligation to report Disqualifying Employment and to correct misrepresentations in the Participant's pension application and related documents (upon which pension eligibility is based) is ongoing, which made it clear that the Fund's inquiry regarding the same was ongoing.

126.    Paragraph 126 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 126.

28169341.2

127.    Paragraph 127 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 127, and deny Plaintiff is entitled to the relief sought in Paragraph 127 or any other relief.

## COUNT IV

## ESTOPPEL (29 U.S.C. 1132(a)(3)

128.    Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 127 of the Complaint.

129.    Paragraph 129 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants state that the federal common law of ERISA speaks for itself and deny any allegations in Paragraph 129 that are inconstant with the federal common law of ERISA.  In further response, Defendants note that the NPF relied upon definite misrepresentations of fact regarding the nature and existence of Plaintiff's employment with FAD Consulting, and Plaintiff knew that the NPF would be relying on those misrepresentations of fact.

130.    Defendants deny the allegations in Paragraph 130.

131.    Paragraph 131 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 131, except admit that Plaintiff's "work history" included his "affiliation with FAD [Consulting]."  In further response, Defendants state that Daniel Dymond had an obligation, and failed, to report in 2003 his "work history, revealing his affiliation with FAD [Consulting]," when, for example, he completed his Retirement Declaration and Acknowledgement.

132.    Defendants deny the allegations in Paragraph 132; state that Plaintiff, not the

NPF, misrepresented that he was retired; and note that Daniel Dymond continued to work for Blue Diamond for two (2) years after he sold his business (while also being employed by FAD Consulting).

133.    Paragraph 133 contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 133 except insofar as they relate to the NPF's reliance on, among other things, Plaintiff's misrepresentations regarding the nature and existence of his employment with FAD Consulting.

134.    Paragraph 134 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 134, and deny Plaintiff is entitled to the relief sought in Paragraph 134 or any other relief.

**COUNT V**

**BREACH OF ERISA FIDUCIARY DUTIES**

**FAILING TO COMPLY WITH DOCUMENTS AND INSTRUMENTS OF THE PLAN**

135.    Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 134 of the Complaint.

136.    Paragraph 136 contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 136, except admit that the Board of Trustees is a named fiduciary of the NPF under ERISA with respect to certain fiduciary functions, and is the NPF's "Administrator" within the meaning of Section 3(16) of ERISA, 29 U.S.C. § 1002 (16).  In further response, Defendants admit that the individual Trustees who comprise the Board of Trustees are fiduciaries under ERISA when performing fiduciary functions.

137.    Paragraph 137 contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 137, except admit that each of the Trustees is required to discharge his or her fiduciary duties in accordance with the document and instruments governing the Fund when performing fiduciary functions under ERISA.  Defendants also state that 29 U.S.C. § 1104(a)(1)(D) speaks for itself.

138.    Paragraph 138 contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 138, except admit that each of the Trustees is required to apply the terms of the Plan Document when performing fiduciary functions under ERISA.

139.    Paragraph 139 contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 139 on the grounds that Plaintiff does not define the term "Pension Rules," and therefore Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 139.  In further response, Defendants state that if the term "Pension Rules" refers to a document, Defendants state that such document speaks for itself, and Defendants deny any allegations that are inconsistent with such document.  Defendants also repeat and incorporate by reference their response to the allegations in Paragraph 137.

140.    Paragraph 140 contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 140.  In further response, Defendants note that it is the Appeals Committee (comprised of one labor and one management Trustee), not the Board of Trustees, that has the sole discretionary power and authority to construe the Plan Document and to determine entitlement to and the amount of any pension provided by the Fund, and it is the Appeals Committee, not the Board of Trustees, that

made the final and binding decision, which Plaintiff challenges in this action.  Defendants also state that Paragraph 140 lacks any foundation in fact or law.

141.    Paragraph 141 contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 141, and deny Plaintiff is entitled to the relief sought in Paragraph 141 or any other relief.  In further response, Defendants state that Paragraph 141 of the Complaint lacks any foundation in fact or law.

## COUNT VI

## FAILURE TO PROVIDE A FULL AND FAIR REVIEW

142.    Defendants repeat and incorporate by reference their responses to Paragraphs 1-141 of the Complaint.

143.    Paragraph 143 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants state that ERISA, including Section 503(1) of ERISA, 29 U.S.C. § 1133(1), speaks for itself and Defendants deny any allegations in Paragraph 143 that are inconsistent with ERISA, including Section 503(1) of ERISA, 29 U.S.C. § 1133(1).

144.    Paragraph 144 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants state that the regulations promulgated under ERISA, including 29 C.F.R. § 2560.503-1(g) and (j), speak for themselves and Defendants deny any allegations in Paragraph 144 that are inconsistent with those regulations.

145.    Paragraph 145 of the Complaint contains conclusions of law to which no

28169341.2

response is required.  To the extent a response is required, Defendants state that the case cited by Plaintiff and from which it quotes, <u>Karce v. Bldg. Serv.32B-J Pension Fund</u>, 2006 U.S. Dist. LEXIS 79818 at *14 (S.D.N.Y.), speaks for itself and deny any allegations in Paragraph 145 that are inconsistent with that case.  In further response, Defendants also state that Plaintiff was afforded a full and fair review, and the decision of the Appeals Committee is reviewed under a deferential standard of review.

146.    In response to the allegations in Paragraph 146 of the Complaint, Defendants state that the letter dated April 2, 2014 to which Plaintiff refers speaks for itself, and Defendants deny any allegations in Paragraph 146 that are inconsistent with such letter.

147.    In response to the allegations in Paragraph 147 of the Complaint, Defendants state that the letter dated September 19, 2014 to which Plaintiff refers and all other communications from the Fund speak for themselves, and Defendants deny any allegations in Paragraph 147 that are inconsistent with that letter or any other communication from the Fund.

148.    In response to the allegations in Paragraph 148 of the Complaint, Defendants state that Exhibit F to the Complaint (presumably the "September 19, 2014" document to which Plaintiff refers) speaks for itself, and Defendants deny any allegations in Paragraph 148 that are inconsistent with that letter.

149.    Defendants deny the allegations in Paragraph 149 of the Complaint on the grounds that Plaintiff does not define the term "Pension Rules," and therefore Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 149.  In further response, Defendants state that the portion of the Appeals Committee's decision to which Plaintiff refers involved an interpretation of the same defined

term in the Plan Document (i.e., "Sheet Metal Industry") and involved the same common

nucleus of operative facts as the decision that Plaintiff appealed – that is, whether Plaintiff's

employment with FAD Consulting constituted employment in the Sheet Metal Industry that

was not covered under a collective bargaining agreement with the Union (also referred to as

non-signatory employment).  Defendants state further that the Appeals Committee's decision

merely noted an additional basis for the decision that Plaintiff appealed, and any additional

consequences of that decision do not alter the fact that the Appeals Committee's decision had

the same effect as the decision that was appealed by the Plaintiff (i.e., that he was not entitled

to receive any of the 55/30 Pension payments that were made by the Fund in the form of a

100% Joint & Survivor Annuity).

150.    Defendants deny the allegations in Paragraph 150, except admit that the decision

of the Appeals Committee was final and binding and the administrative record was likewise

closed and final.

151.    Paragraph 151 contains conclusions of law to which no response is required.  To

the extent a response is required, Defendants deny the allegations in Paragraph 151.

## COUNT VII

## WRONGFUL ALIENATION OF BENEFITS IN VIOLATION OF ERISA 29

## U.S.C. § 1056(d)

152.    Defendants repeat and incorporate by reference their responses to Paragraphs 1

through 151 of the Complaint.

153.    Paragraph 153 of the Complaint contains conclusions of law to which no

28169341.2

response is required.  To the extent a response is required, Defendants state that Section 206(d) of ERISA, 29 U.S.C. § 1056(d) speaks for itself and deny any allegations in Paragraph 153 that are inconsistent with that provision.

154.     In response to the allegations in Paragraph 154 of the Complaint, Defendants state that the Plan Document, including Section 8.07(a), speaks for itself, and Defendants deny any allegations that are inconsistent with the Plan Document, including Section 8.07(a).

155.     Paragraph 155 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants state that ERISA, and its regulations, speak for themselves and Defendants deny any allegations in Paragraph 155 that are inconsistent with ERISA, and its regulations.

156.     Paragraph 156 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants state that the provisions of ERISA, and its regulations, which are reference in Paragraph 156, and the letter dated September 19, 2014, which also is referenced in Paragraph 156, speak for themselves; and Defendants deny any allegations that are inconsistent with those provisions of ERISA, and its regulations, or the letter dated September 19, 2014.  In further response, Defendants note that Plaintiff did not assert in his appeal that any action of the Fund resulted in an assignment or alienation of the Plaintiff's benefit, but rather appealed only the determination that Plaintiff was not entitled to receive a 55/30 Pension.

157.     Paragraph 157 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants state that ERISA speaks for itself; deny any allegations in Paragraph 157 that are inconsistent with ERISA; and deny

that Plaintiff's pension is being alienated.

158.    Paragraph 158 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants state that ERISA speaks for itself and deny any allegations in Paragraph 158 that are inconsistent with ERISA.

159.    Paragraph 159 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 159 of the Complaint, and also state that ERISA and the terms of the Plan Document speak for themselves.

160.    Paragraph 160 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 160 and state that the documents and instruments governing the Fund and ERISA speak for themselves.  In further response, to the extent Plaintiff refers to the Fund's offset of the overpayments made to him from any future pension payments, Defendants reiterate that Plaintiff did not contest the Fund's offset in his appeal but rather contested the Fund's determination that Plaintiff's employment with FAD Consulting was Disqualifying Employment (e.g., employment in the Sheet Metal Industry that was not covered by a collective bargaining agreement with the Union).  See Doc. 1-5 at pages 2-6.

## PRAYER FOR RELIEF

Defendants deny that the Plaintiff is entitled to any of the relief sought or any other relief.

## DEFENDANT'S GENERAL DENIAL

All allegations of the Plaintiff's Complaint that have not been expressly admitted, denied, or

28169341.2

otherwise responded to are expressly denied.

## FIRST DEFENSE

Plaintiff fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

The decision of the Appeals Committee was not arbitrary and capricious and should be upheld by this Court based upon the administrative record.

## THIRD DEFENSE

Plaintiff's claims are barred by the doctrine of accord and satisfaction. The Fund has paid, and Plaintiff has received, more than the actuarial equivalent of the maximum pension benefits payable under the Plan Document and ERISA, and no further benefit payments are due and owing with respect to Daniel Dymond's participation in the NPF.

## FOURTH DEFENSE

The Fund's payments to Plaintiff of 55/30 Pension benefits in the form of a 100% Joint and Survivor Annuity (previously referred to as 100% Husband and Wife Pension) were based on the Fund's reliance on material misrepresentations of fact by Daniel Dymond, and the Fund is entitled to appropriate equitable relief as a result thereof.

## FIFTH DEFENSE

Some or all of Plaintiff's claims are barred by the doctrines of waiver, estoppel, laches, and/or unclean hands.

## SIXTH DEFENSE

When Daniel Dymond signed his Retirement Declaration and Acknowledgment, he agreed that he would be required to reimburse the Fund in the event of an overpayment of benefits, and that the Fund may offset an amount necessary to recover the overpayment from future benefits.

**SEVENTH DEFENSE**

Plaintiff did not challenge the Fund's offset of overpayments on appeal, but only challenged the determination that gave rise to the overpayment.  Having failed to exhaust his administrative remedies, the Plaintiff is precluded from challenging the Funds' offset of overpayments in Court.

**EIGHTH DEFENSE**

Based on the circumstances and the administrative record in this case, Defendants are entitled to judgment in their favor and respectfully request the Court to order Plaintiffs to pay Defendants' attorney's fees and costs pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

**ADDITIONAL DEFENSES**

Defendants reserve the right to raise in the future any other defenses that arise or become known to the them as this case progresses through the Court.

**COUNTERCLAIM**

COME NOW Defendants/Counter-Plaintiffs, Sheet Metal Workers' National Pension Fund ("NPF" or "Fund") and its Board of Trustees (as defined above), and for their Counterclaim against Plaintiff/Counter-Defendant Daniel E. Dymond ("Daniel Dymond"), seeking a declaration that there has been an overpayment of pension benefits to Daniel Dymond, that Daniel Dymond is entitled to no further payments of pension benefits, and to recoup the overpayment of pension benefits made to Daniel Dymond plus interest, state as follows:

**PARTIES**

1.      Counter-Plaintiff, the Fund, is a multiemployer defined benefit employee pension benefit plan governed by ERISA.  The Fund is managed by Counter-Plaintiff the Board of Trustees,

consisting of eight Trustees, four of which are labor Trustees and four of which are management Trustees, all of which are named as Defendants in this action.

2.      Counter-Defendant Daniel Dymond is a natural person over the age of 21 years, domiciled in the Eastern District of New York, and an NPF Participant.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1331, 29 U.S.C. §§ 1132(e)(l) and (f), as the Fund seeks equitable relief to enforce the terms of ERISA and the Fund under 29 U.S.C. § 1132(a)(3), and 28 U.S.C. § 1367, as the claims made in this Counterclaim are appropriately related to the claims made by Plaintiff Dymond against Defendant Fund such that they form part of the same case or controversy.  In addition, this Court has jurisdiction under 28 U.S.C. § 2201 to provide the declaratory relief sought herein.

4.      Venue lies in this Court pursuant to 28 U.S.C § 1391(b) and 29 U.S.C. § 1132(e)(2), since, among other things, Counter-Defendant resides and may be found in this District and a substantial of the events giving rise to this Counterclaim occurred in this District.

## FACTS

5.      Daniel Dymond became a Participant in this NPF in or about July 1966.  In or about March 1983, Daniel Dymond became a stockholder of Blue Diamond Sheet Metal ("Blue Diamond"), a Contributing Employer of the NPF, and continued thereafter for a period of time as both a Participant in the NPF and a shareholder of a Contributing Employer.

6.      The NPF provides for different types of Early Retirement Pensions that require, among other things, a Participant to have attained age 55, to retire from Covered Employment in the Sheet Metal Industry, and to have earned a certain amount of credited service.  In or about February 2003, Daniel Dymond applied for an Early Retirement Pension.  At the time of his application, Mr. Diamond was 55 years of age.

28169341.2

7.       Daniel Dymond represented in his application materials that he was entitled to an Early Retirement Pension because, among other things, he was retiring from Covered Employment in the Sheet Metal Industry and was otherwise eligible for such a pension.  In particular, he executed a Retirement Declaration and Acknowledgement which included certifications by him that the last day he was employed in the Sheet Metal Industry was March 24, 2003, that he has not worked in any Disqualifying Employment, as defined in the Plan Document, after the effective date of his pension (April 1, 2003), and that he will notify the Fund, in writing, within 21 days of starting any work, of any type, that is, or may be, Disqualifying Employment.

8.       Daniel Dymond requested a 55/30 Pension in the form of a 100% Joint and Survivor Annuity (formerly called a 100% Husband and Wife Pension), through which he would receive a monthly payment of $3,042 for his lifetime, and upon his death, his spouse, if living, would continue to receive the same amount for the duration of her lifetime.  This option also contemplated that, if his spouse pre-deceased him, Daniel Dymond's monthly pension amount would increase to the amount of $3,686.

9.       Relying on the representations and certifications contained in the application materials submitted by Daniel Dymond, the NPF approved Daniel Dymond for a 55/30 Pension effective April 1, 2003, at the initial monthly amount of $3,042 with a 100% survivor benefit to his surviving spouse in the event of his death.  This monthly amount was adjusted in May 2003 to $3,260, effective as of April 1, 2003, after the NPF used Social Security Administration ("SSA") earning data to verify that Daniel Dymond was entitled to additional Future Service Credit for his military service.

10.       In a letter dated April 29, 2003, transmitting to Daniel Dymond his first pension check after his retirement became effective on April 1, 2003, the NPF reminded him of certain responsibilities to the Fund, including, among other things, that he must contact the Fund office, in writing, if he returns to Disqualifying Employment.

28169341.2

11.     Daniel Dymond received pension payments, including an NPF COLA benefit, from the NPF through April 2014, totaling $437,510.  He also received the benefit of 401(h) payments totaling $806 by the NPF toward the cost of his supplemental insurance during that time period.  The foregoing payments are exclusive of interest.

12.     From time to time, the NPF conducts random earnings audits.  During such audits, the NPF staff obtains earnings data from the SSA to detect Pensioners who are engaged in unreported Disqualifying Employment.

13.     Beginning in late 2013 and continuing through early 2014, NPF staff conducted such an audit which included Daniel Dymond.  During the course of that review, the NPF received information from the SSA indicating that Daniel Dymond had been an employee of FAD Consulting Corporation ("FAD Consulting") since 2001 and had earned hundreds of thousands of dollars in consulting fees since that time.

14.     During the NPF's ensuing inquiry and related proceedings, Daniel Dymond provided a copy of a Share Purchase Agreement under which he sold his shares of Blue Diamond stock in or about 2001, but which included an acknowledgment by the parties thereto that Blue Diamond intended to enter into a Consulting Agreement with an entity to be formed, FAD Consulting, and that FAD Consulting would "make the services of [Daniel Dymond] and other employees of [FAD Consulting] available to [Blue Diamond] in consideration for certain consulting payments."  Doc. 1-5 at page 12.

15.     Daniel Dymond also provided a handwritten statement to the Fund regarding FAD Consulting's  business wherein he stated:

> I had an independent company that assisted companies through verbal conversations on methods used to do sheetmetal [sic] work… .  This was strictly a consulting company that gave others a fix for problems that are encountered in our industry.

See Doc. 1-6 at page 2.  Daniel Dymond also represented that FAD Consulting was not a union affiliated company.

16.    Section 5.01 of the Plan Document conditions a Participant's right to receive pension benefits upon retirement.  A Participant working in Disqualifying Employment on the effective date of pension is not considered retired.  Under Sections 8.06(d)(1)(B) and 8.06(d)(1)(E), the term Disqualifying Employment means, respectively, "employment with any employer in the same or related business as a Contributing Employer" and "employment in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer."  Moreover, a Participant who performs at least one (1) hour of employment on or after September 1, 1988 in the Sheet Metal Industry at any time after his Contribution Date that is not covered by a Collective Bargaining Agreement is engaged in non-covered employment and thus rendered ineligible for the 55/30 Pension.

17.    The information obtained by the NPF during its inquiry, including from Daniel Dymond himself, makes clear that Daniel Dymond's employment with FAD Consulting was employment in the Sheet Metal Industry within the meaning of the Plan Document because, among other things, it was encompassed by the Sheet Metal Workers' International Association Constitution under Article 1, Sections 5(a) and 5(m), and also involved work that Daniel Dymond could perform only because of his skills and training as a sheet metal worker.  Because FAD Consulting was not a party to a collective bargaining agreement with the Union, Daniel Dymond was ineligible to receive a 55/30 Pension.  It also meant that his employment with FAD Consulting was Disqualifying Employment under Section 8.06(d)(1)(E).  Further, the information obtained also revealed that FAD Consulting was in the same or related business as several of the NPF's Contributing Employers, which was Disqualifying Employment under 8.06(d)(1)(B).

18.    Accordingly, Daniel Dymond should not have received any 55/30 Pension payments because (i) he was rendered ineligible for the 55/30 Pension by dint of his employment with FAD Consulting from 2001 through March of 2003, and (ii) he was not considered to be retired on April 1,

2003, his putative effective date of pension, because he remained employed with FAD Consulting, which was Disqualifying Employment under Sections 8.06(d)(1)(E) and 8.06(d)(1)(B) of the Plan Document.

19.     However, the NPF approved Daniel Dymond's pension application, effective April 1, 2003, in reliance on the acknowledgments, declarations, representations and certifications that Daniel Dymond falsely made in, among other things, his Retirement Declaration and Acknowledgment.

20.      All of the NPF's decisions, determinations, statements, and correspondence relating to Mr.  Dymond's eligibility for NPF benefits, and all benefit payments that were made by the NPF or promised on the basis of the decisions and determinations, were predicated upon the misrepresentations and omissions that were made by or on behalf of Daniel Dymond.

21.     In April 2014, after learning of the foregoing facts relating to Daniel Dymond's ineligibility for a pension, the NPF informed Daniel Dymond of its conclusions, ceased all pension payments to him, and advised him that the Fund will need to be reimbursed for all the payments improperly received by Daniel Dymond.  The NPF also advised Daniel Dymond that he remains eligible for a pension provided that he is deemed retired in accordance with Section 5.01 of the Plan Document at the time of his application, and that the Fund will recover the overpayment previously made by withholding 100% of his pension payments at the time he makes application for benefis.

22.     Daniel Dymond appealed the Fund's decision to the Appeals Committee of the Board of Trustees, to which the sole discretionary power and authority to, among other things, determine the application and interpretation of the Plan Document and the entitlement to or amount of any pension has been delegated.  The Appeals Committee denied his appeal at its meeting held on September 16, 2014.  The determinations of the Appeals Committee are final and binding.

23.     Upon information and belief, the payments made to Daniel Dymond in the form of a 100% Joint and Survivor Annuity from the NPF exceed the actuarial equivalent of Daniel Dymond's

28169341.2

vested accrued benefit under ERISA, as well as the actuarial equivalent of his Normal Retirement Pension from the NPF, payable in the form of a 100% Joint and Survivor Annuity (or any other benefit option).

24.    The NPF is entitled to recoup an overpayment under ERISA and the Plan Document.

25.    Allowing Daniel Dymond to retain an overpayment would inherently violate the terms of the Plan Document in that he has received, and would be retaining, an amount to which he was not entitled.  Among other provisions, the offset provisions in Section 8.05(a)(5) of the Plan Document apply to the recoupment of any payment by the NPF in excess of the correct amount, regardless of the reason for the overpayment.

26.    On or about April 11, 2003, Daniel Dymond agreed to an offset arrangement in his signed Retirement Declaration and Acknowledgement (Exhibit C to Plaintiff's Complaint) when he acknowledged and declared the following:

<u>If I am overpaid</u>

Finally, I acknowledge that it is possible that my monthly benefit may be overpaid.  In that event, I will be required to reimburse the Fund and the Fund may offset an amount necessary to recover the overpayment from future monthly payments.

Doc. 1-3 at page 2.

## COUNT 1

27.    Counter-Plaintiffs reallege and incorporate by reference the above allegations of Paragraphs 1 through 25.

28.    Daniel Dymond was not entitled to the early pension that he received.  Daniel Dymond agreed to an offset arrangement applicable to such circumstances in his signed Retirement Declaration and Acknowledgement.   The full offset of Daniel Dymond's pension is a reasonable arrangement to recover the overpayments made to him.

28169341.2

29.     In order to enforce the terms of ERISA and the Plan Document, and pursuant to Daniel Dymond's agreement to an offset arrangement, Counter-Plaintiffs are entitled to a declaration from the Court that NPF may recover the overpayment of benefits made to Daniel Dymond, resulting from the provision of a pension that was procured by false and misleading misrepresentations and certifications, and to which he was not entitled, through offset, either by reducing the actual payments made to Daniel Dymond pursuant to any future application for benefits or by actuarial recalculation of any amount owed to take into account any past payments.

30.     To the extent that the payments already made to Daniel Dymond exceed the actuarial equivalent of Daniel Dymond's vested accrued benefit under ERISA, as well as the actuarial equivalent of his Normal Retirement Pension from the NPF, payable in the form of a 100% Joint and Survivor Annuity (or any other benefit option), Counter-Plaintiffs are entitled to a declaration that Daniel Dymond is not entitled to any further benefits from the NPF and an order that Daniel Dymond must disgorge any such excess to prevent unjust enrichment at the expense of the Fund and its other participants, together with interest thereon at a rate of 7.5%, the NPF's actuarial rate of return.

### COUNT 2

31.     Counter-Plaintiffs reallege and incorporate by reference the above allegations of Paragraphs 1 through 29.

32.     Daniel Dymond made material misrepresentations and/or omissions with respect to vital information that the Fund needed to verify his eligibility for a pension by, among other things, misrepresenting that the last date he worked in the Sheet Metal Industry was March 24, 2003 and that he had not worked in Disqualifying Employment after his effective date of pension, and by failing to notify the Fund of his employment with FAD Consulting (even though, as acknowledged by Plaintiff in paragraph 67 of the Complaint, FAD Consulting's Consulting Agreement with Blue Diamond apparently obligated FAD Consulting to provide assistance "through verbal conversation on methods

used to do sheetmetal [sic] work)." See Doc 1 at page 13 of 27; Doc. 1-3 at page 2 of 2; and Doc.1-6 at page 2 of 7.

33.    The NPF rightfully assumed that Daniel Dymond would have provided accurate information to the Fund, so that the Fund would have been able verify his eligibility to receive pension benefits or would have been able to obtain the necessary information through follow-up inquiries.   The NPF reasonably relied on Daniel Dymond's misrepresentations and omissions in determining to approve his application for a pension.

34.    Daniel Dymond's misrepresentations and omissions were knowing, intentional and deliberate. Alternatively, his misrepresentations and omissions were negligently made.

35.    As a direct and proximate result of Daniel Dymond's misrepresentations and omissions of fact regarding his employment with FAD Consulting, the Fund suffered injury in that it was induced to pay pension benefits that were improper and contrary to the terms of the Plan Document and ERISA.

36.    Counter-Plaintiffs are entitled to rescission of the 55/30 Pension granted to Daniel Dymond and the return of any overpayment of pension benefits, plus interest at a rate of 7.5% (the NPF's actuarial rate of return), to the Fund as part of restoring the parties to the *status quo ante*.

WHEREFORE, Counter-Plaintiffs pray for judgment on their Counterclaim and the entry by the Court of the following relief:

A.     A declaration that Daniel Dymond was not entitled to the early pension that he received;

B.    A declaration that the NPF may recover the overpayment of benefits made to Daniel Dymond through offset, either by reducing the actual payments made to Daniel Dymond pursuant to any future application for benefits or by actuarial recalculation of any amount owed to take into account any past payments;

28169341.2

C.      A declaration that, to the extent that the payments already made to Daniel Dymond exceed the actuarial equivalent of Daniel Dymond's vested accrued benefit under ERISA, as well as the actuarial equivalent of his Normal Retirement Pension from the NPF, payable in the form of a 100% Joint and Survivor Annuity (or any other benefit option), Daniel Dymond is not entitled to any further benefits from the NPF;

D.      A declaration, injunction and order that, to the extent that the payments already made to Daniel Dymond exceed the actuarial equivalent of Daniel Dymond's vested accrued benefit under ERISA, as well as the actuarial equivalent of his Normal Retirement Pension from the NPF, payable in the form of a 100% Joint and Survivor Annuity (or any other benefit option), Daniel Dymond must disgorge any such excess to prevent unjust enrichment at the expense of the Fund and its other participants;

E.      In the alternative, as a result of Daniel Dymond's misrepresentations and/or omissions, a declaration and order of rescission with respect to the 55/30 Pension granted by the NPF, returning the parties to their respective positions prior to April 1, 2003, including the return to the NPF of the amount of any overpayment of pension benefits;

F.      An award of interest in connection with any calculation of overpayment, at a rate of 7.5% which is the NPF's actuarial rate of return;

G.      An award of reasonable attorneys' fees and costs pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1); and

H.      Such other and further relief to which the NPF may be entitled.


Dated:  August 18, 2015          Respectfully submitted,

                                 /s/ Stephen M. Rosenblatt
                                 Stephen M. Rosenblatt (*pro hac vice*)
                                 Chief Counsel

Sheet Metal Workers' National Pension Fund
8403 Arlington Boulevard, Suite 300
Fairfax, VA 22031
(703) 739-7092; FAX:  (703) 739-7959
srosenblatt@smwnbf.org

/s/ Nicholas T. Christakos
Nicholas T. Christakos (*pro hac vice*)
Sutherland Asbill & Brennan LLP
700 Sixth Street, NW, Suite 700
Washington, DC 20001-3980
(202) 383-0100; FAX:  (202) 637-3593
nicholas.christakos@sutherland.com


COUNSEL FOR DEFENDANTS AND
COUNTER-PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2015, the foregoing document was filed with the Clerk of

the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the

Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon

the following parties and participants:


Benjamin A. Karfunkel
David New
Herbert New & David New, P.C.
1129 Bloomfield Avenue
Suite 215
West Caldwell, New Jersey 07006
973-893-9696
Email: bkarfunkel@newandnewlaw.com
        dnew@newandnewlaw.com


ATTORNEYS FOR PLAINTIFF


By:  /s/ Stephen M. Rosenblatt
        Stephen M. Rosenblatt
        Chief Counsel
        Sheet Metal Workers' National
        Pension Fund
        8403 Arlington Blvd., Suite 300
        Fairfax, VA  22031




I hereby certify that this document filed through the ECF system will be sent electronically to
the registered participants as identified on the Notice of Electronic Filing (NEF) and paper
copies will be sent to those indicated as non-registered participants on August 18, 2015.


/s/ Stephen M. Rosenblatt
Stephen M. Rosenblatt
Chief Counsel
Sheet Metal Workers' National Pension Fund

28169341.2